Brian Hauck (SBN 303058)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Telephone:  (213) 239-5100
Facsimile:  (213) 239-5199
bhauck@jenner.com

John F. Ward, Jr. (*pro hac vice* pending)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
jward@jenner.com

Michelle R. Singer (*pro hac vice* pending)
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Telephone:  (202) 639-6000
Facsimile:  (202) 639-6066
msinger@jenner.com

*Attorneys for Defendant The Hertz Corporation*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| RONALD G. DENICOLO, JR., on behalf of himself and others similarly situated,<br><br>       Plaintiff,<br><br>     v.<br><br>THE HERTZ CORPORATION and VIKING CREDIT SERVICES, INC., d/b/a VIKING BILLING SERVICE,<br><br>       Defendants. | Case No. 4:19-cv-00210-YGR<br><br>**DEFENDANT THE HERTZ CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY CLAIMS AGAINST HERTZ**<br><br>Date:  April 9, 2019<br>Time:  2:00 PM<br>Location:  Courtroom 1, 4th Floor<br>Judge:  Honorable Yvonne Gonzalez Rogers |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 9, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Yvonne Gonzalez Rogers in the above-titled court, Defendant The Hertz Corporation ("Hertz") will, and hereby does, move the Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and Federal Rule of Civil Procedure 12(b), for an order compelling arbitration of all claims brought against Hertz in Plaintiff's Class Action Complaint and dismissing Hertz from this case, or in the alternative, staying Plaintiff's claims against Hertz pending arbitration.

Specifically, Hertz seeks entry of an order compelling arbitration of Plaintiff's claims against Hertz on an individual basis and dismissing those claims from this action or, at a minimum, staying those claims pending arbitration.

This Motion is made and based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities and the Declarations of Adam R. Schloss, Marybeth Mouriz, and Shuaib Bulhan; all pleadings, papers, and records on file herein; such other written and oral argument as may be presented to the Court; and any other matters the Court deems just and proper.

## STATEMENT OF THE ISSUES

1.     Should Plaintiff be compelled to arbitrate his claims against Hertz based on the binding arbitration provision in his rental agreement with Hertz?

2.     Should the Court dismiss Plaintiff's claims against Hertz, or alternatively stay the claims against Hertz pending arbitration?

DEFENDANT THE HERTZ CORPORATION'S MOTION TO COMPEL ARBITRATION
Case No. 4:19-cv-00210-YGR

Dated:  February 27, 2019

Respectfully Submitted:

By:   /s/ Brian Hauck

Brian Hauck (SBN 303058)
John F. Ward, Jr.*
Michelle R. Singer*
JENNER & BLOCK LLP

*Attorneys for Defendant The Hertz Corporation*

*\*pro hac vice* motion pending

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

      A.     Plaintiff's Allegations. ...................................................................... 2

      B.     Plaintiff's Contract With Hertz And The Arbitration Provision........................ 2

      C.     Plaintiff's Transactions And Agreement To The Arbitration Provision............................ 4

ARGUMENT ....................................................................................................................... 6

I.     Any Threshold Question Of Arbitrability Must Be Decided By The Arbitrator. ............................ 6

II.    Plaintiff's Claims Against Hertz Are Subject To Arbitration............................. 8

      A.     Plaintiff Entered Into A Valid And Binding Agreement To Arbitrate With Hertz. ............. 9

      B.     The Arbitration Provision Covers Both Of Plaintiff's Claims Against Hertz. .................. 11

III.   Hertz Should Be Dismissed From This Case Or, Alternatively, The Claims Against Hertz Should Be Stayed Pending Arbitration. ........................................................ 12

CONCLUSION................................................................................................................... 13

### TABLE OF AUTHORITIES

**CASES**

*American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) ................................. 11

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................................... 11

*Bradley v. Hertz Corp.*, No. 3:15-cv-00652, 2017 WL 4365956 (S.D. Ill. Sept. 29, 2017) ........................ 1

*Castaldi v. Signature Retail Services, Inc.*, No. 15-cv-00737, 2016 WL 7042991 (N.D. Cal. Jan. 20, 2016) ................................................................................................. 12

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir. 2000) ..................... 8, 9, 12

*Cooks v. Hertz Corp.*, No. 3:15-cv-0652, 2016 WL 3022403 (S.D. Ill. Apr. 29, 2016) ........................ 1, 8

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ........................................................... 11

*Esparza v. KS Industries, L.P.*, 13 Cal. App. 5th 1228 (2017) .................................................... 10

*Farrow v. Fujitsu America, Inc.*, 37 F. Supp. 3d 1115 (N.D. Cal. 2014) ...................................... 8

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ................................................... 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ..................................... 7

*Kurth v. Hertz Corp.*, No. 18-cv-2785, 2018 WL 5298531 (N.D. Ill. Oct. 24, 2018) ......................... 1

*Lumaquin v. Experian Information Solutions Inc.*, No. 15-cv-01869, 2015 WL 12839252 (N.D. Cal. Aug. 7, 2015) ................................................................................................. 12

*Macias v. Excel Building Services LLC*, 767 F. Supp. 2d 1002 (N.D. Cal. 2011) ........................... 2

*Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012) ............................................... 9

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2012) .......................................................... 11

*Ngo v. PMGI Financial, LLC*, No. 18-cv-05401, 2018 WL 6618316 (N.D. Cal. Dec. 18, 2018) ................................................................................................. 7

*Olivas v. Hertz Corp.*, No. 17-cv-01083, 2018 WL 1306422 (S.D. Cal. Mar. 12, 2018) .............. 1, 7, 10, 11

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ...................................................... 7, 11

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ........................................ 13

*Sparling v. Hoffman Construction Co.*, 864 F.2d 635 (9th Cir. 1988) ........................................ 12

*Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 497 F. App'x 740 (9th Cir. 2012) ............. 8, 11, 12

*Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968 (N.D. Cal. 2015)..................................................8

**STATUTES**

9 U.S.C. § 1, *et seq.*....................................................................................................1

9 U.S.C. § 3..........................................................................................................6, 13

9 U.S.C. § 4.............................................................................................................6

**OTHER AUTHORITIES**

Rule R-14, AAA Commercial Arbitration Rules ..................................................... 6-7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3      Defendant The Hertz Corporation ("Hertz") respectfully submits this Memorandum of Points and

4   Authorities in Support of its Motion to Compel Arbitration and Dismiss or Stay Claims Against Hertz.

5                                    **INTRODUCTION**

6      In this putative class action, Plaintiff Ronald G. DeNicolo, Jr., asserts contract-based claims against

7   Hertz, on behalf of himself and one or more putative classes, for breach of the duty of good faith and fair

8   dealing and for declaratory judgment.  But Plaintiff's claims against Hertz cannot properly be heard in this

9   Court because Plaintiff agreed to arbitrate any dispute of this kind with Hertz.  Plaintiff cannot credibly

10  dispute that he formed such an agreement; in fact, his claims against Hertz depend on the existence of a

11  contract, which Plaintiff admits he entered into.  Moreover, Plaintiff's conduct during the rental

12  transaction—which included expressly confirming his agreement to the contract's terms, and then

13  accepting the rental contract and rental car and driving off the rental lot—clearly manifested his assent to

14  the contract's terms.  Plaintiff also specifically agreed to delegate all questions of arbitrability to an

15  arbitrator and to waive his right to participate in a class action against Hertz, either as a class representative

16  or a class member.  Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), this agreement

17  must be enforced.

18

19     Indeed, in four other recent decisions, including one within the Ninth Circuit, federal district courts

20  have compelled arbitration based on the *exact same arbitration provision* at issue in this case.  *See Kurth*

21  *v. Hertz Corp.*, No. 18-cv-2785, 2018 WL 5298531, at *2 (N.D. Ill. Oct. 24, 2018); *Olivas v. Hertz Corp.*,

22  No. 17-cv-01083, 2018 WL 1306422, at *4 (S.D. Cal. Mar. 12, 2018); *Bradley v. Hertz Corp.*, No. 3:15-

23  cv-00652, 2017 WL 4365956, at *4 (S.D. Ill. Sept. 29, 2017); *Cooks v. Hertz Corp.*, No. 3:15-cv-00652,

24  2016 WL 3022403, at *3-4 (S.D. Ill. Apr. 29, 2016).  This case demands the same result.  This Court should

25  compel individual arbitration of Plaintiff's claims against Hertz and dismiss those claims from this action

26  or, in the alternative, stay Plaintiff's claims against Hertz pending arbitration.

27

28

---

1

DEFENDANT THE HERTZ CORPORATION'S MOTION TO COMPEL ARBITRATION
Case No. 4:19-cv-00210-YGR

# BACKGROUND

## A.  Plaintiff's Allegations.

Plaintiff filed his Class Action Complaint ("Complaint") in this Court against Hertz and Viking Client Service, Inc. ("Viking") on January 11, 2019.  In his Complaint, Plaintiff alleges that he rented a car from Hertz's Thrifty-brand rental facility located at San Francisco International Airport ("SFO") on February 8, 2018.  Compl. at 3, ¶ 4.[1]  According to the Complaint, Hertz and Viking allegedly imposed an unwarranted charge in connection with the rental transaction and waited months to notify him of the charge and seek compensation.  *Id.*  On that basis, Plaintiff asserts claims against Viking for violations of the Fair Debt Collection Practices Act, the Fair Debt Collections Act, and the Illinois Vehicle Code.  Compl. at 11-14, ¶¶ 33-41, 1-12.  He also asserts a claim against Hertz for breach of the covenant of good faith and fair dealing, and a claim against both Hertz and Viking for declaratory judgment under the Federal Declaratory Judgment Act.  *Id*. at 14-16, ¶¶ 13-23.

## B.  Plaintiff's Contract With Hertz And The Arbitration Provision.

Hertz is a car rental company and is the parent company of Dollar Thrifty Automotive Group, Inc. ("Dollar Thrifty").  Schloss Decl. ¶ 2.[2]  Hertz operates the Hertz, Dollar, and Thrifty rental car brands.  *Id.*

All Hertz, Dollar, and Thrifty brand rentals are governed by written rental contracts.  Schloss Decl. ¶ 4.  For Thrifty customers who, like Plaintiff, are not members of the Thrifty loyalty program, the rental contract consists of two documents:  a "Rental Record" and a "Rental Jacket."  *Id.*  Thrifty provides a Rental Record and a Rental Jacket to every non-loyalty customer at the commencement of every rental.

---

[1] Plaintiff's Complaint contains Paragraphs 1-41 on pages 1-13, and a second set of Paragraphs 1-25 on pages 13-17.  Where a paragraph number recurs more than one time, Hertz provides the accompanying page number(s) to assist with identification of the correct paragraph(s).

[2] "[I]n deciding a motion to compel arbitration, [the court] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party."  *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Sup. 2d 538, 540 (E.D. Pa. 2006)).

DEFENDANT THE HERTZ CORPORATION'S MOTION TO COMPEL ARBITRATION
Case No. 4:19-cv-00210-YGR

*Id.* ¶¶ 5, 9.

The top of the first page of every Rental Record is labeled "Rental Record" or "RR," followed by an identification number.  *Id.* ¶ 5; *see, e.g.*, Mouriz Decl., Ex. 7 at 1.  Each Rental Record includes customized information such as the rental location and rental rate, products purchased, and other terms and conditions applicable to the rental.  Schloss Decl. ¶ 5; *see, e.g.*, Mouriz Decl., Ex. 7.  Near the beginning of the document, each Rental Record conspicuously provides: "Further information relating to Your rental charges, and other terms to which You agree, appear below."  Schloss Decl. ¶ 7; *e.g.*, Mouriz Decl., Ex. 7 at 2.  One of the "other terms" referenced "below" is a broad and prominent full-page agreement to arbitrate disputes with Thrifty and its parent company, Hertz (the "Arbitration Provision").  Schloss Decl. ¶¶ 2, 7; *see, e.g.*, Mouriz Decl., Ex. 7 at 6.

The Rental Record contains an acknowledgment that the customer agrees to its terms as well as the terms contained in the Rental Jacket, which is a separate folder that contains additional terms and conditions governing the customer's rental.  Schloss Decl. ¶ 9.  The Rental Jacket reiterates that the terms and conditions it contains and the Rental Record "together constitute the agreement . . . for the rental of the vehicle identified on the rental record."  *Id.* ¶ 10.  Like the Rental Record, the Rental Jacket also contains the Arbitration Provision.

In every Rental Record, the Arbitration Provision is printed under the heading "ARBITRATION PROVISION" in bold and capital letters, and in every Rental Jacket, it is similarly printed under the heading "ARBITRATION AND CLASS ACTION WAIVER," again in bold and capital letters.  The provision, which is substantively identical in the Rental Record and Rental Jacket, provides as follows (in relevant part):

**ARBITRATION PROVISION: THIS AGREEMENT REQUIRES ARBITRATION OR A SMALL CLAIMS COURT CASE ON AN INDIVIDUAL BASIS, RATHER THAN JURY TRIALS OR CLASS ACTIONS. BY ENTERING INTO THIS AGREEMENT, YOU AGREE TO THIS ARBITRATION PROVISION.**

Except for claims for property damage, personal injury or death, ANY DISPUTES BETWEEN You and us ("us" and "we" for the purposes of this Arbitration Provision means Thrifty Car Rental, ("Thrifty") its parent and affiliate corporations, and their respective officers, directors and employees and any vendor or third party providing services for this rental transaction) MUST BE RESOLVED ONLY BY ARBITRATION OR IN A SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT ALLOWED. YOU AND WE EACH WAIVE THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER. You and we remain free to bring any issues to the attention of government agencies.

This Arbitration Provision's scope is broad and includes, without limitation, any claims arising from or relating to this Agreement or any aspect of the relationship or communications between us, whether based in contract, tort, statute, fraud, misrepresentation, equity, or any other legal theory. It is governed by the Federal Arbitration Act, 9 U.S.C §§ 1 et seq.

In any arbitration under this Arbitration Provision, all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision. The arbitration will take place in the county of Your billing address unless agreed otherwise.

The American Arbitration Association ("AAA") will administer any arbitration pursuant to its Consumer Arbitration Rules (the "Rules"). You can obtain the Rules at www.adr.org.

. . .

IF YOU DO NOT WISH TO AGREE TO THIS ARBITRATION PROVISION, YOU MUST NOTIFY THRIFTY IN WRITING WITHIN 30 DAYS OF YOUR RECEIPT OF THIS AGREEMENT BY EMAILING US AT no.arbitration@thrifty.com OR BY MAIL . . . .

*E.g.*, Mouriz Decl., Ex. 7, at 6 (Rental Record); *see also* Schloss Decl., Ex. 1, at 1 (Rental Jacket). Under the Arbitration Provision, customers may "opt out" of arbitration by providing notice in the manner specified within 30 days of receipt of the rental contract. Schloss Decl. ¶ 14.

## C. Plaintiff's Transactions And Agreement To The Arbitration Provision.

Plaintiff rented a Hertz, Dollar, or Thrifty-branded rental car four times prior to the rental at issue in his Complaint. Mouriz Decl. ¶ 3. In connection with each of those four rentals, Plaintiff was provided with a Rental Record and a Rental Jacket containing the Arbitration Provision. Mouriz Decl. ¶¶ 4-7; Schloss Decl. ¶¶ 4-5, 7, 11, 13. For each of those four rentals, Plaintiff executed a Rental Record containing

the Arbitration Provision.  Mouriz Decl. ¶¶ 4-7 & Exs. 1-3, 5.

On February 8, 2018, Plaintiff rented a car from the Thrifty car rental facility at SFO.  Mouriz Decl. ¶ 8; Compl. at 3, ¶ 4.  Non-loyalty customers engaging in rental transactions at Thrifty's SFO location may choose to commence their transactions either at the rental counter or at a device known as an Electronic Rental Kiosk.  Bulhan Decl. ¶ 4.  Plaintiff commenced his February 8, 2018 rental transaction at an Electronic Rental Kiosk.  Mouriz Decl. ¶ 8.  During a kiosk rental, a Thrifty customer speaks in real time by telephone and videoconference with a remotely located Thrifty customer service representative.  The customer is provided both the Rental Record and Rental Jacket at the kiosk station, and is guided through a series of screens on the kiosk.  Bulhan Decl. ¶¶ 5-7.  As part of this process, Plaintiff electronically consented to the terms and conditions in the Rental Record and Rental Jacket by selecting "I Agree" on a kiosk computer screen that stated:

> By accepting the Rental Terms and Conditions, you are entering into a binding contract with us for which no handwritten signature is required.  By clicking the I Accept button below, you agree to comply with all provisions of these Rental Agreement Terms and Conditions appearing on the rental folder.  A copy of such Rental Agreement Terms and Conditions should have been made available to you.  If the rental folder has not been made available to you, you may request and receive it from a counter representative.

> Our Privacy Policy governs the use of data about you.  A copy of the policy is available from a counter representative or online at the website listed on your contract.  By clicking the I Agree button below, you agree to comply with all provisions of these Rental terms (including the Rental Agreement Terms and Conditions contained in the rental folder).  If you do not understand and/or agree to these Rental Terms click on the button marked I Decline and this rental transaction will be terminated.

*Id.* ¶ 7; *see also* Compl. at 15, ¶ 14 ("To rent a car in San Francisco, Plaintiff entered into a contract with Hertz.").  After selecting "I Agree," Plaintiff then took possession of his rental vehicle and drove off the Thrifty rental car lot.  Bulhan Decl. ¶ 9; *see also* Mouriz Decl. ¶ 8 & Ex. 7.  Plaintiff returned the car to Thrifty's SFO location the following day.  Mouriz Decl. ¶ 8; Compl. at 3 ¶ 4.  Plaintiff did not opt out of arbitration in connection with any rental from Hertz, Dollar, or Thrifty, including the rental from Thrifty's SFO location that is the subject of his Complaint.  Schloss Decl. ¶ 14.

Pursuant to the Arbitration Provision, Plaintiff agreed to resolve disputes with Hertz in arbitration or small claims court.  Mouriz Decl., Ex. 7, at 6; Schloss Decl. Ex. 1, at 1.  He waived any right "to participate in a class action, either as a class representative or class member."  Mouriz Decl., Ex. 7, at 6 (capitalization omitted); Schloss Decl. Ex. 1, at 1.  Notwithstanding Plaintiff's agreement to arbitrate "any claim[] arising from or relating to this Agreement or any aspect of the relationship or communications" with Hertz, and to waive "participat[ion] in a class action," Plaintiff filed this putative class action and seeks to litigate his claims against Hertz in court.

## ARGUMENT

Under the FAA and binding precedent, the parties' arbitration agreement must be enforced.  When a dispute is subject to arbitration, the FAA mandates that "the court shall make an order summarily directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  Accordingly, a dispute brought prematurely to court, such as this one against Hertz, must as least be stayed pending arbitration.  *See id.* § 3.  Pursuant to these mandates, the Court should enter an order compelling arbitration and dismissing, or at a minimum staying, Plaintiff's claims against Hertz.

## I.     Any Threshold Question Of Arbitrability Must Be Decided By The Arbitrator.

As an initial matter, the threshold question of whether Plaintiff's claims belong in arbitration must itself be referred to the arbitrator.  The parties unequivocally agreed that "all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision."  Mouriz Decl., Ex. 7, at 6; Schloss Decl., Ex. 1, at 1.  The parties further agreed that any arbitration would be administered by the American Arbitration Association ("AAA") pursuant to its rules for consumer-related disputes.  Mouriz Decl., Ex. 7, at 6; Schloss Decl., Ex. 1, at 1.  Those rules similarly provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Rule R-14(a), AAA Consumer Arbitration

Rules.  Thus, the parties contractually agreed that any dispute as to whether or not claims must be arbitrated is for the arbitrator to decide.

This agreement must be enforced like any other agreement.  As the Supreme Court held last month, the "[Federal Arbitration] Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).  This decision echoes the Supreme Court's repeated prior holdings that clear and unmistakable delegation clauses are valid and enforceable under the FAA.  *See, e.g.*, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement . . . , and the FAA operates on this additional arbitration agreement just as it does on any other."); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." (emphasis and internal quotation marks omitted)).  Courts must therefore "respect the parties' decision as embodied in the contract" when that decision "delegates the arbitrability question to an arbitrator."  *Schein*, 139 S. Ct. at 528.  Following that precedent, courts in this district send gateway questions to the arbitrator where, as here, the parties agreed that the arbitrator would hear disputes regarding the "the validity and scope of this Arbitration Provision."  *Ngo v. PMGI Fin., LLC*, No. 18-cv-05401, 2018 WL 6618316, at *8-9 (N.D. Cal. Dec. 18, 2018).

This case requires the same outcome.  In fact, a federal district court in the Southern District of California addressing the exact same Arbitration Provision at issue here held that the "clause plainly provides" that "the parties have clearly and unmistakably delegated to the arbitrator the authority to decide arbitrability."  *Olivas*, 2018 WL 1306422, at *10.  The court therefore granted Hertz's motion to compel arbitration and "require[d] the parties to submit to the arbitrator whether their dispute is arbitrable."  *Id*. Similarly, a federal district court in Illinois found, when interpreting the same clause, that "[t]here is nothing vague or ambiguous about [the delegation clause] or the arbitration clause as a whole," which

reflected a "clear[] and unmistakable[] contract" to refer the arbitrability question to the arbitrator. *Cooks*, 2016 WL 3022403, at *4.  The court also found that the parties confirmed their intent to delegate the arbitrability question by invoking the AAA Rules, indicating their intent "to leave the issue of whether [the plaintiff's] claims belong in arbitration to an arbitrator." *Id*.  Numerous courts in this district have likewise enforced a delegation clause in an arbitration agreement that invokes the AAA rules.  *See Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 972-73 (N.D. Cal. 2015) (collecting Northern District of California and California state cases holding that "incorporation of the AAA Rules effectively delegates jurisdictional questions, including arbitrability and validity, to the arbitrator").

In this case, as in *Olivas* and *Cooks*, the parties entered into an agreement to delegate threshold issues of arbitrability to the arbitrator, and that agreement must be enforced.  Thus, any question as to the existence, scope, or validity of the parties' arbitration agreement must be left to the arbitrator to resolve in the first instance.  This Court should therefore compel arbitration on that basis.

## II.    Plaintiff's Claims Against Hertz Are Subject To Arbitration.

Should the Court nonetheless conclude that it must determine whether the claims at issue are arbitrable, its role under the FAA is "limited."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  A court first determines "whether a valid agreement to arbitrate exists."  *Id*.  "[I]n determining whether parties have agreed to arbitrate a dispute, the court applies 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'"  *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1119 (N.D. Cal. 2014) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009)).  If the court finds an agreement to arbitrate, it "appl[ies] a presumption in favor of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable."  *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012).  Where the resisting party cannot meet that heavy burden, the FAA "*requires*

courts to enforce the bargain of the parties to arbitrate." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-33 (2012) (emphasis added) (quotation marks omitted); *see also Chiron Corp.*, 207 F.3d at 1130 ("[T]he Act requires the court to enforce the arbitration agreement in accordance with its terms.").

### A.  Plaintiff Entered Into A Valid And Binding Agreement To Arbitrate With Hertz.

There can be no doubt that a valid and binding agreement to arbitrate exists between Plaintiff and Hertz.[3]  Indeed, Plaintiff acknowledges in his Complaint that he entered into a rental contract with Hertz, and his allegations confirm not only that he entered into a rental contract but also that the contract includes the Arbitration Provision.  In light of these admissions, and the multiple times and ways that Plaintiff agreed to arbitrate as outlined below, Plaintiff cannot reasonably dispute that he is bound to arbitrate his claims against Hertz.

Plaintiff's Complaint confirms the existence of a contract between Plaintiff and Hertz.  The Complaint could not be clearer: "Plaintiff entered into a contract with Hertz."  Compl. at 15, ¶ 14.  Plaintiff therefore cannot now credibly dispute that he agreed to a rental contract with Hertz.  Nor can Plaintiff credibly argue that the contract lacked the Arbitration Provision.  After all, his allegations regarding his good faith and fair dealing claim—which refer repeatedly to his "contract" with Hertz—rely on "provisions in the contract to which the parties have agreed" that allegedly "anticipate[] that customers who decline Hertz's insurance will submit claims to their own insurance."  Compl. at 15, ¶ 17.  These allegations plainly relate to provisions about "Liability Protection" in the Rental Jacket—which itself contains the Arbitration Provision.  *See* Schloss Decl., Ex. 1.  Given Plaintiff's reliance on the rental contract in his Complaint, he cannot now reverse course and disavow the rental contract and agreement to arbitrate that he entered into.

---

[3] Under the plain terms of the Arbitration Provision, Plaintiff agreed to arbitrate this dispute with Thrifty and its "parent and affiliate corporations."  Mouriz Decl., Ex. 7 at 6; Schloss Decl., Ex. 1 at 1.  Hertz – the defendant in this lawsuit – is Thrifty's parent company.  Schloss Decl. ¶ 2; *see also* Compl. at 3 ¶ 5 (stating that "Defendant operates the Hertz, Dollar and Thrifty car rental brands").  Plaintiff therefore agreed to arbitrate this dispute with Hertz.

Plaintiff's conduct before, during, and after the rental transaction confirms his agreement to the Arbitration Provision.  Plaintiff manifested his agreement to the Arbitration Provision in multiple ways.  First, he accepted the rental contract's terms by selecting "I Agree" on the Electronic Rental Kiosk screen, thereby acknowledging that he was "entering into a binding contract . . . for which no handwritten signature is required."  *See* Bulhan Decl. ¶¶ 7-8; Mouriz Decl. ¶ 8.  Then, after physically accepting the Rental Record and Rental Jacket, he took possession of the rental vehicle and left Thrifty's rental lot with it.  *See* Bulhan Decl. ¶ 9; Mouriz Decl. ¶ 8.  Plaintiff chose not to opt out of arbitration within 30 days after his rental transaction, notwithstanding express instructions in the rental contract about how to do so if he wished.  *See* Schloss Decl. ¶ 14.  Finally, he executed four Rental Records containing the Arbitration Provision prior to the rental transaction at issue, and agreed each time to arbitrate "*any* claims relating to *any aspect of the relationship* or communications between" Plaintiff and Hertz, not merely to specific transactions.  *See* Schloss Decl. ¶ 13 & Ex. 1.

The court in *Olivas* found that these types of actions manifested the plaintiff's assent in that case to the exact same Arbitration Provision.  *Olivas*, 2018 WL 1306422, at *7-8.  That court's reasoning applies with full force here.  Applying California law, the court in *Olivas* explained that "[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings."  *Id*. at *5 (quoting *Alexander v. Codemasters Grp. Ltd.*, 104 Cal. App. 4th 129, 141 (2002)).  The court found that the plaintiff manifested acceptance to the offer contained in the Rental Record through his conduct; even though he did not hand-sign the Rental Record, "[h]e accepted the rental car and the customized Rental Record for his transaction.  He then drove off of Hertz's lot."  *Id.* at *8; *see also Esparza v. KS Indus., L.P.*, 13 Cal. App. 5th 1228, 1238 (2017) (recognizing acceptance by actions or conduct).  These facts, together with the plaintiff's "multi-year relationship with Hertz," *Olivas*, 2018 WL 1306422, at *7, made clear that the plaintiff "had ample reason to believe the Rental Record containing the

Arbitration Provision was an offer" and that he "accepted the Rental Record in taking the rental car." *Id.* at *10. Here, Plaintiff's manifestations of assent require the same outcome: Plaintiff agreed to arbitrate his claims.

### B. The Arbitration Provision Covers Both Of Plaintiff's Claims Against Hertz.

Both of Plaintiff's claims against Hertz are subject to arbitration.[4] Where, as here, the parties have "clearly and unmistakably" agreed that the arbitrator should decide the validity and applicability of an arbitration provision, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under the FAA, the Court must enforce the parties' agreement to arbitrate issues such as "whether their agreement covers a particular controversy." *Rent-A-Ctr.*, 561 U.S. at 68-69. Thus, any question as to whether the Arbitration Provision encompasses Plaintiff's claims or transactions is committed to the arbitrator. No further analysis is required or appropriate for this Court to compel arbitration as to both of Plaintiff's claims.

Even if the Arbitration Provision lacked a delegation clause, the Court would be required to order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wynn Resorts, Ltd.*, 497 F. App'x at 743 (emphasis omitted) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Any doubts or ambiguities with respect to the scope of an arbitration clause are "resolved in favor of arbitration" as a

---

[4] The Arbitration Provision specifically waives any right "to participate in a class action, either as a class representative or class member." *E.g.*, Mouriz Decl., Ex. 7, at 6 (capitalization omitted). Both the Supreme Court and the Ninth Circuit have held that such waivers of an individual's right to participate in a class action are valid and enforceable. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 237-39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 (9th Cir. 2012). The class-action waiver therefore must be given effect, and arbitration must proceed on an individual basis.

DEFENDANT THE HERTZ CORPORATION'S MOTION TO COMPEL ARBITRATION
Case No. 4:19-cv-00210-YGR

matter of federal law.  *Chiron*, 207 F.3d at 1131 (quotation marks omitted).  Here, the scope of the Arbitration Provision plainly encompasses Plaintiff's claims against Hertz in this case—it reaches "any disputes between You and us," and its "scope is broad and includes, without limitation, any claims arising from or relating to this Agreement or any aspect of the relationship or communications between us, whether based in contract, tort, statute, fraud, misrepresentation, equity, or any other legal theory."  Mouriz Decl. Ex. 7, at 6.  Accordingly, the Arbitration Provision covers both of Plaintiff's claims against Hertz.  And in any event, Plaintiff cannot establish the requisite "positive assurance" that the Arbitration Provision is not "susceptible of an interpretation that covers" both of his claims against Hertz.  *Wynn Resorts, Ltd.*, 497 F. App'x at 743 (quotation marks omitted).   Thus, both of Plaintiff's claims against Hertz belong in arbitration.

**III.     Hertz Should Be Dismissed From This Case Or, Alternatively, The Claims Against Hertz Should Be Stayed Pending Arbitration.**

Courts have discretion under Section 3 of the FAA to dismiss or stay claims that are subject to an arbitration agreement.  *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).  The plain language of the Arbitration Provision, the mandate of the FAA, and Supreme Court and Ninth Circuit precedents make clear that Plaintiff's claims against Hertz may only be heard by an arbitrator.  Dismissal of Plaintiff's claims against Hertz, which are not properly before this Court, is therefore appropriate.  *See, e.g.*, *Lumaquin v. Experian Info. Sols. Inc.*, No. 15-cv-01869, 2015 WL 12839252, at *1 (N.D. Cal. Aug. 7, 2015) (granting motion to compel arbitration brought by one defendant in a multi-defendant action, and dismissing that defendant from case); *Castaldi v. Signature Retail Servs., Inc.*, No. 15-cv-00737, 2016 WL 7042991, at *1 (N.D. Cal. Jan. 20, 2016) (dismissing claims subject to arbitration and collecting cases).

At a minimum, any further proceedings regarding Plaintiff's claims against Hertz should be stayed pending arbitration.  Section 3 of the FAA provides that, upon application, the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the [arbitration]

1   agreement."   9 U.S.C. § 3.   The Supreme Court has recognized that this provision is mandatory.

2   *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  A stay of judicial proceedings pending

3   arbitration promotes the interests of judicial economy and prevents multiple actions.  If Plaintiff's claims

4   against Hertz are not dismissed in their entirety, they should be stayed pending arbitration pursuant to 9

5   U.S.C. § 3.

6

7                                                    **CONCLUSION**

8          For the foregoing reasons, Hertz respectfully requests that this Court enter an order compelling

9   individual arbitration of Plaintiff's claims against Hertz and dismissing Hertz from this case, or in the

10  alternative, staying litigation of Plaintiff's claims against Hertz pending the outcome of individual

11  arbitration.

12

13

14   Dated:  February 27, 2019                       Respectfully Submitted:

15                                                    By:   /s/ Brian Hauck

16                                                    Brian Hauck (SBN 303058)
17                                                    John F. Ward, Jr.*
                                                      Michelle R. Singer*
18                                                    JENNER & BLOCK LLP

19                                                    *Attorneys for Defendant The Hertz Corporation*

20                                                    **pro hac vice* motion pending

21

22

23

24

25

26

27

28