James K. Schultz, Esq.
Sessions, Fishman, Nathan & Israel, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA  92108
(619) 758-1891
jschultz@sessions.legal

Michael D. Alltmont, Esq. (admitted *pro hac vice*)
Bryan C. Shartle, Esq. (admitted *pro hac vice*)
Sessions, Fishman, Nathan & Israel
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002
(504) 846-7954
malltmont@sessions.legal

*Attorneys for Defendant Viking Client Services, LLC. dba*
*Viking Billing Service*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RONALD G. DENICOLO, JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION et al.,<br><br>Defendants. | Case No. 3:19-cv-00210-YGR<br><br>**VIKING CLIENT SERVICES, LLC'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**HEARING DATE AND TIME:**<br>**APRIL 14, 2020  AT 2 P.M.** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................... iii

NOTICE OF MOTION .................................................................................................. 1

MEMORANDUM IN SUPPORT OF SUMMARY OF JUDGMENT ........................... 2

I. ISSUES TO BE DECIDED .................................................................................... 2

II. INTRODUCTION .................................................................................................. 3

III. PROCEDURAL HISTORY ................................................................................. 5

IV. STATEMENT OF RELEVENT FACTS ............................................................. 6

    *A. Plaintiff DeNicolo* ....................................................................................... 6

    *B. Plaintiff Fox* ............................................................................................... 10

V. POINTS AND AUTHORITIES ........................................................................... 11

    *A. Plaintiff DeNicolo's Claims Under the FDCPA and IVC Should Be Dismissed* ......... 11

        *1. Plaintiff DeNicolo's FDCPA Claims Fail Because the Debt Was Incurred For Business Purposes And Was Not A Consumer Debt* ............................. 12

        *2. Plaintiff DeNicolo's FDCPA Claims Fail Because the Debt Was Not In Default When Placed With Viking* ................................................................. 14

        *3. Plaintiff DeNicolo's Illinois Vehicle Act Claim Fails* ..................................... 19

    *B. Plaintiff Fox's Claims Fail As a Matter of Law* ........................................... 20

        *1. The Rosenthal Act Claim Fails Because the Omitted Disclosures Were Not Required* ................................................................................................ 21

        *2. Fox's Unfair Competition Law Claim Must Be Dismissed* ............................. 24

        *3. The California Consumer Legal Remedies Act Claim Should Be Dismissed* ... 25

VI. CONCLUSION .................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>CASES</u>

4

*Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) ...................................... 17

5

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir.2007) ................ 20

6

*Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) .................................................. 26

*Bloom v. I.C. Systems, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992) .................................................... 14

7

*Burris v. HSBC Bank USA, Nat'l Ass'n*, 2014 WL 12772260, *6 (C.D. Cal. Dec. 19, 2014) .......... 22

8

*Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004) ...................................... 20

*Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014) ...................................... 19

9

*Davis v. Hollins Law*, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013) ............................................... 13

10

*De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011) ............................ 15

*Diaz v. Viking Client Servs., Inc.*, 2016 WL 5796835 (D. Minn. Oct. 3, 2016) .................. 16, 18, 22

11

*Ellis v. Phillips & Cohen Assocs., Ltd.*, 2016 WL 3566981, *3 (N.D. Cal. June 30, 2016) ....... 12, 13

12

*Fleet Nat. Bank v. Baker*, 263 F. Supp. 2d 150, 153 (D. Mass. 2003) .............................................. 13

13

*Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) ...................................... 26

*Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 127 (2d Cir. 2016) .................................................. 19

14

*Guzman v. Nationstar Mortg. LLC*, 2019 WL 2436456, *11 (S.D. Cal. June 11, 2019) ................ 15

15

*Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ................................................................................... 12

16

*In re Pasley*, 596 B.R. 577, 584 (Bankr. W.D. Ky. 2019) ............................................................... 13

*In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (Calif. 2009) ............................................................ 25

17

*Keppler v. Bank of New York Mellon*, 2018 WL 6809564, at *5 (E.D. Cal. Dec. 27, 2018)............ 26

18

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (Calif. 2011) ............................................. 25

19

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010).................................... 19

*Leon v. Emergency Med. Grp. of Watsonville*, 2016 WL 3773933, *13 (Cal. Ct. App. July 11, 2016)

20

................................................................................................................................................ 22

21

*Malasky v. Esposito*, 2019 WL 79032, *10 (N.D. Cal. Jan. 2, 2019) .............................................. 26

*Mannello v. Residential Credit Sols., Inc.*, 2016 WL 94236, *4 (C.D. Cal. Jan. 7, 2016) .............. 15

22

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 374 n.1 (2013) ........................................................... 12

23

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir.

2000) ........................................................................................................................................ 13

24

*Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*, 2014 WL 3728514, *3 (N.D.

Cal. July 28, 2014)................................................................................................................... 12

25

*Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir.2003) .............................................. 16

26

*Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008)......................... 18

27

*Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, *3 (N.D. Cal. 2013)................................ 15

*Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ..................................................... 15

28

*Rich v. Bank of Am., N.A.*, 666 F. App'x 635, 639 (9th Cir. 2016) .................................................. 16

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir.2003) .................................. 15, 18

*Simmonds & Narita LLP v. Schreiber*, 566 F. Supp. 2d 1015, 1017 (N.D. Cal. 2008) ................... 13

*Slenk v. Transworld Sys. Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) ........................................ 13

*Smith v. Hunt & Henriques*, 2013 WL 6141416, *3 (N.D. Cal. Nov. 21, 2013) ............................ 14

*Sun v. Rickenbacker Collection*, 2011 WL 704437, *3 (N.D. Cal. Feb. 18, 2011) ........................ 14

*Taylor v. Quall*, 471 F. Supp. 2d 1053, 1062 (C.D. Cal. 2007) .......................................... 20

*Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004) .................................................. 13

*Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996) ........................................ 20

### STATUTES

15 U.S.C. § 1692 ..................................................................................... 2

15 U.S.C. § 1692(e) ................................................................................. 12

15 U.S.C. § 1692a(5) ............................................................................... 13

15 U.S.C. § 1692a(6) ............................................................................... 15

15 U.S.C. § 1692a(6)(F)(iii) ................................................................... 15, 19

Cal. Bus. & Prof. Code § 17204 ..................................................................... 25

Cal. Bus. & Prof. Code §§ 17200 ................................................................. 2, 24

Cal. Civ. Code § 1788.17 ........................................................................... 21

Cal. Civ. Code §§ 1750 .............................................................................. 2

Cal. Code § 17.1800 ................................................................................. 2

### OTHER AUTHORITIES

85 Cal. Op. Att'y Gen. 215 (2002) ................................................................. 22

S. REP. 95-382, 3-4, 1977 U.S.C.C.A.N. 1695, 1698 ................................................. 15

James K. Schultz, Esq.
Sessions, Fishman, Nathan & Israel, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA  92108
(619) 758-1891
jschultz@sessions.legal

Michael D. Alltmont, Esq. (admitted *pro hac vice*)
Bryan C. Shartle, Esq. (admitted *pro hac vice*)
Sessions, Fishman, Nathan & Israel
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002
(504) 846-7954
malltmont@sessions.legal

*Attorneys for Defendant Viking Client Services, LLC. dba
Viking Billing Service*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RONALD G. DENICOLO, JR., et al.,<br><br>Plaintiff,<br><br>v.<br><br>THE HERTZ CORPORATION et al.,<br><br>Defendants. | Case No. 3:19-cv-00210-YGR<br><br>**VIKING CLIENT SERVICES, LLC'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**HEARING DATE AND TIME:**<br>**APRIL 14, 2020  AT 2 P.M.** |

<u>**NOTICE OF MOTION**</u>

Defendant, Viking Client Services, LLC, d/b/a Viking Billing Service ("Viking"), through

counsel and pursuant to Federal Rule of Civil Procedure 56, files this Notice of Motion for Summary

Judgment to dismiss the complaint filed by the plaintiffs, Ronald G. DeNicolo and Michael Fox, and

supporting Memorandum.  The hearing is set for April 14, 2020 at 2:00 p.m. in Courtroom 1, 4th

Floor of the United States District Court in Oakland, California before Judge Yvonne Gonzalez Rogers.

Viking seeks judgment in its favor on all claims asserted by plaintiffs Ronald G. DeNicolo and Michael G. Fox.

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. ISSUES TO BE DECIDED

1. Whether plaintiff DeNicolo's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. fail because he did not incur the obligation for personal, family, or household purposes? Answer – yes

2. Whether plaintiff DeNicolo's claims under the FDCPA fail because the subject obligation was not in default when it was obtained by Viking? Answer – yes.

3. Whether plaintiff DeNicolo's claims under the Illinois Vehicle Code ("IVC"), 625 ILCS § 5/6-305.2 fail because his IVC claims lack an independent right of action and are purely derivative of his failed FDCPA claims? Answer – yes.

4. Whether plaintiff Fox's claims under the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Code § 17.1800 fail because the obligation was not due and owing when Viking processed the damage claim? Answer – yes.

5. Whether plaintiff Fox's claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., and California Consumer Remedies Act ("CRA"), Cal. Civ. Code §§ 1750, *et seq*., fail as derivative of the Rosenthal Act claim? Answer – yes.

6. Whether plaintiff Fox's claim under the CRA fail for lack of factual support? Answer – yes.

7. Whether plaintiffs' claims under the Federal Declaratory Judgment Act fail? Answer – yes.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. INTRODUCTION

The two plaintiffs here allege two contradictory claims. On the one hand, plaintiff DeNicolo alleges that The Hertz Corporation ("Hertz") is engaged in a nefarious scheme to withhold notice of vehicle damage claims from its rental customers for months, purportedly to prevent them from timely contesting the claims and depriving them of insurance coverage. Specifically, plaintiff DeNicolo alleges that Viking did not attempt to contact him for four months following the damage incident and this delay violated state and federal law. As discussed below, plaintiff DeNicolo's claims are patently untrue.[1]

In contrast to DeNicolo's false claims of intentional delay, plaintiff Fox complains of the initial notice he received from Viking just 25 days after the damage incident to his rental car. Plaintiff Fox does not complain about the timing of the notice from Viking. Instead, plaintiff Fox alleges Viking violated the Rosenthal Act, UCL, and CRA by not including certain disclosures set forth by the FDCPA in the first notice of loss – a written letter first advising him of Hertz's damage claim. Tellingly, though plaintiff Fox's claims arise exclusively from alleged technical violations of the FDCPA (which are denied), Fox does not bring a claim under the FDCPA.

Both plaintiffs' claims fail. Plaintiff DeNicolo's allegations are equal parts nonsense and patently untrue. The allegations are nonsense because there is no benefit to withholding the disclosure of damage claims for many months. Indeed, by doing so, Hertz and Viking would put at risk potential recovery for such damages under applicable insurance because of the delay. Such a business practice would be illogical.

Plaintiff DeNicolo's allegations are also untrue. Viking first called him just 24 days after the damage incident. Plaintiff DeNicolo admits he answered that call and admits he falsely claimed

---

[1] Plaintiff DeNicolo seeks to certify a class of individuals who were not contacted until more than 30 days after the damage incident.

he did not speak English. When Viking spoke with plaintiff DeNicolo a month later, he again evaded discussion of the damage claim, this time falsely claiming the company had called the wrong number. Plaintiff DeNicolo's claim that Viking and Hertz withheld the damage claim and did not contact him for four months is simply untrue.

While plaintiff DeNicolo has unclean hands and his claims fail as a matter of fact, they also fail as a matter of law. Specifically, plaintiff DeNicolo's claims, all asserted under or through the FDCPA, and plaintiff Fox's claims, also inextricably tied to the FDCPA, fail for **_5_** reasons.

**_First_**, the FDCPA is not applicable to plaintiff DeNicolo's claims because the debt was incurred for business purposes. Plaintiff DeNicolo admits he travelled to San Francisco and rented the vehicle exclusively for business purposes. The FDCPA only applies to debts incurred for personal, family, or household purposes, and **_not_** for business purposes. It is indisputable that the debt Viking was attempting to collect from plaintiff DeNicolo was exclusively of a business nature, placing it outside the coverage of the FDCPA.

**_Second_**, the FDCPA is not applicable to plaintiff DeNicolo's claims because the debt was **_not_** in default when it was assigned to Viking. Specifically, the account was assigned to and obtained by Viking 20 days after the date of damage, and most importantly before the account defaulted. Debts obtained by a collection agency prior to default are equally not subject to or covered by the FDCPA.

**_Third_**, plaintiff DeNicolo alleges an FDCPA violation arising out of an alleged violation of the IVC. However, this "piggyback" claim fails for the same reasons his other FDCPA claims fail - namely, the debt was assigned prior to default and the debt relates to a business purpose, so it is not covered by the FDCPA.

**_Fourth_**, plaintiff Fox's claims fail as a matter of law because the omitted disclosures of which plaintiff Fox complains were not actually required to be provided. Here, plaintiff Fox alleges

Viking violated the Rosenthal Act, UCL and CRA by failing to include disclosures specifically enumerated by the FDCPA. However, the damage claim Viking processed was not "due and owing" at the time the letter was sent, and therefore was not subject to the Rosenthal Act. Moreover, to the extent any of the claims brought are derivative of the violation of the FDCPA, Viking did not violate that Act when communicating with plaintiff Fox.

*__Fifth__*, plaintiffs' claims for a declaratory judgment seeks a type of relief and is not a cause of action. And because plaintiffs have failed to support their principle claims, neither is entitled to a declaratory judgment.

### III. PROCEDURAL HISTORY

On January 11, 2019, plaintiff DeNicolo filed this putative class action complaint against Viking and Hertz.[2]  *See* Docket No. 1.

On October 14, 2019, plaintiff Fox was added by Amended Complaint.  *See* Docket No. 82.

Plaintiff DeNicolo asserts 4 causes of action against Viking.[3]  In Count I, plaintiff DeNicolo alleges Viking violated 15 U.S.C. § 1692f of the FDCPA.  *Id.*, ¶¶ 50-58.  Plaintiff DeNicolo alleges that it is "unfair and unconscionable to begin attempts to collect debt for damage to a rental car many months after the damage purportedly occurred."  *Id.* at ¶ 53.  In Count II, plaintiff DeNicolo alleges Viking violated § 1692e of the FDCPA.  *Id.* at ¶¶ 59-64.  Plaintiff DeNicolo alleges "it is false, deceptive or misleading for Defendants to attempt to collect debt for damage to a rental car many months after the damage purportedly occurred."  *Id.*  In Count III, plaintiff DeNicolo alleges Viking violated the FDCPA by violating the IVC.  *Id.* ¶¶ 65-71.  In Count VIII, plaintiff DeNicolo seeks a declaratory judgment under 28 U.S.C. § 2201.  *Id.* at ¶¶ 101-106.

---

[2] Hertz filed a Motion to Compel Arbitration.  Though the motion was granted, Hertz has been brought back into the case and is on a different discovery and dispositive motion track.
[3] Plaintiff DeNicolo asserts 5 causes of action total, but Count IV is asserted exclusively against Hertz and not against Viking.

Plaintiff Fox also asserts 4 causes of action against Viking. In Count V, plaintiff Fox alleges Viking violated § 1788.17 of the Rosenthal Act. *Id*. at ¶¶ 78-88. In pertinent part, plaintiff Fox alleges Viking committed a technical violation of the Rosenthal Act by failing to include disclosures mandated by the FDCPA, even though Viking was not required to include the disclosures under the FDCPA (in seeming recognition of this conclusion, plaintiff Fox does not bring claims under the FDCPA). *Id*. In Count VI, plaintiff Fox alleges Viking violated California's UCL by failing to provide the notices purportedly "required" by the Rosenthal Act. *Id*. at ¶¶ 89-95. In Count VII, plaintiff Fox alleges Viking violated the CRA by "misrepresent[ing] its relationship with Hertz and its ability to verify the asserted debt for damage to a rental vehicle, misrepresenting the validity of its debt-collection efforts, making false statements regarding its ability to negotiate the asserted debt, including by offering any reductions in that amount, and misrepresenting that the rental agreement between Hertz and Plaintiff Fox conferred a right on Viking to violate the Rosenthal Act when trying to collect on the asserted debt." *Id*. at ¶¶ 96-100. In Count IX, plaintiff Fox seeks a declaratory judgment under 28 U.S.C. § 2201. *Id*. at ¶¶ 107-112.

## IV. STATEMENT OF RELEVANT FACTS

### *A. Plaintiff DeNicolo*

On February 8, 2018, plaintiff DeNicolo rented a car from Hertz at the San Francisco airport.[4] Plaintiff travelled to San Francisco and rented the car exclusively for business purposes.[5] Specifically, plaintiff travelled to meet with a client.[6] Plaintiff returned the vehicle on February 9, 2018.[7] A Thrifty Vehicle Incident Report, dated February 10, 2018, states "customer doesn't speak English," and the "type of rental" was "business."[8]

---

[4] Docket No. 82, Amended Complaint, ¶ 10.
[5] Exh. F – DeNicolo Tr., pp. 22, ll. 17-18; pp. 27, ll. 5-8; pp. 32-33, ll. 21-1; p. 71, l. 12.
[6] *Id*.
[7] Docket No. 82, Amended Complaint, ¶ 10.
[8] Exh G. – Incident Report

Viking provides billing services for Hertz, which owns Thrifty Car Rental.[9]  The Billing Services Agreement states, in pertinent part:

> Hertz desires to use the services of Viking Billing with respect to such <u>non-delinquent damage claims</u> owed by Hertz customers or third parties which, to the extent the claims are considered "debts" for purposes of the Fair Debt Collection Practices Act (FDCPA), are not in "default" at the time the claims are forwarded by Hertz to Viking Billing for billing services[.]
> . . . .
> <u>Hertz represents and agrees that all non-delinquent damage claims assigned to Viking Billing for billing services will constitute amounts that are not in default under Hertz's existing internal guidelines, customer contracts and applicable law.</u>

On March 1, 2018, Hertz placed plaintiff's account with Viking.[10]  The placement included an "incident date" of February 9, 2018 – just 20 days earlier.[11]  ***The damage claim account was not in default at the time of placement***.

On the day of placement, Viking requested that its letter vendor, RevSpring, issue a form first written notice of loss to plaintiff.[12]  Viking forwarded the relevant information concerning the account to RevSpring via an automated process.[13] The information, however, included a bad mailing address.[14]  On or about March 2, 2018, RevSpring flagged the account as having a bad address and returned it to Viking.[15]  When RevSpring returns an account as having a bad address, it is placed into a manual process whereby a Viking representative attempts to identify a correct address.[16]  On March 5, 2018, Viking employee Timothy Wilson updated the account with a good address, but did not update the status of the account such that the letter would be re-requested.[17]  Due to this clerical

---

[9] Exh. A – Bacon Tr., p. 27-28, ll. 21-8; Exh. B – Hertz/Viking Billing Services Agreement; Exh. C – Viking Response to Interrogatory No. 1.
[10] <u>Exh. H</u> – Bacon Decl., ¶ 2.
[11] Exh G. – Incident Report.
[12] Exh. H – Bacon Decl., ¶ 4.
[13] Exh. H – Bacon Decl., ¶ 5.
[14] *Id*.
[15] Exh. H – Bacon Decl., ¶ 6.
[16] Exh. H – Bacon Decl., ¶ 7.
[17] Exh. H – Bacon Decl., ¶ 10.

error, the request for the new initial letter was not relayed to RevSpring.[18]  Had it been, the initial letter would have been issued on or about March 6, 2018 to the updated address.[19]

Also on March 5, 2018, Mr. Wilson attempted to contact plaintiff DeNicolo by calling his cell phone.[20]  Plaintiff DeNicolo answered.[21]  Mr. Wilson asked if "Ronald DeNicolo, Jr." was available.[22]  Plaintiff DeNicolo, who speaks perfect English, falsely claimed he did not speak English.[23]  The call terminated shortly thereafter.  **Viking's contact with plaintiff DeNicolo on March 5, 2018, occurred 24 days after the damage incident**.  Contrary to plaintiff's false allegations, Viking did not wait months before trying to contact him.

On March 20, 2018, Viking tried calling plaintiff DeNicolo again, but there was no answer.[24]

On April 3, 2018, Viking again called plaintiff DeNicolo again and reached him.[25]  Though plaintiff answered by phone by saying, "this is Ron," when the agent asked for "Ronald DeNicolo, Jr.," plaintiff DeNicolo said "wrong number, wrong number."[26]

On June 6, 2018, Viking received an inbound call from plaintiff DeNicolo.[27]  Now speaking perfect English, plaintiff DeNicolo stated the car rental was for a "business trip" and claimed that the vehicle was returned undamaged.[28]  The representative immediately offered to email plaintiff the supporting documentation (and, in fact, did).[29]  He also provided the contact information for the

---

[18] Exh. H – Bacon Decl., ¶ 11.
[19] Exh. H – Bacon Decl., ¶ 12.
[20] Exh. H – Bacon Decl., ¶ 13; Exh. F – DeNicolo Tr., pp. 47-48, ll. 11-25; Exh. I – Recording of 3/5/18 call; Ex. J – DeNicolo Discovery Responses to Requests for Admissions Nos. 21-22.
[21] Id.
[22] Id.
[23] Id.
[24] Exh. H – Bacon Decl., ¶ 13
[25] Exh. H – Bacon Decl., ¶ 13; Exh. F – DeNicolo Tr., pp. 52-53, ll. 18-14; Exh. K – Recording of 4/3/18 call
[26] *Id*.
[27] Exh. F – DeNicolo Tr. pp. 69-74, ll. 22-19;Exh. L – Recording of 6/6/18 first call.
[28] *Id*.
[29] *Id*.

Viking representative handling the damage claim, Terry First.[30]

Just 40 minutes later, plaintiff DeNicolo called Viking and asked for Terry First.[31]  Mr. First was not available, and the Viking representative advised he would have Mr. First call plaintiff DeNicolo first thing the next morning.[32]

The next morning, June 7, 2018, at 8:50 a.m., Mr. First returned plaintiff DeNicolo's call.[33] Plaintiff advised he had an attorney but refused to provide the attorney's name or contact information.[34]

Contrary to plaintiff's allegations, Viking did **_not_** strategically withhold any information or delay in its attempt to communicate with plaintiff. Viking tried first contacting plaintiff upon placement of the damage claim 20 days after the vehicle damage occurred, Viking spoke with plaintiff 24 days after the date of damage (when plaintiff falsely claimed he did not speak English), Viking emailed him documentary support for the damage claim within minutes of his request, and returned his phone call asking to talk about the documents within 24 hours.  Viking did **_not_** delay or withhold any information from plaintiff.  Instead, Viking treated plaintiff DeNicolo courteously, respectfully, diligently and professionally.  Plaintiff's theory of the case, that Hertz and Viking nefariously withhold information from rental customers, is absolutely false and contradicted by the irrefutable evidence.

### B. Plaintiff Fox

Plaintiff Fox returned a rental vehicle to Hertz on April 2, 2019, at which time Hertz identified damage.[35]  Hertz forwarded the claim to Viking on April 22, 2019.[36]  On April 23, 2019,

---

[30] *Id.*
[31] Exh. F – DeNicolo Tr. pp. 84-86, ll. 6-23; Exh. M – Recording of 6/6/18 second call.
[32] *Id.*
[33] Exh. F – DeNicolo Tr. pp. 88-90, ll. 8-2; Exh. N – Recording of 6/7/18 call.
[34] *Id.*
[35] Exh. O – Fox Tr. p. 39, ll. 4-6; Ex. E – Fox Letter; Ex. P – Incident Report – Fox.
[36] *Id.*

Viking mailed plaintiff Fox the first notice of loss.[37]  Plaintiff received the letter on April 26, 2019, a mere 24 days after the vehicle was returned.[38]

Plaintiff Fox admits the letter he received from Viking was his first notice of the damage claim.[39]  The letter advised plaintiff Fox that he "rented a vehicle from Hertz Corporation and returned the vehicle with damage" and that Viking was "partnering with Hertz Corporation to assist in the processing of this claim."[40]  The letter includes the claim balance, a breakout of the claim balance, a phone number to contact Viking "to discuss the claim process," and options to pay the claim, including through insurance or a credit card.[41]

Plaintiff Fox initially contacted Hertz upon receipt of the letter on April 26, 2019, but ultimately called Viking and left a voicemail on May 2, 2019.  Viking promptly returned his call on May 3, 2019.[42]  Plaintiff Fox spoke with Viking representative R. Foley for approximately 10 minutes.[43]  Fox characterized the call as "professional" and did not feel the agent was rude or harassed or abused him in any way.[44]  During the call, the agent immediately addressed plaintiff Fox's assertion that he did not owe the damage claim and she never demanded payment.[45]  While working with plaintiff Fox, the agent said, "if it's not yours, I don't want you to pay it."[46]  When plaintiff Fox advised he had pictures proving he returned the car in the same condition as he rented it, the agent asked him to send her the pictures so she could review and, if everything matched up, Viking would close the file.[47]

---

[37] *Id.*
[38] *Id.*
[39] Ex. E – Fox Letter; Exh. O – Fox Tr., p. 40, ll. 1-24.
[40] *Id.*
[41] *Id.*
[42] Exh. O – Fox Tr. pp. 48-49, ll. 20-17; Exh. Q – 5/3/19 Recording.
[43] *Id.*
[44] Exh. O – Fox Tr. pp. 62-63, ll. 14-3.
[45] Exh. Q – 5/3/19 Recording.
[46] Id.
[47] Id.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Within two weeks of the call, plaintiff Fox received an email from Hertz confirming that the damage claim had been closed.[48]

## V. POINTS AND AUTHORITIES

All of plaintiff DeNicolo's claims under arise under, or are inextricably tied to the FDCPA. The claims fail as a matter of fact and law.  Plaintiff Fox's claims arise under, or are inextricably tied to the Rosenthal Act.  The claims also fail as a matter of fact and law.

### A. Plaintiff DeNicolo's Claims Under the FDCPA and IVC Should Be Dismissed

"The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 374 n.1 (2013).  The stated purpose of Congress when it enacted the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  In general, the FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).

To state a claim under the FDCPA, a plaintiff must establish facts supporting each of the following elements: "(1) [the] plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Ellis v. Phillips & Cohen Assocs., Ltd.*, 2016 WL 3566981, *3 (N.D. Cal. June 30, 2016).  Here, plaintiff DeNicolo ***cannot establish any*** of the three elements, and his lawsuit should be dismissed with prejudice.

    **1.  Plaintiff DeNicolo's FDCPA Claims Fail Because the Debt Was Incurred For Business Purposes And Was Not A Consumer Debt**

---

[48] Exh. O – Fox Tr. pp. 56, ll. 7-19; pp. 63-64, ll. 21-4.

1

2    Though the FDCPA offers a comprehensive structure for the lawful collection of debts, the

3    scope of the Act is not unlimited.  The FDCPA is designed to protect consumers, and therefore only

4    covers "debts" that are consumer in nature.  Here, plaintiff's claims arise out of billing services for

5    a debt that plaintiff DeNicolo incurred exclusively for business purposes.  The FDCPA claims fail

6    simply because the obligation is not a "debt" under the FDCPA.  *See Mlnarik v. Smith, Gardner,*

7    *Slusky, Lazer, Pohren & Rogers, LLP*, 2014 WL 3728514, *3 (N.D. Cal. July 28, 2014) ("It is

8    axiomatic that not all obligations to pay money are covered by the FDCPA").  "Whether the dispute

9
10   involves a 'debt' within the meaning of the statute is thus 'a *threshold* issue in a suit brought under

11   the FDCPA.'"  *Id.* (emphasis in original); *see also Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir.

12   2004).

13   The FDCPA defines a "debt" as an obligation or alleged obligation which is the subject of a

14
15   transaction that is "primarily for personal, family, or household purposes[.]"  15 U.S.C. § 1692a(5);

16   *Ellis v. Phillips & Cohen Assocs., Ltd.*, 2016 WL 3566981, *3 (N.D. Cal. June 30, 2016) (a

17   "consumer debt" qualifying for coverage under the FDCPA and the RFDCPA is one incurred

18   "primarily for personal, family, or household purposes"); *Fleet Nat. Bank v. Baker*, 263 F. Supp. 2d

19   150, 153 (D. Mass. 2003) ("whether a debt constitutes 'consumer debt' of the sort covered by the

20   FDCPA, depends on the character of the lending transaction with particular attention to the purpose

21   for which the credit was extended."); *In re Pasley*, 596 B.R. 577, 584 (Bankr. W.D. Ky. 2019)

22
23   ("Determining whether an obligation is a consumer or business debt for FDCPA purposes requires

24   an examination of the nature of the transaction from which the debt arose"); *Miller v. McCalla,*

25   *Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("[W]e cannot

26   say that it is senseless to base the debt collector's obligation on the character of the debt when it

27   arose rather than when it is to be collected . . . Businessmen don't need the warnings. A businessman

28   who converts a business purchase to personal use does not by virtue of that conversion lose his

commercial sophistication and so acquire a need for statutory protection.")

The Ninth Circuit has stated that when determining whether a debt is consumer or business in nature, the Court must "pay[] particular attention to 'the purposes for which the credit was extended in order to determine whether the transaction was primarily consumer or commercial in nature.'" *Slenk v. Transworld Sys. Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001). "***Courts must therefore look to the*** substance of the transaction and the ***borrower's purpose*** in obtaining the loan, rather than the form alone." *Davis v. Hollins Law*, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013) (internal quotations omitted) (emphasis added). "The FDCPA characterizes debts in terms of end uses[.]" *Simmonds & Narita LLP v. Schreiber*, 566 F. Supp. 2d 1015, 1017 (N.D. Cal. 2008) (debt personally incurred relating to a company expense was "for business purposes" and not subject to the FDCPA).

In *Sun v. Rickenbacker Collection*, 2011 WL 704437, *3 (N.D. Cal. Feb. 18, 2011), this Court held that the plaintiff's representations to the defendant were clear and dispositive in finding the debt was for business purposes and the related FDCPA claims should be dismissed. *See also Smith v. Hunt & Henriques*, 2013 WL 6141416, *3 (N.D. Cal. Nov. 21, 2013) ("The [FDCPA] characterizes debts in terms of end uses"); *citing Bloom v. I.C. Systems, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992).

Here, similar to *Sun* and *Smith*, plaintiff admits the vehicle rental was for business purposes. Plaintiff flew from Chicago to San Francisco on the morning of Thursday, February 8, 2018. He rented a car from Thrifty at the San Francisco airport. He told Thrifty the rental was for business. One day later, he returned the car on Friday, February 9, 2018, in time to make it home for the weekend.

Plaintiff admits the purpose of the trip was to meet with a client and characterized it as a "business trip." When asked at his deposition whether any part of the trip was personal, plaintiff

DeNicolo said "no."

There are no issues of material fact on the nature of the underlying transaction. The rental of the vehicle from Thrifty, and all obligations arising from that rental, were expressly and exclusively for business purposes. For this reason, plaintiff's claims, all of which arise under the FDCPA, fail as a matter of law and Viking in entitled to summary judgment.

**2.  Plaintiff DeNicolo's FDCPA Claims Fail Because the Debt Was Not In Default When Placed With Viking**

While this Court should enter summary judgment in favor of Viking simply because the subject account is not a "debt" subject to the FDCPA, plaintiff DeNicolo's claim suffers a second fatal defect because the FDCPA does not apply to the collection of all debt, but only debt which is in default *when placed* with the collector. *See* 15 U.S.C. § 1692a(6); *see Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, *3 (N.D. Cal. 2013). Here, plaintiff DeNicolo's account was not in default when placed by Hertz with Viking for billing services.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, explicitly *excluded* from the definition is "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was ***not in default at the time it was obtained by such person***." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). When Viking obtains a Hertz account for billing services, including plaintiff DeNicolo's account, the subject debt is ***not*** in default.

"The FDCPA does not define the term 'default'; however, '[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default.'" *Guzman v. Nationstar Mortg. LLC*, 2019 WL 2436456, *11 (S.D. Cal. June 11, 2019). The FDCPA's

legislative history "is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue." *Mannello v. Residential Credit Sols., Inc.*, 2016 WL 94236, *4 (C.D. Cal. Jan. 7, 2016); *quoting De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011). The legislative history of the FDCPA states the following: "the committee does not intend the definition to cover the activities of . . . others who service outstanding debts for others, so long as the debts were not in default when taken for servicing[.]" S. REP. 95-382, 3-4, 1977 U.S.C.C.A.N. 1695, 1698; *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *accord Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir.2003); *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir.2003); *Rich v. Bank of Am., N.A.,* 666 F. App'x 635, 639 (9th Cir. 2016) (debt servicer who obtained account pre-default was *not* a debt collector under the FDCPA).

Viking's pre-default notice and billing of damage claims was specifically evaluated in *Diaz v. Viking Client Servs., Inc.,* 2016 WL 5796835 (D. Minn. Oct. 3, 2016). There, like here, the damage claim was placed with Viking within weeks of the date of damage (Diaz received a letter dated December 29 concerning damage incurred December 8). *Id.* at *2. The Court concluded Viking was ___**not**___ a debt collector based on the same billing services at issue in this case. *Id.* There, like here, the plaintiff alleged he received no notice from the rental car company or anyone else prior to receiving a notice from Viking. *Id.* at *1. The plaintiff alleged the debt went into default immediately after payment became due per the contract and without a period of delinquency. *Id.* The Court disagreed with the plaintiff's curiously anti-consumer position and observed that "it would not serve the FDCPA's broad, pro-debtor purpose if a debt went into default immediately after payment becomes due because of the adverse consequences that default imposes on debtors – such as acceleration, repossession, increased interest rates, and negative credit reports." *Id.* at *4. The Court added:

> Diaz conflates the act of incurring a debt (i.e., violating the Rental Agreement) with a debt being in default. Returning a damaged vehicle might violate the Rental

1
2
3
4
5
6
7

> Agreement and create an obligation to pay (i.e., a debt), but that is a distinct consideration from whether that debt is in default. . . . Requiring that there be time between incurring a debt and that debt being considered in default comports with the reasoning in *Alibrandi* and *Redden*, and makes logical sense here. Diaz denies he returned the car in a damaged state. Until Viking informed him of its position otherwise, it was impossible for Diaz to know the fact of or amount of his alleged debt. Moreover, adopting Diaz's position would subject him, and others similarly situated, to severe negative consequences (e.g., late charges, interest, and negative credit reporting) before he was even aware of his alleged debt. The FDCPA, which was meant to protect debtors from aggressive collection practices, cannot allow for such an unfair and illogical result.

8

*Id*. at *3.

9
10
11
12
13
14

Similar to *Diaz*, where the initial collection letter was sent within 21 days of the damage incident, here the first letter was generated within 20 days of the damage incident. As the Court found in *Diaz*, such a short time frame instead demonstrates that the debt was ***not*** in default when obtained by Viking. To hold otherwise would be to contradict, not further, the consumer protection aim of the FDCPA.

15
16
17
18
19

*Diaz* is not an outlier, as courts applying the FDCPA "have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, . . . they all agree that default does not occur until well after a debt becomes outstanding." *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003). In accord with *Diaz, Alibrandi* also noted the following:

20
21
22
23
24
25

> Given the persistent ambiguity of the term "default," we look to the underlying purpose of the statute. We conclude that the FDCPA's broad, pro-debtor objectives would not be served if we adopted Alibrandi's argument that default occurs immediately after payment becomes due. Alibrandi's position involves a curious role reversal—a debtor arguing that his debt was in default at the earliest possible time—and has the paradoxical effect of immediately exposing debtors to the sort of adverse measures, such as acceleration, repossession, increased interest rates, and negative reports to credit bureaus, from which the Act intended to afford debtors a measure of protection. We believe it ill-advised to adopt an approach that precipitously visits these consequences upon debtors.

26

*Id*. at 87 (internal citation omitted).

27
28

Here, Viking obtains Hertz damage claim accounts when they are *not* in default. Viking is contracted with Hertz to provide billing services for non-delinquent damage claims. The contract

states "Hertz desires to use the services of Viking Billing with respect to such non-delinquent damage claims owed by Hertz customers or third parties which, to the extent the claims are considered 'debts' for purposes of the Fair Debt Collection Practices Act (FDCPA), are not in 'default' at the time the claims are forwarded by Hertz to Viking Billing for billing services."   In that role, Viking "bill[s] all non-delinquent damage claims and provide[s] supporting documentation for the claim to all billing parties[.]"  *Id*.  The contract adds that "Hertz represents and agrees that all non-delinquent damage claims assigned to Viking Billing for billing services will constitute amounts that are not in default under Hertz's existing internal guidelines, customer contracts and applicable law."  *Id*.  Viking provides a first notice of loss upon assignment from Hertz, usually within 3-7 days of placement.

More, Viking Billing is a "servicer" of damage claims for Hertz, and is not collecting defaulted debts.  *See Diaz*, 2016 WL 5796835 at *3 ("a defendant is not a debt collector if the defendant is servicing, rather than collecting, the plaintiff's debt."); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (servicer is not a debt collector under the FDCPA "as long as the debt was not in default at the time it was assigned."); *see also Schlosser*, 323 F.3d at 538 ("For those who acquire debts originated by others, the distinction drawn by the statute—whether the loan was in default at the time of the assignment—makes sense as an indication of whether the activity directed at the consumer will be servicing or collection.").

Plaintiff's damage claim account is exemplary of this process.  On February 9, 2018, plaintiff returned the rental vehicle to Thrifty at the San Francisco airport.  Plaintiff's contract with Thrifty states the following: "Charges not known to Thrifty at the completion of the rental are payable by You, or the by the person, corporation or other entity to whom such Charges are to be billed[.]"  On February 10, 2018, a Vehicle Incident Report was completed by Thrifty.

On March 1, 2018, just 20 days after the incident date, Hertz placed the account with Viking.

That same day, Viking initiated the first notice of loss letter to plaintiff.  Due to a clerical error, it was not mailed.   The initial notice from Viking was due to be the first written notice and invoice relating to the vehicle damage.  Viking attempted to call plaintiff DeNicolo in the following days and weeks, but plaintiff evaded contact and falsely represented first that he did not speak English (March 5, 2018), and next that Viking had the wrong number (April 3, 2018).

Importantly, when Hertz assigned the damage claim account to Viking on March 1, 2018, just 20 days after incident, it was ***not*** in default.  Plaintiff DeNicolo had not received an invoice for the damage, and such invoice was due to come from Viking.  In fact, at the time the account was received by Viking, plaintiff would not have been aware that any debt even existed, let alone was in default because Viking provided that initial notice. The fact that the letter was not mailed at that time due to an incorrect mailing address is on no consequence to the issue of whether the account was in default *when obtained* by Viking.  *See* 15 U.S.C. § 1692a(6)(F)(iii) (the FDCPA does not apply to "a debt which was not in default at the time it was obtained by such person").  Critically, neither Viking nor Hertz treated the account as being in default.  To the contrary, their contract expressly identifies the account as being "non-delinquent" and "not in default" at the time of assignment.

More, the template first notice letter Viking intended to send to plaintiff states the company is partnering with Thrifty "in the processing of this claim."  The letter provides a breakout of the claim balance, advises the individual to contact their insurance company, and invites phone calls "to discuss the claim process."

Based on the foregoing, there are no issues of material fact.  The subject debt was not in default at the time it was obtained by Viking.  Plaintiff DeNicolo's claims are not subject to the FDCPA and this Court should enter judgment in favor of Viking and against plaintiff.

### 3. The Illinois Vehicle Act Claim Fails

Plaintiff DeNicolo labels Count III as arising under the IVC.  This is misleading because, in truth, Count III is just another alleged violation of the FDCPA (like Counts I and II).  Specifically, plaintiff alleges Viking violated the FDCPA by violating the IVC. As an initial matter, alleged violations of state or local collection laws "do not constitute *per se* violations of the FDCPA." *Gallego v. Northland Grp. Inc*., 814 F.3d 123, 127 (2d Cir. 2016); *Currier v. First Resolution Inv. Corp*., 762 F.3d 529, 537 (6th Cir. 2014) (stating that "Congress did not turn every violation of state law into a violation of the FDCPA"); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (holding that "the conduct or communication at issue must also violate the relevant provision of the FDCPA," and not merely a state-law provision); *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004) (stating that the FDCPA "was not meant to convert every violation of a state debt collection law into a federal violation").

This is true both in the Ninth Circuit where this matter is pending, and in the Seventh Circuit, which covers Illinois and the IVC.  *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir.2007) (holding that § 1692f "does not take a state-law dispute and move it to federal court"); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996) (disagreeing "that debt collection practices in violation of state law are per se violations of the FDCPA").  For this reason alone, plaintiff's "piggy back" IVC claim fails as a matter of law.

Moreover, because an alleged violation of state law is not a *per se* violation of the FDCPA, a "court must determine whether any alleged state-law violation also constitutes a violation of one of the enumerated sections of the FDCPA." *Taylor v. Quall*, 471 F. Supp. 2d 1053, 1062 (C.D. Cal. 2007).  In other words, a court must evaluate whether the act complained of is (a) subject to the FDCPA, and (b) in violation of the FDCPA.  As discussed above, plaintiff DeNicolo's FDCPA claims fail as a matter of law because they are not subject to the FDCPA, and his factual allegations are simply false.

Additionally, plaintiff DeNicolo misinterprets the IVC as requiring a rental company (which Viking is not) to reach an agreement on damages or sue before attempting to collect a damage claim. Plaintiff's theory would force Hertz or Viking to file suit against a rental customer before sending a letter or placing a phone call.  This is both illogical and anti-consumer.  Plaintiff's theory is simply wrong.  Nevertheless, because the FDCPA claims fail as a matter of law, so too must plaintiff's IVC claim.

### *B. Plaintiff Fox's Claims Fail As a Matter Of Law*

Plaintiff Fox alleges Viking violated the Rosenthal Act, UCL, and CRA.  Plaintiff also seeks a Declaratory Judgment.  For the reasons below, Viking is entitled to summary judgment on plaintiff Fox's claims.

#### 1. The Rosenthal Act Claim Fails Because the Omitted Disclosures Were Not Required

Plaintiff Fox alleges Viking committed a "technical violation of the law" by not including disclosures set forth by the FDCPA (but not required of Viking under the FDCPA).  Plaintiff Fox alleges this nevertheless violates the Rosenthal Act.  While plaintiff Fox's assertion is absurd on its face, it also fails as a matter of law.

Plaintiff Fox alleges Viking violated § 1788.17 of the Rosenthal Act, which incorporates by reference portions of the FDCPA.  Section 1788.17 of the Rosenthal Act states the following:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal.  The references to federal codes in this section refer to those codes as they read January 1, 2001.

Cal. Civ. Code § 1788.17.  Plaintiff Fox alleges the provision requires Viking to include the disclosures set for under § 1692g of the FDCPA.  Not so.

Like the FDCPA, the Rosenthal Act does not apply until an obligation is overdue, delinquent,

and/or defaulted.  As discussed in detail above, plaintiff DeNicolo's FDCPA claims fail as a matter of law because the damage claim was not in default when it was obtained by Viking.  A similar conclusion holds true under the Rosenthal Act because the process by which Viking obtained plaintiff Fox's account was materially identical.

Section 1788.17 applies to the collection or attempted collection of a "consumer debt."  The term "consumer debt" is defined as "money, property or their equivalent, ***due or owing or alleged to be due or owing*** from a natural person by reason of a consumer credit transaction."  Cal. Civ. Code § 1788.2(d) (emphasis added).  Importantly, the money, property or other equivalent must be "due or owing or alleged to be due or owing."  The term "due and owing" is not defined.  However, the Office of the Attorney General issued the following opinion:

> The first issue to be addressed with respect to the Act concerns when a debt is "due and owing."  These terms have not been defined in the Act and may have different meanings depending upon their context. "Due" generally means "having reached the date at which payment is required" (Webster's 3d New Internat. Dict. (1971) p. 699) or "[i]mmediately enforceable" (Black's Law Dict. (7th ed. 1999) p. 515, col. 2). "Owing" generally means "due to be paid" (Webster's, supra, at p. 1613) or "[t]hat is yet to be paid" or "owed" (Black's, supra, at p. 1130, col. 2).

> We have examined the statutory history of the Act's provisions in some detail. (Stats. 2000, chs. 688, 375; Stats. 1999, ch. 319; Stats. 1994, ch. 1010; Stats. 1980, ch. 1126; Stats. 1978, ch. 390; Stats. 1977, ch. 907.) The legislative purposes appear to be focused entirely upon debts that have become delinquent and subject to immediate collection activities.  This construction of the phrase "due and owing" would have the effect of conforming the Act's provisions to federal law. (*See Bailey v. Security National Servicing Corp*. (7th Cir. 1998) 154 F.3d 384, 386-389; *Whitaker v. Ameritech Corp*. (7th Cir. 1997) 129 F.3d 952, 958-959; *Newman v. Boehm, Pearlstein & Bright, Ltd*. (7th Cir. 1997) 119 F.3d 477, 481-482.).

> Accordingly, the Act applies to debts that have become delinquent, making them subject to collection. In contrast, credit card obligations that are "current," prior to becoming delinquent and before the date at which payment is required, are not subject to the Act's requirements

85 Cal. Op. Att'y Gen. 215 (2002); *see Leon v. Emergency Med. Grp. of Watsonville*, 2016 WL 3773933, *13 (Cal. Ct. App. July 11, 2016) ("We find [the Attorney General's] opinion persuasive, and therefore construe the phrase "due or owing" to mean delinquent."); *Burris v. HSBC Bank USA,*

*Nat'l Ass'n*, 2014 WL 12772260, *6 (C.D. Cal. Dec. 19, 2014) ("collection of debt that is 'due or owing' is fairly understood as debt that was to be due presently or was previously due and is now delinquent").

To be sure, the rationale set forth in *Diaz* (discussed above) for why Viking's billing statement is not in "default" under the FDCPA applies equally for why the billing statement is not "due and owing" under the Rosenthal Act. *Diaz*, 2016 WL 5796835 at *3 ("Diaz conflates the act of incurring a debt (i.e., violating the Rental Agreement) with a debt being in default. Returning a damaged vehicle might violate the Rental Agreement and create an obligation to pay (i.e., a debt), but that is a distinct consideration from whether that debt is in default. . . . Diaz denies he returned the car in a damaged state. Until Viking informed him of its position otherwise, it was impossible for Diaz to know the fact of or amount of his alleged debt. Moreover, adopting Diaz's position would subject him, and others similarly situated, to severe negative consequences (e.g., late charges, interest, and negative credit reporting) before he was even aware of his alleged debt.").

As discussed in detail above, pursuant to their contract, Hertz places non-delinquent, non-defaulted damage claims with Viking for billing services. Specifically, Viking provides the first notice of loss, *i.e.* the first notice the customer receives regarding the damage claim. This was the case with plaintiff Fox. Fox would not even be aware of, let alone have any amount "due and owing" at the time he is first notified of the damage claim.

Plaintiff Fox returned a rental vehicle on April 2, 2019, at which time damage was identified. Hertz forwarded the claim to Viking on April 22, 2019. On April 23, 2019, Viking mailed plaintiff the first notice of loss. Plaintiff received the letter on April 26, 2019.

Plaintiff Fox admits the letter he received from Viking was his first notice of the damage claim. The letter advised plaintiff Fox that he "rented a vehicle from Hertz Corporation and returned the vehicle with damages" and that Viking was "partnering with Hertz Corporation to assist in the

processing of this claim." The letter includes the claim balance, a breakout of the claim balance, a phone number to contact Viking "to discuss the claim process," and methods to pay the claim, including insurance or credit card coverage.

Plaintiff Fox initially contacted Hertz upon receipt of the letter on April 26, 2019, but ultimately called Viking and left a voicemail on May 2, 2019. Viking returned his call on May 3, 2019. Plaintiff Fox spoke with Viking representative R. Foley for approximately 10 minutes. He characterized the call as "professional" and did not feel the agent was rude or harassed or abused him in any way. During the call, the agent immediately addressed plaintiff Fox's assertion that he did not owe the claim and never demanded payment. While working with plaintiff Fox, the agent said, "if it's not yours, I don't want you to pay it." When plaintiff Fox advised he had pictures proving he returned the car in the same condition as he rented it, the agent asked him to send the pictures so she could review and if, everything matched up, Viking would close the file.

Within two weeks of the call, plaintiff Fox received an email from Hertz confirming the damage claim had been closed.

There are no genuine issues of material fact. The damage claim never became "due and owing." Viking only sent plaintiff Fox a notice of claimed damage and provided him tools to contact the company to discuss, dispute or pay the claim. When he called to dispute, Viking worked with him to process the claim – which is *exactly* what the letter advised. At no time during the 10-minute call did Viking demand payment of the debt or otherwise state or infer that the claim was immediately due or overdue. To the contrary, Viking processed the claim and plaintiff Fox received confirmation it had been closed shortly thereafter.

Because the damage claim was not "due and owing" while Viking provided billing services, Viking was not attempting to collect a "consumer debt," and plaintiff Fox's Rosenthal Act claims should be dismissed as a matter of law.

1

2

### 2. Fox's Unfair Competition Law Claim Must Be Dismissed

3

Plaintiff Fox alleges Viking violated the UCL by allegedly failing to provide notices

4

"required" under the Rosenthal Act.  Docket No. 82, ¶ 92.  California's UCL prohibits "any

5

unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Plaintiff

6

Fox's claim fails for two reasons.

7

First, the claim is derivative of the Rosenthal Act claim.  While plaintiff Fox attempts to

8

frame his UCL claim as based upon unlawful, unfair and fraudulent acts by Viking, his purported

9

basis for damage makes clear that his UCL claim relates to purported "unlawful debt collection

10

policies."  Docket No. 82, ¶ 93.  Because Viking's billing services were not unlawful, plaintiff's

11

UCL claims must be dismissed.

12

Second, under the UCL, a plaintiff must show that he or she "suffered injury in fact" and

13

"lost money or property as a result" of an unfair business practice. Cal. Bus. & Prof. Code § 17204;

14

*In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (Calif. 2009).  Injury in fact exists where, as a result of

15

the unfair business practice, a plaintiff is "required to enter into a transaction, costing money or

16

property that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Court*, 51 Cal.

17

4th 310, 323 (Calif. 2011).  Plaintiff Fox alleges he would not have rented the vehicle had he known

18

he would be subject to collections.  Docket No. 82, ¶ 93.  But plaintiff Fox signed an agreement with

19

Hertz that contemplated he may be billed for damage to the vehicle.  Moreover, plaintiff Fox has

20

not submitted any evidence to substantiate his claim.  This Court should dismiss plaintiff Fox's UCL

21

claim.

22

23

### 3. The California Consumer Legal Remedies Act Should Be Dismissed

24

Plaintiff Fox alleges Viking violated the CCRA by "misrepresent[ing] its relationship with

25

Hertz and its ability to verify the asserted debt for damage to a rental vehicle, misrepresenting the

26

validity of its debt-collection efforts, making false statements regarding its ability to negotiate the

27

28

asserted debt, including by offering any reductions in that amount, and misrepresenting that the rental agreement between Hertz and Plaintiff Fox conferred a right on Viking to violate the Rosenthal Act when trying to collect on the asserted debt."  Docket No. 82, ¶ 99.  On its face, plaintiff Fox's allegation fails because Viking sent plaintiff Fox a letter disclosing that it was partnering with Hertz to assist in the processing of the damage claim, spent 10-minutes on the phone with plaintiff Fox processing his damage claim, and then withdrew the damage claim.  Viking's representations about its relationship with Hertz were accurate.  Additionally, Viking did not discuss payment, negotiation, or reduction of the amount of the damage claim with Fox.  Instead, Viking discussed and processed plaintiff Fox's dispute of the damage claim, and did not make any demands on him to pay it.

### *C. Neither Plaintiff Is Not Entitled To Declaratory Relief*

"A declaratory judgment is not a theory of recovery[, but] merely offers an additional remedy to litigants." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (citations and quotation marks omitted); *Malasky v. Esposito*, 2019 WL 79032, *10 (N.D. Cal. Jan. 2, 2019) ("declaratory relief does not constitute an independent basis for recovery and may not stand alone."); *Keppler v. Bank of New York Mellon*, 2018 WL 6809564, at *5 (E.D. Cal. Dec. 27, 2018), report and recommendation adopted, 2019 WL 1095166 (E.D. Cal. Feb. 19, 2019) (declaratory judgment "only creates a remedy [and is] not a separate cause of action"). Because plaintiffs' claims fail as a matter of law, plaintiffs' derivative claim for declaratory relief must be dismissed.

### **VI. CONCLUSION**

There are no issues of material fact.  For the reasons stated above, this Court should dismiss plaintiffs' claims against Viking with prejudice.

Dated:  1/27/2020                    SESSIONS FISHMAN, NATHAN & ISRAEL, L.L.P.
                                                     */s/James K. Schultz*
                                                     James K. Schultz

1

2      *Attorney for Defendant Viking Client Services, LLC.*
       *dba Viking Billing Service*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Viking Client Services, LLC's Motion for Summary Judgment