Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
Leland H. Belew (SBN 293096)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com
leland@andrusanderson.com

Clinton A. Krislov (*pro hac vice*)
Christopher M. Hack (*pro hac vice*)
KRISLOV & ASSOCIATES, LTD
20 North Wacker Drive, Suite 1300
Chicago, Illinois 60606
Telephone: (312) 606-0500
Facsimile: (312) 739-1098
clint@krislovlaw.com
chris@krislovlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| RONALD G. DENICOLO, JR., and MICHAEL G. FOX, on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br><br>      vs.<br><br>THE HERTZ CORPORATION and VIKING CLIENT SERVICES, INC., d/b/a VIKING BILLING SERVICE,<br><br>        Defendants. | Civil Action No. 4:19-cv-00210-YGR<br><br>**PLAINTIFFS' OPPOSITION TO VIKING CLIENT SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br><u>CLASS ACTION</u><br><br>Hearing Date:  April 14, 2020<br>Hearing Time: 2:00 p.m.<br>Location:     Courtroom 1, 4th Floor<br>Judge:       Hon. Yvonne Gonzalez Rogers |

**<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ................................................................................................................. 1

II.   RELEVANT FACTS ......................................................................................................... 2

III.  LEGAL STANDARD ........................................................................................................ 5

IV.   ARGUMENT ...................................................................................................................... 6

  A.  Viking is Not Entitled to Summary Judgment on Plaintiff's DeNicolo's Claims. ......................... 6

    1.   Whether the Debt Viking Attempted to Collect from DeNicolo was "Consumer Debt" Under the FDCPA is a Question of Fact. .............................................................. 6

    2.   There is a Genuine Issue of Fact as to Whether DeNicolo's Debt was "in Default" Under the FDCPA When Placed with Viking for Collection. .......................................... 11

    3.   Viking Establishes No Other Valid Defense to Plaintiff's FDCPA Claims. ....................... 16

    4.   Plaintiff DeNicolo's Vehicle Act Claim Survives. ......................................... 18

  B.  Viking is Not Entitled to Summary Judgment on Plaintiff Fox's Claims. ................................. 20

    1.   Plaintiff Fox's Rosenthal Act Claim Survives. ......................................... 20

    2.   Plaintiff Fox's Unfair Competition Law Claim Survives. ...................................... 22

    3.   Plaintiff Fox's California Consumer Legal Remedies Act Claim Survives. ....................... 24

  C.  Both Plaintiffs Are Entitled to Declaratory Relief. ......................................... 25

V.    CONCLUSION ................................................................................................................... 26

PLAINTIFFS' OPPOSITION TO VIKING'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

**State Cases**

*Davidson v. Seterus, Inc.*
  21 Cal. App. 5th 283 (2018) ........................................................................ 21

*Ellis v. Phillips and Cohen Assocs., Ltd.*
  Case No. 5:14-CV-05539-EJD, 2016 WL 3566981 (N.D. Cal. June 30, 2016)................................. 8

*Farmers Ins. Exch. v. Sup.Ct.*
  2 Cal. 4th 377 (1992) ................................................................................ 22

*Glue-Fold, Inc. v. Slautterback Corp.*
  82 Cal. App. 4th 1018 (2000) ...................................................................... 25

*Kwikset Corp. v. Super. Ct.*
  51 Cal. 4th 310 (2011) .............................................................................. 23

*Leon v. Emergency Med. Grp. of Watsonville*
  Case No. H040521, 2016 WL 3773933 (Cal. Ct. App. Jul. 11, 2016) .............................. 20

*People v. James*
  122 Cal. App. 3d 25 (1981) ........................................................................ 23

**Federal Cases**

*Adams v. Bureau of Collection Recovery, LLC*
  Case No. 10-CV-12818, 2011 U.S. Dist. LEXIS 157527 (E.D. Mich. May 16, 2011)................... 10

*Adickes v. S.H. Kress & Co.*
  398 U.S. 144 (1970) .................................................................................. 5

*Akalwadi v. Risk Mgmt. Alts., Inc.*
  336 F. Supp. 2d 492 (D. Md. 2004) ................................................................ 9

*Ambat v. City & Cty. of San Francisco*
  757 F.3d 1017 (9th Cir. 2014) ..................................................................... 24

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ............................................................................... 5, 6

*Ballard v. Equifax Check Serv., Inc.*
  158 F. Supp. 2d 1163 (E.D. Cal. 2001)........................................................... 23

*Beler v. Blatt, Hasenmiller, Liebsker & Moore, LLC*
  480 F.3d 470 (7th Cir. 2007) ..................................................................... 20

*Bilbrey ex rel. Bilbrey v. Brown*
  738 F.2d 1462 (9th Cir. 1984) .................................................................... 25

*Black v. AFNI, Inc.*
  Case No. 15-CV-1176 (WHW)(CLW), 2018 WL 3546193 (D.N.J. Jul. 23, 2018) ..................... 11

*Bloom v. I.C. System, Inc.*
  972 F.2d 1067 (9th Cir. 1992) ...................................................................... 6

*Bridge v. Ocwen Fed. Bank, FSB*
  681 F.3d 355 (6th Cir. 2012) ...................................................................... 13

*Brown v. Budget Rent-A-Car Sys., Inc.*
  119 F.3d 922 (11th Cir. 1997) ..................................................................... 9

*Burris v. HSBC Bank USA, Nat'l Ass'n*
  Case No. 14-CV-02242 AB (CWX), 2014 WL 12772260 (C.D. Cal. Dec. 19, 2014)................... 20

*Butler v. J.r.S.-I, Inc.*
  Case No. 15 C 6059, 2016 WL 1298780 (N.D. Ill. Apr. 4, 2016)................................. 20

*Celotext Corp. v. Catrett*
  477 U.S. 317 (1986) .................................................................................. 5

*Chaset v. Fleer/Skybox Int'l., LP*
  300 F.3d 1083 (9th Cir. 2002) ............................................................................. 23
*Chulsky v. Hudson Law Offices, P.C.*
  777 F. Supp. 2d 823 (D.N.J. 2011) ...................................................................... 20
*Clark v. Capital Credit & Collection Servs., Inc.*
  460 F.3d 1162 (9th Cir. 2006) ............................................................................. 17
*Currier v. First Resolution Inv. Corp.*
  762 F.3d 529 (6th Cir. 2014) ............................................................................... 19
*Davis v. Hollins Law, APC*
  968 F. Supp. 2d 1072 (E.D. Cal. 2013)................................................................... 7
*De Dios v. Int'l Realty & Invs.*
  641 F.3d 1071 (9th Cir. 2011) ............................................................................. 12
*Diaz v. Viking Client Servs., Inc.*
  Case No. 16-CV-336 (SRN)(KMM), 2016 WL 5796835 (D. Minn. Oct. 3, 2016) .......................... 16
*Echlin v. Dynamic Collectors, Inc.*
  102 F. Supp. 3d 1179 (W.D. Wash. 2015).............................................................. 11
*Eid v. Alaska Airlines, Inc.*
  621 F.3d 858 (9th Cir. 2010) ................................................................................. 6
*Eul v. Transworld Sys.*
  Case No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017) ........................ 20
*Fagan v. Lawrence Nathan Assocs., Inc.*
  957 F. Supp. 2d 784 (E.D. La. 2013).................................................................... 11
*Forgeron v. Hough*
  2011 WL 3205295 (N.D. Ill. Jul. 26, 2011)............................................................. 9
*Francisco v. Midland Funding, LLC*
  Case No. 17 C 6872, 2019 WL 1227791 (N.D. Ill. Mar. 15, 2019) ....................... 18
*Franklin v. Parking Revenue Recovery Servs., Inc.*
  832 F.3d 741 (7th Cir. 2016) ............................................................................... 10
*Goodman v. Asset Acceptance LLC*
  Case No. 18-CV-01667-RM-KMT, 2019 WL 7037482 (D. Colo. Dec. 20, 2019) ....... 6
*Gordon v. Chipotle Mexican Grill, Inc.*
  344 F. Supp. 3d 1231 (D. Colo. Sept. 26, 2018)................................................... 23
*Gordon v. Chipotle Mexican Grill, Inc.*
  Case No. 17-CV-1415-CMA-MLC, 2018 WL 3653173 (D. Colo. Aug. 1, 2018)........ 23
*Guccione v. JPMorgan Chase Bank, N.A.*
  Case No. 3:14-CV-04587 LB, 2015 WL 1968114 (N.D. Cal. May 1, 2015)............... 22
*Hansen v. Ticket Track, Inc.*
  280 F. Supp. 2d 1196 (W.D. Wash. 2003)..................................................... 6, 9, 10
*Hartman v. Meridian Fin. Servs.*
  191 F. Supp. 2d 1031 (W.D. Wis. 2002) ......................................................... 13, 15
*Healy v. Jzanus Ltd.*
  Case No. 02 CV 1061 (CBA)(ASC), 2002 WL 31654571 (E.D.N.Y. Nov. 20, 2002) ..... 13
*Hepsen v. J.C. Christensen & Assocs.*
   Case No. 8:07-CV-1935-T-EAJ, 2009 WL 3064865 (M.D. Fla. Sep. 22, 2009) ......... 10
*Hoehn v. FCC Fin., LLC*
  126 F. Supp. 3d 472 (D.N.J. 2015) ...................................................................... 11
*Howell v. Polk*
  532 F.3d 1025 (9th Cir. 2008) ............................................................................... 6

PLAINTIFFS' OPPOSITION TO VIKING'S MOTION FOR SUMMARY JUDGMENT

*Howlett v. Rose*
496 U.S. 356 (1990) ........................................................................................... 18

*Justice v. Ocwen Loan Servicing, LLC*
Case No. 2:13-CV-00165, 2014 WL 526143 (S.D. Ohio Feb. 7, 2014) ............................ 13

*LeBlanc v. Unifund CCR Partners*
601 F.3d 1185 (11th Cir. 2010) ............................................................................. 19

*Magee v. AllianceOne, Ltd.*
487 F. Supp. 2d 1024 (S.D. Ind. 2007) .................................................................... 14

*Makaeff v. Trump Univ., LLC*
145 F. Supp. 3d 962 (S.D. Cal. 2015) ...................................................................... 24

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*
312 U.S. 270 (1941) ........................................................................................... 26

*Masuda v. Citibank, N.A.*
38 F. Supp. 3d 1130 (N.D. Cal. 2014) ..................................................................... 22

*Mavris v. RSI Enters. Inc.*
86 F. Supp. 3d 1079 (D. Ariz. 2015) .......................................................... 11, 14, 15, 16

*McCabe v. Crawford & Co.*
210 F.R.D. 631 (N.D. Ill. 2002) ......................................................................... 9, 19

*McCabe v. Crawford & Co.*
272 F. Supp. 2d 736 (N.D. Ill. 2003) ...................................................................... 19

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*
637 F.3d 939 (9th Cir. 2011) ................................................................................ 18

*Mejia v. Marauder Corp.*
Case No. C06-00520 HRL, 2007 WL 806486 (N.D. Cal. Mar. 15, 2007) ........................ 18

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*
214 F.3d 872 (7th Cir. 2000) ................................................................................. 8

*Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*
Case No. 14-CV-01849-BLF, 2014 WL 3728514 (N.D. Cal. Jul. 28, 2014) ...................... 8

*Mohanna v. Carrington Mortg. Servs. LLC*
Case No. 18-CV-02563-WHO, 2018 WL 3730419 (N.D. Cal. Aug. 6, 2018) .................... 21

*Morrison v. Clear Mgmt. Sols.*
Case No. 1:17-CV-51, 2019 WL 122905 (D. Utah Jan. 7, 2019) ................................... 13

*Nyberg v. Portfolio Recovery Assocs., LLC*
Case No. 3:15-CV-01175-PK, 2016 WL 3176585 (D. Or. June 2, 2016) ......................... 18

*Ohlson v. Cadle Co.*
Case No. 04-CV-3418 (DRH)(ETB), 2008 WL 4516233 (E.D.N.Y. Sep. 30, 2008) ........... 12

*Pantoja v. Portfolio Recovery Assocs., LLC*
852 F.3d 679 (7th Cir. 2017) ................................................................................. 12

*Peters v. Coface Collections N. Am., Inc.*
639 F. App'x 460 (9th Cir. 2016) ............................................................................ 6

*Reichert v. Nat'l Credit Sys., Inc.*
531 F.3d 1002 (9th Cir. 2008) ............................................................................... 18

*Riggs v. Prober & Raphael*
681 F.3d 1097 (9th Cir. 2012) ............................................................................... 18

*Sanders v. LoanCare LLC*
Case No. 18-CV-09376, 2019 WL 441964 (C.D. Cal. Feb. 1, 2019) .............................. 22

*Sandigo v. Ocwen Loan Servicing, LLC*
Case No. 17-CV-02727-BLF, 2019 WL 2233051 (N.D. Cal. May 23, 2019) .................... 21

*Schwartz v. Upper Deck Co.*
  967 F. Supp. 405 (S.D. Cal. 1997)........................................................................ 23
*Scott v. Portfolio Recovery Assocs., LLC*
  139 F. Supp. 3d 956 (S.D. Iowa 2015) ................................................................... 6
*Simmonds & Narita LLP v. Schreiber*
  566 F. Supp. 2d 1015 (N.D. Cal. 2008) ................................................................. 9
*Simmons v. Med-I-Claims*
  Case No. 06-CV-1155, 2007 WL 486879 (C.D. Ill. Feb. 9, 2007)...................... 12
*Slenk v. Transworld Sys., Inc.*
  236 F.3d 1072 (9th Cir. 2001) ....................................................................... 6, 7, 8
*Societe de Conditionnement en Aluminium v. Hunter Eng. Co., Inc.*
  655 F.2d 938 (9th Cir. 1981) .............................................................................. 25
*Stock v. Firstmark Servs.*
  Case No. SACV 18-01363-CJC(KESx), 2018 WL 8193373 (C.D. Cal. Dec. 12, 2018) ................. 21
*Stubbs v. Cavalry SPV I, LLC*
  Case No. 12-CV-7235, 2013 WL 1858587 (N.D. Ill. May 1, 2013) ..................... 20
*Sun v. Rickenbacker Collection*
  2011 WL 704437 (N.D. Cal. Feb. 18, 2011) ......................................................... 9
*Turner v. Cook*
  362 F.3d 1219 (9th Cir. 2004) ............................................................................... 8
*Wade v. Reg'l Credit Ass'n*
  87 F.3d 1098 (9th Cir. 1996) .............................................................................. 19
*Yelin v. Swartz*
  790 F. Supp. 2d 331 (E.D. Pa. 2011) .................................................................... 9

**State Statutes**
Cal. Civ. Code § 1788.17 ....................................................................................... 22
Consumer Legal Remedies Act "CLRA"
  Cal. Civ. Code §§ 1750-1784 ........................................................................ 2, 24
Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act" or "RFDCPA")
  Cal. Civ. Code §§ 1788-1788.33 ................................................................. passim
Unfair Competition Law ("UCL")
  Cal. Bus. & Prof. Code § 17200 *et seq.* ..................................................... 2, 22, 23

**Federal Statutes**
15 U.S.C. § 1692(e) ............................................................................................... 13
15 U.S.C. § 1692a(5) ............................................................................................. 11
15 U.S.C. § 1692a(6)(F)(iii)............................................................................. 12, 13
15 U.S.C. § 1692e(11) .......................................................................................... 3, 4
15 U.S.C. § 1692f.................................................................................................. 20
15 U.S.C. § 1692k(c) ............................................................................................. 18
15 U.S.C. § 1692k(d) ............................................................................................. 18
15 U.S.C. § 1692k(e) ............................................................................................. 18
Fair Debt Collection Practices Act ("FDCPA")
  15 U.S.C. §§ 1692-1692p .......................................................................... passim
Fed. R. Civ. P. 56(a)................................................................................................ 5

**Other Authorities**
Fed. Trade Comm'n, Advisory Op. n. 2 (April 25, 1989) ...................................... 12
William Stern, *Bus. & Prof.C. §17200 Practice*, *in* Rutter Group Civil Litig. Series (2019) ............. 22

**Other State Statutes**

625 ILL. COMP. STAT. § 5/6-305.2 ................................................................................................ 19

## I.    **INTRODUCTION**

Defendant Viking Client Services, LLC, d/b/a Viking Billing Service ("Viking") seeks to avoid factual scrutiny of its debt-collection practices, and so submits its instant Motion for Summary Judgment (Viking's "Motion" or "MSJ").  But summary judgment for Viking is inappropriate because it would require this Court to wade into a thicket of fact questions involving both Viking and Defendant The Hertz Corporation ("Hertz"),[1] and their internal processes for handling claims for purported damage to rental cars.

One thing, however, *is* clear: Viking has asked this Court to bless an unlawful scheme that strips tens of thousands of car-rental customers of their rights under the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA").  Indeed, Viking's primary defense in this action—namely that it and Hertz (unilaterally) declared the debts "not in default"—is part of a ploy that has been routinely rejected by courts around the country.  Under this gambit, Hertz hands off damage claims to Viking, its debt collector, in order to preserve its customer goodwill and avoid the dirty work of collections.  Meanwhile, Viking—based solely on its (private) agreement with Hertz internally that the debts were not considered "in default" when transferred to Viking—takes the opportunity to send collection letters to consumers without providing them the benefit of the disclosures required by the FDCPA and California's Rosenthal Fair Debt Collection Practices Act, Civil Code §§ 1788 *et seq.* ("Rosenthal Act").

Under this scheme, Hertz customers who are accused of damaging cars hear nothing whatsoever from Hertz.  Instead, these customers (numbering more than 30,000) are first contacted by Viking more than 30 days after the purported damage.  If customers do not promptly pay up, Viking changes its name on its letterhead, admits that it is in fact a debt collector, and continues to go about its collection work.  As seen in this case, such disclosures require nothing more than using the second side of the dunning notice Viking mails; there is simply no purpose to Defendants' scheme except for the profits they reap by ignoring the law and withholding the required disclosures.

By asking this Court to sign off on this arrangement, Viking seeks permission to continue

---

[1] Discovery with Hertz has just begun, as it has only recently returned from arbitration.

PLAINTIFF'S OPPOSITION TO VIKING'S MOTION FOR SUMMARY JUDGMENT

operating as a debt collector free from the FDCPA. But courts have repeatedly explained: the FDCPA does not allow debt collectors to make up their own rules to perpetrate an end-run around the statute.

Grasping desperately to a particularity of Plaintiff DeNicolo's circumstances, Viking also seeks relief on the grounds that he rented the vehicle underlying this dispute while on a trip to meet with a client. This requires, Viking argues, that the Court deem the debt resulting from the alleged damage to the vehicle a "business" obligation outside the scope of the FDCPA. But again, the purpose of the FDCPA—"to eliminate abusive debt collection practices"—cannot be so easily stymied; Plaintiff DeNicolo's rental of a vehicle was a "consumer transaction."

Finally, Viking attacks Plaintiffs' claims under the Rosenthal Act, and California's other consumer protection statutes—the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA")—but largely only because, as it claims, it did not violate the FDCPA. As stated, Defendants' collections arrangement with Hertz does run afoul of the FDCPA, but also, Plaintiffs' claims under the Rosenthal Act, UCL, and CLRA, survive independently.

For these reasons, and those set forth below, Defendants' Motion should be denied.

## II.     **RELEVANT FACTS**

*Viking's Relationship with Hertz*

Viking first became a collection agency—Viking Collection Service, Inc.—approximately 50 years ago, and has performed collections for car rental agencies since then. *See* Declaration of Leland H. Belew in Support of Plaintiffs' Opposition to Viking's Motion for Summary Judgment ("Belew Declaration"), Exhibit ("Exh.")[2] 1, at 20:11-21:21, 39:2-7. Viking has performed collections for Hertz since at least 2008, initially only for damages claims and then, beginning in 2010, for non-damages claims as well. *Id.*, at 47:5-6, 130:1-17. In approximately 2012, wanting "to take the word 'collection' out of [its] name," Viking changed its name to Viking Client Services, Inc., and then approached Hertz about adding "billing services" to the collection work it was already doing.[3] *Id.*, at

---

[2] All subsequent "Exh." citations are to the Exhibits submitted with the Belew Declaration.

[3] Notably, despite Viking's contrary implication (*see* MSJ, at 7:1-2, and fn. 9), the contract which describes these "additional" services is titled "Amendment No. 1 To Collection Services Agreement."

39:14-41:4, 47:13-16.

Apart from unilaterally describing Viking's "billing" and collection work as separate services, however, they are the same in virtually all respects: the way in which Viking receives notice of new accounts from Hertz is the same; the process for generating letters to Hertz customers is the same; there are Viking agents and managers who work both kinds of accounts; the same database, communications systems, and third-party vendors are used for both; and the collection and "billing" agents are located at, and the activities for each take place at the same geographical location.  Exh. 2, at 29:5-8, 91:16-94:10.

In fact, the only true distinctions between the "billing" and "collection" services that Viking *provides* to Hertz is (1) that letters sent under the "billing" umbrella omit the disclosures and consumer protection warnings required by the FDCPA and Rosenthal Act, and (2) Viking earns a 40% higher contingency rate on the debts it collects under its "collection" umbrella than those it collects under "billing."  *Id.*, at 39:6-40:6.  But the only distinction that Viking and Hertz *perceive* between "billing" and "collection" accounts is the amount of time that has passed since the account was placed with Viking.  *Id*., at 143:3-9, 210:10-211:18 (explaining that accounts placed by Hertz "roll-over" from Viking's "billing" to "collection" at some point between 91 and 105 days).

*Plaintiff DeNicolo*

Plaintiff DeNicolo rented a car from Thrifty on February 8, 2018, and returned it the next day. Exh. 3.  He received no further information regarding this rental for nearly four months.

Viking sent its first letter to Plaintiff DeNicolo on or around May 29, 2018, 109 days after he had returned the rental vehicle.  Exh. 4.  Before receiving this letter, he had not been informed that Viking performed Hertz's collections, nor even that there was a relationship between them.  This letter did not disclose that Viking was attempting to collect a debt, nor that any information it gathered would be used for that purpose (i.e. the "mini-Miranda," *see* 15 U.S.C. § 1692e(11)), nor that Plaintiff could demand verification of the debt, and that it would be assumed valid unless it was disputed within 30 days.  *Id.*  Instead, the letter demanded immediate payment and falsely implied that Plaintiff had a limited time to respond: "your payment must be received in our office within 30 days from the date of this letter" (after it had taken nearly 120 days to notify Plaintiff that any damages

claim was asserted at all).  *Id.*  This letter stated that it would accept 80% of the debt that Hertz was demanding, but warned that Viking was "not obligated to renew this offer."  *Id.*

Approximately one week later—117 days after Plaintiff had returned the rental vehicle—Viking sent a second letter, this time acknowledging that it was a debt collector for Hertz.  Exh. 5.  (This change of tack was due to Hertz and Viking's internal and unilateral policy by which an account "rolls-over" to being "in default" between 91 and 105 days after placement by Hertz.)  Another month later, on July 11 (152 days after Plaintiff returned his rental vehicle), Viking sent a third letter which again admitted to being a debt collector, and stated that it was "authorized [by Hertz] to resolve your account for 80% of the current amount due."  Exh. 6.  Viking sent a fourth letter, dated August 31 (203 days after the alleged "date of loss"), again demanding the full amount claimed by Hertz. Exh. 7.

During this time, Plaintiff DeNicolo had called Thrifty (which stated that it had no record of any outstanding payment being owed by Plaintiff), and then Viking, which sent him the "documents that [Thrifty] had sent over to [Viking]" supposedly substantiating its claims.  Exh. 8, at 71:20-23.  The documents that were sent, however, included rental terms related to rentals in Croatia, a repair estimate dated February 12, 2018, and a "Vehicle Incident Report" claiming that Plaintiff does not speak English and date-stamped two days *after* the repair estimate.  Exhs. 9-11.

Unable to resolve this dispute, and facing Viking's repeated attempts (albeit four months late) to collect a debt for damage he did not cause, Plaintiff retained an attorney and filed suit challenging, *inter alia*, Viking's debt-collection practices.

During the discovery process in this litigation, Viking revealed that it had placed calls to Plaintiff DeNicolo before sending its May 29 letter.  Indeed, Viking's arguments on summary judgment largely rest on the fact that these calls were made.  But Viking fails to disclose that during *none* of these calls did its agent disclose that (a) he was a Viking employee, (b) Viking was acting on Hertz's behalf, or (c) Hertz alleged that Plaintiff owed money for damage he caused to a rental vehicle.  Exh. 8, at 47:11-48:10, 52:14-53:8.  Thus, the *first* time that Plaintiff DeNicolo learned any of these facts was when he received Viking's May 29 letter.

Viking notably omits mentioning another call that it made to Plaintiff, on April 18, 2018.  *Id.*, at 55:9-56:10.  During this call, Plaintiff asked what the call was about but Viking's agent—without

disclosing that he worked for Viking and stating only that he "represent[ed] the Hertz, Dollar, Thrifty corporation"—refused to explain the purpose of his call apart from that it was a "personal matter." *Id.*, at 55:9-57:20. But when Plaintiff asked "which matter is that?" the agent refused to give him any more information. So, believing it to be another telephone solicitation, and having no idea that it might relate to his vehicle rental more than two months earlier, Plaintiff asked that he be "take[n] off whatever lists you can" and told the agent that he had called the wrong number. *Id.*, at 55:9-57:20.

*Plaintiff Fox*

Plaintiff Fox rented a vehicle from Hertz on April 1, 2019, and returned it the next day. Exh. 12. On April 26 he received a letter from Viking which did not disclose that Viking was a debt collector, nor did it include the mini-Miranda or any of the disclosures required by the FDCPA or the Rosenthal Act. Exh. 13. He called Hertz to inquire about the letter but was told that it had no record of any outstanding charges related to his rental. He thereafter called Viking on May 2, 2019, and spoke to a Viking agent on May 3. Exh. 14, at 47:18-48:5. At no time prior to this had Viking attempted to contact him.

## III.  LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("FRCP") 56(a). The movant bears the burden of showing the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To meet its burden, the movant must "[identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FRCP 56(c). The burden then shifts to the non-movant to show a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see also Celotext*, 477 U.S. at 327 ("[FRCP 56 must be construed] with due regard … for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury.").

Summary judgment is a drastic remedy and should only be granted cautiously. *Anderson*, 477

U.S. at 255 ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment …").  "The judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial … Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions …"  *Id.*  In particular, questions of reasonableness are generally fact questions because of the jury's unique competence in applying the "reasonable person" standard.  *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 868 (9th Cir. 2010); *Howell v. Polk*, 532 F.3d 1025, 1027 (9th Cir. 2008).

## IV.    ARGUMENT

### A.    Viking is Not Entitled to Summary Judgment on Plaintiff's DeNicolo's Claims.

#### 1.    Whether the Debt Viking Attempted to Collect from DeNicolo was "Consumer Debt" Under the FDCPA is a Question of Fact.

 Determining whether a debt is "consumer debt" under the FDCPA is a fact-intensive pursuit inappropriate for summary judgment.  *See, e.g., Peters v. Coface Collections N. Am., Inc.*, 639 F. App'x 460, 461 (9th Cir. 2016) (reversing grant of summary judgment to FDCPA defendant; "it is not the province of the district court to weigh conflicting evidence for purposes of summary judgment"); *see also Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1204 (W.D. Wash. 2003) ("the determination of whether a debt is incurred 'primarily for personal, family, or household purposes' is a fact driven one, and should be decided on a case-by-case (not necessarily plaintiff-by-plaintiff) basis looking at all relevant factors"); *Goodman v. Asset Acceptance LLC*, Case No. 18-CV-01667-RM-KMT, 2019 WL 7037482, at *3 (D. Colo. Dec. 20, 2019) (citing *Bloom v. I.C. System, Inc.*, 972 F.2d 1067 (9th Cir. 1992)) ("whether a financial transaction is commercial or personal is fact-specific and the facts are to be examined as a whole"); *Scott v. Portfolio Recovery Assocs., LLC*, 139 F. Supp. 3d 956, 965 (S.D. Iowa 2015) ("Plaintiff need only raise a genuine issue of whether the debt is a consumer debt").

 Even the cases Viking cites on this issue come to the same conclusion.  *See, e.g., Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001) ("The district court erred in concluding that no genuine issue of material fact existed as to whether Slenk's Credit Union Loan was a consumer debt for purposes of the FDCPA"); *Davis v. Hollins Law, APC* , 968 F. Supp. 2d 1072, 1080 (E.D. Cal. 2013) (refusing to grant summary judgment; "although plaintiff herein may have

ostensibly obtained the American Express card for business purposes, it does not follow as a matter of law that collection efforts on that card are exempted from the FDCPA and the Rosenthal Act").

In *Slenk*, the Ninth Circuit reversed summary judgment where the plaintiff had signed documents declaring that the loan underlying his FDCPA claims was made for business purposes. 236 F.3d at 1074.  But the Ninth Circuit held that the district court had erred by discounting contradictory evidence in the record in order to find that no genuine issue of material fact remained disputed.  *Id.*, at 1074-76 ("By focusing exclusively on select documentary evidence … the forest was lost for the trees. … it is not the province of the district court to weigh conflicting evidence for purposes of summary judgment.").  At minimum, *Slenk* confirms that determining whether a loan is "personal" or "commercial" in nature requires consideration of the totality of the circumstances, and therefore is not appropriate on summary judgment.  *Id.*

Critically, discovery has shown that Viking treats debts assigned by Hertz in a uniform manner, regardless of whether the underlying rental was made for "business" or "personal" reasons. Exh. 2, at 115:2-116:20.  When it is assigned an account for collections, Viking does not make it a practice to determine from Hertz or the renter the purpose for which the rental was made.  *Id*.  As such, Viking's own actions undercut its request that this Court rule ***as a matter of law*** that Mr. DeNicolo's claims are beyond the protection of the FDCPA because he rented the car while in San Francisco for a meeting.  Nor can there be any question that there are thousands of "personal" rentals among the more than 30,000 other putative class members in Plaintiff's proposed 30-Day Class and Viking, of course, did not treat these debts any differently than Mr. DeNicolo's.  Viking cannot ask this Court to draw fact-intensive distinctions between otherwise identical debts it collects for Hertz when it makes no such distinctions itself.

Attempting to shortcut this necessary fact finding, Viking relies on a quartet of inapt cases.  If anything, Viking's cited cases only confirm that Plaintiff's purported debt here ***arises from a consumer transaction*** covered by the FDCPA. (not to mention illustrating the difficulty of answering fact-intensive questions on the nature of debt at the summary-judgment stage).  The *Mlnarik* and *Turner* cases, for instance, involve debts arising out of assessed penalties rather than consensual transactions: fines levied by a homeowners' association and a tort judgment, respectively.  *Mlnarik v.*

*Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*, Case No. 14-CV-01849-BLF, 2014 WL 3728514, at *1 (N.D. Cal. Jul. 28, 2014); *Turner v. Cook*, 362 F.3d 1219, 1222 (9th Cir. 2004). Undermining Viking's own argument, *Mlnarik* and *Turner* merely reference the "judicial interpretation" that the FDCPA is limited "to those obligations to pay arising from consensual commercial transactions where parties negotiate or contract for consumer-related goods or services." *Mlnarik*, 2014 WL 3728514, at *3 (quoting *Turner*, 362 F.3d at 1227 (internal citations omitted)). Here, the debt arose from the most ordinary of consumer transactions – renting a car at the airport.  As stated in *Turner*, FDCPA protection must reach all "obligations to pay arising from consensual transactions, where parties negotiate or contract for ***consumer-related goods or services***."  362 F.3d at 1227 (emphasis added).[4]

By cobbling together these cases, Viking seeks to portray the debt at issue here as a business loan rather than what it was – an ordinary consumer transaction that happened to occur during a trip to visit a client.  DeNicolo did not open a business credit card (as in *Ellis*); he did not take out a business loan in order to purchase an expensive piece of construction equipment in his company's name (as in *Slenk*).  Rather, DeNicolo spent $43.82 to rent a car to get around a city 2,000 miles from his home, and used that car to drive to a coffee shop where he purchased refreshment, and drove to his overnight accommodation.[5]  The fact that his trip also included a meeting with his client does not alter the nature of his rental from Hertz: it was an ordinary consumer transaction.

Efforts to collect for damages to rental cars are actionable under the FDCPA.  *See, e.g.*,

---

[4] The *Ellis* and *Miller* cases cited by Viking are even less relevant and, in fact, **denied** summary judgment to FDCPA defendants arguing that the debt at issue was commercial in nature.  In *Ellis*, a business owner used a business credit card to buy ostensible business supplies, and her business was dunned by a collection agency.  *Ellis v. Phillips and Cohen Assocs., Ltd.*, Case No. 5:14-CV-05539-EJD, 2016 WL 3566981, at *5 (N.D. Cal. June 30, 2016).  In the resulting FDCPA case, the court held there was a triable issue on the nature of the debt and refused to grant summary judgment.  *Id.* at *12.  Meanwhile, in *Miller*, the court refused to grant summary judgment to an FDCPA defendant that claimed the underlying mortgage debt was commercial because the debtor was renting the house.  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872 (7th Cir. 2000).

[5] Plaintiff DeNicolo picked up the car around 10 a.m. on the day of his arrival.  Exh. 8, at 27:22-24.  He then drove the car to a coffee shop to spend time prior to a meeting.  *Id.*, at 28:2-8.  After the coffee shop he drove to the meeting.  *Id.*, at 28:17-21.  Following the meeting, Plaintiff drove the car to an Airbnb for the night.  *Id.*, at 29:1-3.  After breakfast the next morning, he bought gas for the car and returned it at the airport.  *Id.*, at 32:11-13.

*Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492 (D. Md. 2004); *McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002). It is precisely because car rentals are consensual consumer transactions that they are protected by the FDCPA. *See Yelin v. Swartz*, 790 F. Supp. 2d 331, 335 (E.D. Pa. 2011) ("[I]f Plaintiff is responsible for the damage to the rental car, it is because such a duty was imposed by the rental agreement, which is a contract"); *Forgeron v. Hough*, Case No. 10 C 6298, 2011 WL 3205295, at *4 (N.D. Ill. Jul. 26, 2011) (describing the "root inquiry" for plaintiff's FDCPA claims as "did the car rental agreement, which is the underlying transaction at issue, oblige [plaintiff] to pay money? It did"). Nor, despite Viking's singular reliance on business-loan cases, is there any requirement that a "debt" under the FDCPA involve an extension of credit. *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 925 (11th Cir. 1997) (finding collection of unpaid fees related to rental of a vehicle were actionable as "debt" under the FDCPA).

Moreover, Viking's oversimplification of DeNicolo's transaction as strictly for "business" ignores the stark reality that many of our ordinary consumer transactions occur during the workday, or while commuting to or from work.[6] Not only do such workday transactions raise innumerable questions of fact inappropriate for summary judgment, but the relevant inquiry for purposes of the FDCPA is **how** the transaction occurred, not **why**. *Hansen*, 280 F. Supp. 2d at 1204. In *Hansen*, the court found that debtors dunned for parking-meter violations could proceed with their claims even if they could not remember whether they parked for business or personal reasons or both:

> In the present case, the Court finds the nearly-dispositive factor to be the identity of the individual plaintiff and whether the debt was incurred and paid in their personal capacities or some other capacity. It is undisputed that each of the three named plaintiffs paid the obligation out of personal funds. This was not a transaction between two business entities. The defendant argues that a plaintiff's reason for parking in the lot, i.e. the errand that they happened to be running that day, is the only relevant inquiry. While this factor is potentially relevant, in nearly every case it will be outweighed by the "identity" or "capacity" of the debtor. The Court finds that context of the present case significantly distinct from the loan context in the above-cited cases giving significant weight to the "purpose" of the obligation. This is so because the "purpose" of the obligation incurred by the parking plaintiffs cannot be equated with the "purpose" of the errand they happened

---

[6] Nor did Plaintiff incur a debt because he promised to pay a radiologist to cover his practice, as in *Sun v. Rickenbacker Collection*, Case No. 10-CV-01055-LHK, 2011 WL 704437, at *1 (N.D. Cal. Feb. 18, 2011). And he did not incur an "obligation to pay for professional legal services rendered in defending [a] business owner in litigation arising from his or her operation of a commercial enterprise," as in *Simmonds & Narita LLP v. Schreiber*, 566 F. Supp. 2d 1015, 1017 (N.D. Cal. 2008).

1       to be running. Here, where the debt was paid with personal funds, the nature of the obligation is a personal one, not a business one.

2  *Hansen*, 280 F. Supp. 2d at 1204 (denying summary judgment on issue of "consumer" versus

3  "business"); *see also Hepsen v. J.C. Christensen & Assocs.*, Case No. 8:07-CV-1935-T-EAJ, 2009

4  WL 3064865, at *3 (M.D. Fla. Sep. 22, 2009) ("An important factor in deciding whether a debt was

5  incurred for primarily for personal, family, or household purposes is whether the debt was incurred in

6  a personal capacity.").

7       Building on *Hansen*, the Seventh Circuit recently ***reversed*** a lower court's grant of summary

8  judgment against plaintiffs who were dunned for unpaid parking fees and associated non-payment

9  fines by the operator of parking lots owned by Metra, the commuter railroad that moves passengers

10  from Chicago suburbs and outlying city neighborhoods to the central business district.  *Franklin v.*

11  *Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744 (7th Cir. 2016).  There can be no dispute

12  that the commuter railroad is used extensively by people commuting to work, arguably for "business"

13  purposes, but the Seventh Circuit looked past ***why*** plaintiffs were riding the train, and instead focused

14  on ***how*** their debts accrued.  *Id.*[7]  Here, as in *Hansen* and *Franklin*, the legal source of DeNicolo's

15  obligation was the contract into to which he entered with Hertz and pursuant to which Viking sought

16  to collect in his personal capacity.  And just as here, the meter-feeders in *Hansen* and the Metra-lot

17  parkers in *Franklin* accrued their FDCPA-actionable consumer debts on their way to work.[8]

18       Perhaps the most apposite case, although not addressed by Viking, is *Fagan v. Lawrence*

19

20  [7] Before handing down its decision in *Franklin*, the Seventh Circuit panel solicited the views of the

21  Federal Trade Commission on whether the Metra parking lot transactions were covered debts under
the FDCPA.  832 F.3d at 743 n.1.  Both the FTC and the Consumer Financial Protection Bureau

22  responded by filing an amicus curiae brief in favor of an expansive interpretation of FDCPA debts:
"In the view of these federal agencies charged with enforcing the statute, the obligations at issue here

23  are indeed debts covered by the FDCPA."  *Id.*

24  [8] It is worth noting, for comparison, that although Plaintiff DeNicolo's work pays a portion of his cell
phone bill (Exh. 8, at 14:10-17) there is no question that it remains his personal phone, and any debts

25  incurred thereon would be subject to FDCPA protections.  *See Adams v. Bureau of Collection
Recovery, LLC*, Case No. 10-CV-12818, 2011 U.S. Dist. LEXIS 157527, at *8 (E.D. Mich. May 16,

26  2011) (granting summary judgment on grounds unrelated to this case) ("[D]uring the relevant time
period plaintiff had a single cell phone and no land line.  While plaintiff described this phone as a

27  'business line', he did not state that it was for business calls only. This was plaintiff's only phone,
paid for by him in his name, rather than his business.  For these reasons, the court finds that Adams'

28  alleged obligation meets the definition of a 'debt' under the FDCPA.").

*Nathan Assocs., Inc.*, 957 F. Supp. 2d 784 (E.D. La. 2013). In *Fagan*, a pair of Louisiana lawyers used their firm's corporate credit card to rent a car in Las Vegas while visiting for business. *Id.*, at 789. After the car was damaged, a collection agency tried to collect from one of the lawyers individually. *Id*. The court rejected the defendant's claim that the debt was not personal: "Defendant treated and regarded Mr. Fagan as a consumer who was using the Budget vehicle for his personal use and thus individually liable to Budget, as evidenced by Defendant's attempts to collect the debt against Mr. Fagan individually." *Id*., at 799. Here, Viking likewise dunned Plaintiff individually, calling him on his personal phone and sending letters to his home. *See also Black v. AFNI, Inc*., Case No. 15-CV-1176 (WHW)(CLW), 2018 WL 3546193, at *5 (D.N.J. Jul. 23, 2018) ("[T]he nature of the obligation at issue, along with the fact that the bill was directed to an individual at a residential address, would allow a reasonable juror to conclude that the 'subject of the transaction [was] primarily for personal, family, or household purposes.'") (citing 15 U.S.C. § 1692a(5)).

Thus, at minimum, Viking's Motion must be denied with respect to its "consumer" versus "business" debt as it raises questions which must be determined by the fact-finder.

### 2. There is a Genuine Issue of Fact as to Whether DeNicolo's Debt was "in Default" Under the FDCPA When Placed with Viking for Collection.

The determination of whether a debt collector is entitled to the FDCPA debt collector exemption is even more fact-intensive than the personal-business debt distinction discussed above, and thus judgment should not be granted on such a "knotty factual issue." *Mavris v. RSI Enters. Inc.*, 86 F. Supp. 3d 1079, 1088-90 (D. Ariz. 2015); *see also Hoehn v. FCC Fin., LLC*, 126 F. Supp. 3d 472, 475 (D.N.J. 2015) ("[N]o matter what approach the Court uses there is a fact question as to whether plaintiff's debt was in default"); *Echlin v. Dynamic Collectors, Inc.*, 102 F. Supp. 3d 1179, 1186 (W.D. Wash. 2015) ("the Court cannot conclude as a matter of law that Echlin's debt was not in default when Dynamic sent the April 2014 letter"); *Ohlson v. Cadle Co.*, Case No. 04-CV-3418 (DRH)(ETB), 2008 WL 4516233, at *9 (E.D.N.Y. Sep. 30, 2008) ("There is, at the very least, a question of fact as to whether the debt in question was in default at the time it was obtained by BDA."); *Simmons v. Med-I-Claims*, Case No. 06-CV-1155, 2007 WL 486879, at *8 (C.D. Ill. Feb. 9,

2007) ("summary judgment on this point is not appropriate").[9]

But even if the Court were to dive into the factual morass of when, exactly, rental-car damage claims go into "default" for purposes of the FDCPA exemption as they are shuffled between Hertz and the two different entities under which Viking purports to do business, the proper finding is that a reasonable debtor would believe their debt was in "default" when it was transferred from Hertz to Viking, a third-party debt collector.[10] Viking's arguments to the contrary rest exclusively on its position that it can unilaterally decide when a debt enters "default" for purposes of the FDCPA. In other words, Viking's sole contention for why it is entitled to the FDCPA's debt-collector exemption is that it and Hertz unilaterally labeled DeNicolo's account as "not in default" in its services agreements. *See* MSJ, at 16:27-17:11. But this self-serving construction is a blatant end-run around the FDCPA.[11] "Allowing debt collectors to send harassing letters to consumers before the debt has

---

[9] "Although the [FDCPA] does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue." *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011). In other words, "[w]hether a debt is in default is generally controlled by the terms of the contract creating the indebtedness and applicable state law." *Id.* (quoting Fed. Trade Comm'n, Advisory Op. n. 2 (April 25, 1989)) (internal quotation marks omitted). Thus, here, it could be enough that the "contract creating the indebtedness"—Plaintiff's rental agreement with Hertz—states that all charges are due immediately. Exh. 15 (the "Rental Jacket" accompanying Plaintiff's Rental Agreement), at § 6 (highlighted portions). Thus, Mr. DeNicolo's debt for the alleged damage to his rental vehicle arose no later than Hertz's "receipt of an invoice therefore" (at which time it was technically entitled, under the Rental Agreement, to simply bill the credit card "presented at the time of rental."). *Id.*

At the very least, though, this term in the Rental Agreement creates ambiguity as to when Plaintiff's debt became due, and thereby went into "default" under the FDCPA; and "[w]here the FDCPA requires clarity[,] ambiguity itself can prove a violation." *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 687 (7th Cir. 2017). As such, Defendants' scheme should be rejected simply because it leaves consumers with no way of knowing whether their debt is truly "in default" for purposes of FDCPA protection.

[10] Ironically, Viking agrees that the difference between an account that is "in default" and one that is not is simply a matter of the passage of time. Exh. 2, at 143:3-9, 210:10-211:18. But rather than Viking and Hertz being permitted to unilaterally and secretly set that time themselves, Plaintiffs contend that it should at least be determined by a reasonable consumer.

[11] The FTC itself counsels against allowing such FDCPA end-runs. *See FTC Letter to Richard de Mayo* (May 1, 200) (available at https://www.insidearm.com/wp-content/uploads/deMayo-first-opinion-letter.pdf?279849&0e9d3e) ("Nothing in the FDCPA indicates that Congress intended a creditor's business decisions to determine whether a consumer benefits from the statute's protections."); *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1043 (W.D. Wis. 2002) ("as

become due, only to cry 'debt not in default' when the consumer seeks refuge in the FDCPA, would saw off the very branch on which the FDCPA sits." *Healy v. Jzanus Ltd.*, Case No. 02-CV-1061 (CBA)(ASC), 2002 WL 31654571, at *4 (E.D.N.Y. Nov. 20, 2002). "Defendants may not so easily define themselves out of FDCPA coverage." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359-60 (6th Cir. 2012). To permit such a ploy would "place all of the power in the hands of the creditors and debt collectors from whom the FDCPA protects consumers." *Morrison v. Clear Mgmt. Sols.*, Case No. 1:17-CV-51, 2019 WL 122905, at *8 (D. Utah Jan. 7, 2019); *see also Justice v. Ocwen Loan Servicing, LLC*, Case No. 2:13-CV-00165, 2014 WL 526143, at *5 (S.D. Ohio Feb. 7, 2014) ("allowing parties potentially qualifying as debt collectors to unilaterally define 'default' as used in the FDCPA would frustrate the intent of the statute"). Indeed, several courts have refused to endorse the same artifice which Viking now demands this Court condone:

> [T]he Court disagrees with the[] cases … in which the applicable agreement leaves it to the discretion of the creditor whether to declare default. The express purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors.' 15 U.S.C. § 1692(e). ***This purpose would be contravened if a creditor were unilaterally able to determine when and if an account was in default for FDCPA purposes and therefore whether the provisions of the FDCPA applied to the debt collection activities of the collection agency it hires***. For example, because 15 U.S.C. § 1692a(6)(F)(iii) looks at whether the loan was in default at the time it was 'obtained' by the person involved in the collection activity, and not whether it is in default at the time the collection activity takes place, KeyBank could have referred Magee's account to AllianceOne for collection one day and declared her account to be in default the next, thereby allowing AllianceOne to engage in collection practices that are prohibited by the FDCPA (because the loan was not in default when AllianceOne 'obtained' it) and at the same time giving KeyBank the 'rights upon default' afforded it under the Agreement.

*Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1028 (S.D. Ind. 2007) (emphasis added). The court in *Mavris*, confronted with a scheme similar to *Magee*, came to the same conclusion:

> Just as a debtor cannot know whether a creditor considers a debt in default unless informed by the creditor, she also cannot know when a creditor has transferred a debt to a third party

---

the FTC advised in *de Mayo*, the fact that a creditor or third-party debt collector 'considers' a debt to be in default ***has no bearing*** on whether the debt is truly in default") (emphasis added).

In fact, the FTC has formally recommended that Congress amend the FDCPA "so that its applicability will depend upon the nature of the overall business conducted by the party to be exempted rather than the status of individual obligations when the party obtained them." FTC Annual Report: FDCPA (available at http:// www.ftc.gov/os/2001/03/ fdcpaar2000.htm) (Mar.2001). Here, the nature of Viking's business is unquestionably debt collection and accounts placed with debt collectors should be viewed as being in default.

unless informed by either the creditor or the third party. In other words, even if a debtor has reasonable grounds to believe a creditor views a debt as in default, she will be unable to assert her FDCPA rights unless she also knows that 1) the creditor has transferred the debt to a third party, and 2) that transfer occurred *after* the creditor began treating the debt as in default. But unless the creditor or third party informs the debtor of the date of the transfer—which does not appear to be statutorily required—the debtor may be unable to obtain the necessary information. As a result, ***a creditor can manipulate the FDCPA's definition of "debt collector" so as to free debt-collection efforts from the FDCPA's numerous pro-debtor provisions***. For example, if a creditor transfers a debt, nominally but not in economic substance,[12] to a third party on the day after payment becomes due— that is, before a reasonable debtor could believe that the creditor views the debt as in default—that third party would be free to seek payment from the debtor without abiding by the anti-abuse and anti-harassment rules imposed by the FDCPA.

*Mavris,* 86 F. Supp. 3d at 1086-87 (first emphasis in original, second emphasis added).  In addition to

the attempted end-run, *Mavris* is like the instant case in that the creditor there first assigned its claims

to a third-party debt collector for "pre-collection efforts" (*id.* at 1081) and then after 120 days

unilaterally deemed them "in default" and moved them to a different third-party debt collector for

collection—just as Viking purports to collect money from Hertz customers using trade dress first for

"Viking Billing Services," and then for "Viking Client Services."  The *Mavris* court refused to accept

the defendants' contention that the first collector was exempt from the FDCPA.  "By creating the

impression that [the creditor] had stepped up its collection efforts through resort to an outside party,

---

[12] In this case, the transfer of debts from Hertz to Viking was nominal and "not in economic substance."  86 F. Supp. 3d at 1086.  Viking has made no attempt to explain who owns the debts or the legal or economic process by which they are transferred between the two companies, stating (incorrectly) in its separate statement of facts only that it provides "billing services" for Hertz.  When questioned on the same issue by this Court, Hertz's lawyer had no answers, either:

THE COURT: I take it that Hertz sold its claims to Viking?
MR. WARD: Not – I don't – I don't know that to be true, Your Honor.  I don't know the answer to that.  I'm not aware that that's the case, though, either, Your Honor.
THE COURT: How does Viking have a claim?  How is Viking involved in this, then, if they don't own the claim?
MR. WARD: There is – There is a business relationship between Hertz and Viking.  The – the particulars of that business relationship, I don't have the details of, Your Honor.  I don't represent Viking.  And I haven't explored that question.  I'd answer for you if I knew the answer.
THE COURT: Hmm.
MR. WARD: And so in other words, are they working on behalf of Hertz to collect a debt that belongs to Hertz, or has Hertz sold the debt, that distinction, I don't have – I don't know the answer to that.

Exh. 16, at 9:23-10:15.

the letters attempted to encourage payment before that outside party began using potentially more heavy-handed tactics." *Id*. at 1089. Viking's "billing services" argument should suffer the same fate here. Regardless of how Viking characterizes them now, the initial collection letters from Viking Billing Services were intended by Hertz to create the impression it had resorted to an outside party for collection. *See also Hartman*, 191 F. Supp. 2d at 1042 (granting summary judgment on FDCPA claims to plaintiff-debtor) ("I am unpersuaded that the 'pre-collection billing services' provided by defendant are exempt from the FDCPA.").

After surveying the different ways courts try to resolve the "in default" issue that is not defined by the FDCPA, *Mavris* adopted "adopt[ed] [the "functional, all-things-considered analysis" that the Ninth Circuit used in *Slenk* to determine that the consumer-business debt distinction could not be determined on summary judgment. *Id.*, at 1085-86. In applying that test to debt-collector exemption cases, *Mavris* held that the "guiding principle" would be "at the time a third party obtains a debt for collection, would be reasonable person in the debtor's position believe that the creditor viewed the debt as being in default." *Id.*, at 1086. The court identified several non-exclusive factors to be weighed, including the urgency in language in communications from the collector; the debtor's knowledge that it had been referred to a third party; and whether the creditor and collector attempted to circumvent the FDCPA's consumer protections. *Id*. Here, those three factors weigh in favor of a finding that reasonable person would have believed the debts Viking sought to collect were already considered in default by Hertz. As the initial Viking letter to DeNicolo gave him 30 days to accept an offer to resolve his "claim balance" in order to be "considered settled," there was no question the claim had already been referred to a third party, and Hertz and Viking are trying to circumvent the FDCPA.[13] While the balancing test set forth in *Mavris* is not perfect, it is preferable to simply ceding determination of FDPA liability to the creditors and debt collectors the law intends to constrain.

More important, the functional, multi-factor test outlined above better serves the broad

---

[13] The other *Slenk* factors discussed in *Mavris*—such the number of times the creditor has requested payment and the time elapsed from first request for payment (86 F. Supp. 3d at 1086)—have no application here due to the unique contours of Defendants' scheme. For example, the creditor (Hertz) never requested payment; Hertz had its debt collector Viking do it. However, it should be noted that in the eight days between the first and second letters from Viking, the debt collector had transformed itself "billing services" to a collection agency seeking a "Past Due Balance."

purpose of the FDCPA—i.e., 'to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices' []—than [the] alternative that a debt is in default when the creditor says so. Referring a debt to a debt collector heightens the potential for abuse, and a debtor's ability to protect herself from that abuse must turn on something more than a creditor's decision—made according to rules or criteria of which the debtor may have no knowledge—to declare a debt in default. The FDCPA's statutory protections would be of little value if a debtor, unable to rely on statements ostensibly made by the creditor, had to guess at whether the creditor had privately declared her debt in default.

*Id.*

Finally, Viking's reliance on *Diaz v. Viking Client Servs., Inc.*, a non-binding case from Minnesota decided on a motion to dismiss, is misplaced. Case No. 16-CV-336 (SRN)(KMM), 2016 WL 5796835 (D. Minn. Oct. 3, 2016). In *Diaz*, after renting a vehicle from Hertz the plaintiff received a letter from "Viking Billing Services" which accused him of damaging the rental car on a day it was not in his possession. *Id.*, at *2. Mr. Diaz resolved the matter with Viking in one phone call, after Viking acknowledged it dunned the wrong person, and the plaintiff never received "any further communication about the claim after he disputed it." *Id.*, at * 2, 5. Diaz nevertheless sued, and the court ultimately decided that in its single communication Viking had not operated as a debt collector under the FDCPA. *Id.*, at *15. Whether or not *Diaz* was decided correctly—which it was not, for lack of a complete factual picture—it is undisputed that Plaintiff DeNicolo in this case was subjected to far different treatment from Viking, operating as a third-party collection agency. Namely, in *Diaz*, "Viking Billing Services" never transformed into "Viking Client Services"; nor, as happened here, did Viking repeatedly dun the debtor after he disputed the debt following an initial letter that lacked FDCPA warnings.

Viking's Motion, therefore, fails to establish that Plaintiff DeNicolo's FDCPA claims fail as a matter of law due to Viking and Hertz's unilateral declaration that his debt was not "in default" when Hertz placed the account with Viking for collection.

### 3. <u>Viking Establishes No Other Valid Defense to Plaintiff's FDCPA Claims.</u>

Viking contends that Plaintiff DeNicolo's claims are "patently untrue." MSJ at 3:9. But saying it does not make it so; there is no evidence—whether adduced in discovery, presented by Viking's Motion, or otherwise—which in any way contradicts the fact that DeNicolo was first notified of Hertz's damage claim when he received a letter from Viking dated May 29, 2018. On none of its

three outbound calls (only one of which, notably, was made within 30 days of the alleged incident date) did Viking identify itself to Plaintiff. Thus when he received a call from an unknown number, and spoke to a laconic agent who mispronounced his name and did not identify any legitimate purpose for the call, Mr. DeNicolo reasonably believed that he was receiving a "spam" call, and attempted to avoid further calls by indicating to the caller that they had the wrong number.[14] Thus, Viking's repeated aspersions, and excessive attempts to discredit Mr. DeNicolo, can simply be disregarded as so much mud-slinging with no bearing on the viability of his claims.

But even more importantly, the law simply does not provide for the defense that Viking attempts to invoke. Viking accuses DeNicolo of "unclean hands" (MSJ at 4:6), but never explicitly suggests that such could be the basis for summary judgment—likely because, as a longtime debt collector that has been a defendant in myriad FDCPA cases across the nation, Viking and its counsel must know that there is no such defense to FDCPA litigation.

The FDCPA is a strict liability statute. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006). "Toward that end, the FDCPA imposes certain requirements on debt collectors and imposes strict liability for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1099 (9th Cir. 2012). "Unclean hands is not a proper defense to an FDCPA claim." *Nyberg v. Portfolio Recovery Assocs., LLC*, Case No. 3:15-CV-01175-PK, 2016 WL 3176585, at *6 (D. Or. June 2, 2016); *see also Mejia v. Marauder Corp.*, Case No. C06-00520 HRL, 2007 WL 806486, at *5 (N.D. Cal. Mar. 15, 2007) (citing *Howlett v. Rose*, 496 U.S. 356, 372 (1990)) (holding state-law unclean hands not defense to federal FDCPA claim); *Francisco v. Midland Funding, LLC*, Case No. 17 C 6872, 2019 WL 1227791, at *3 (N.D. Ill. Mar. 15, 2019) ("to this court's knowledge, no court has ever allowed an unclean hands defense to defeat an FDCPA claim").

Notably, the FDCPA **did** create three defenses that debt collectors can attempt to prove (*see*

---

[14] Mr. DeNicolo's phone number has been widely available for many years and—due to the public nature of his work (i.e., marketing)—is subjected to an inordinately high amount of worthless "robocalls." *See* Exh. 8, at 49:18-50:2 ("I get a ridiculous amount of robocalls. And sometimes – because I use my phone for business, I essentially have to pick up most calls. I would say 75 percent to 90 percent are robocalls. That sounded like a robocall to me, and that's somehow -- sometimes how I respond to these robocalls. Sometimes I play a fax machine to make them think they've gotten a wrong number.").

15 U.S.C. §§ 1692k(c) (bona fide error), subsec. (d) (statute of limitations), subsec. (e) (good faith reliance on an advisory opinion from the Bureau of Consumer Financial Protection), but Viking notably does not raise them here.  Given that it contends to seek resolution "as a matter of law," this seems an odd omission as Viking has ostensibly asserted bona fide error as an affirmative defense.  *See* ECF Dkt. no. 84 ("Amended Answer"), p. 8 ¶ 2.  Upon examination, however, its exclusion here is understandable: the bona fide error defense is a "narrow exception" to strict liability under the FDCPA (*Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)) which requires a debt collector to prove that: "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); *see also* 15 U.S.C. § 1692k(c).

While Viking is content to make passing reference to a defense that does not exist, it now makes no mention of the statutorily permitted defense of bona fide error because discovery in this matter has shown there are more than 30,000 other individuals with the same FDCPA claims as DeNicolo.  Exh. 17.  That is, more than 30,000 other Hertz customers were notified of rental-car damage claims by Viking for the first time more than 30 days after the date of the purported damage.  Viking certainly does not attempt to argue that these putative class members were all treated the same way "unintentionally," or that the same error occurred more than 30,000 times, or that it maintained procedures to prevent what was a regular occurrence.  In fact, Viking has asserted no legally recognized defense to FDCPA liability.

### 4.  Plaintiff DeNicolo's Vehicle Act Claim Survives.

Viking makes a disingenuous argument that DeNicolo's FDCPA claims stemming from violation of the Illinois Vehicle Code seek to render all state-law violations *per se* FDCPA violations.  MSJ, at 19:4-5.  The FAC alleges nothing of the sort; it alleges that Viking violated the FDCPA by mispresenting it had the right to collect a debt in a manner which, under Illinois law, it did not.  *See* FAC, ¶¶ 65-71.  As an initial matter, Plaintiff's claim is not unique; courts have upheld FDCPA claims based on the violation of precisely the same section of the Illinois Vehicle Code at issue here:

McCabe alleges that Budget violated § 305.2(d) of the [Illinois Vehicle] Code by not

obtaining an "estimate" or "appraisal" of the damages before attempting to collect and § 305.2(f) by seeking collection before obtaining an agreement with the renter as to the damages or a legal determination of the amount to be collected. 625 ILL. COMP. STAT. § 5/6-305.2. Therefore, McCabe asserts that Crawford was in violation of the FDCPA because it attempted to collect on an invalid debt… the Court concludes that Count II states a valid cause of action.

*McCabe v. Crawford & Co.*, 210 F.R.D. at 639-40; *see also McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 748 (N.D. Ill. 2003) (upholding earlier ruling on FDCPA liability for non-compliance with vehicle code because "the most reasonable interpretation is that the legislature intended to require the rental company to fulfill the requirements found in both § 6-305.2(d) and § 6-305.2(f)"). Here, as Hertz's agent, Viking was required to comply with Illinois law. The fact that Viking's failure to do so also violates a federal law does not relieve it of FDCPA liability.

All the cases cited by Viking grasp this distinction. In *Currier v. First Resolution Inv. Corp.*, for example, the court explained that although there was not a *per se* violation, "that does not mean that a violation of state law can never ***also*** be a violation of the FDCPA. The proper question in the context of an FDCPA claim is whether the plaintiff alleged an action that falls within the broad range of conduct prohibited by the Act." 762 F.3d 529, 537 (6th Cir. 2014) (emphasis in original); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) ("we do not hold that all debt collector actions in violation of state law constitute *per se* violations of the FDCPA. Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA"); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) ("we do not find that RCA violated any of the four sections of the [FDCPA] Act").

This is not a situation akin to *Beler v. Blatt, Hasenmiller, Liebsker & Moore, LLC*, where the Seventh Circuit held merely that the FDCPA's section 1692f "does not take a state court dispute and move it to federal court." 480 F.3d 470, 474 (7th Cir. 2007).[15]  Rather, this is a federal-court dispute

---

[15] Moreover, *Beler* dealt with claims under section 1692f of the FDCPA. "The Seventh Circuit has not, so far as this Court is aware, applied the same principle to claims under § 1692e." *Eul v. Transworld Sys.*, Case No. 15 C 7755, 2017 WL 1178537, at *4 (N.D. Ill. Mar. 30, 2017). *See also Stubbs v. Cavalry SPV I, LLC*, Case No. 12-CV-7235, 2013 WL 1858587, at *3 (N.D. Ill. May 1, 2013) ("a plaintiff need not allege a violation of a specific subsection in order to succeed in a § 1692e case").

properly brought in federal court, and this particular count alleges that Viking violated the FDCPA by falsely representing to DeNicolo that it was entitled to collect a debt that it was in fact barred from collecting in such a manner by the Illinois Vehicle Code. The question is whether that conduct violates the FDCPA, not whether DeNicolo is trying to "enforce" state law through the FDCPA. *See, e.g., Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 833-34 (D.N.J. 2011) ("Here, unlike the plaintiff in *Beler*, Plaintiff has asserted that Hudson Law's filing of the Hudson Complaint misrepresented its ability to collect Plaintiff's debt under New Jersey law."); *Butler v. J.r.S.-I, Inc.*, Case No. 15 C 6059, 2016 WL 1298780, at *6 (N.D. Ill. Apr. 4, 2016) ("That the misrepresentations, threatened illegal actions, and unfair and unconscionable means of collection alleged by Butler took place in the context of a state court action does not mean that they cannot violate the FDCPA.").

## B. Viking is Not Entitled to Summary Judgment on Plaintiff Fox's Claims.

### 1. Plaintiff Fox's Rosenthal Act Claim Survives.

Viking has presented no valid authority[16] justifying summary judgment on Plaintiff Fox's claim under the Rosenthal Act. Instead, Viking simply retreads its self-serving argument it cannot be debt collector under the Act because it and Hertz did not label the debts "in default" before even informing consumers the obligations existed. This argument fails for the Rosenthal Act for the same reasons it fails in the FDCPA context, but even more fundamentally the Rosenthal Act simply does not provide the FDCPA's "not in default" exclusion from the definition of "debt collector." *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 303–05 (2018), *review denied* (June 13, 2018).

> The FDCPA specifically excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity [*inter alia*] concerns a debt which was not in default at the time it was obtained by such person ...." [Citation.] … In contrast to the FDCPA, the Rosenthal Act does not so limit the definition of "debt collector." Rather, the Rosenthal

---

[16] Viking cites a pair of unpublished opinions which only establish that whether a debt is "due and owing" under the Rosenthal Act is a fact question. *See Leon v. Emergency Med. Grp. of Watsonville*, Case No. H040521, 2016 WL 3773933, at *13 (Cal. Ct. App. Jul. 11, 2016) ("there exists a triable issue of material fact as to whether the Leons' bills were overdue (and thus delinquent and 'due or owing') while Billing Service sought to obtain payment from them"); *Burris v. HSBC Bank USA, Nat'l Ass'n*, Case No. 14-CV-02242 AB (CWX), 2014 WL 12772260, at *6 (C.D. Cal. Dec. 19, 2014) (reviewing the facts surrounding the requested payment and finding that "because the *payment was made two weeks before the listed due date*, the Plaintiffs' account was not 'due or owing.'") (emphasis added).

Act considers ***anyone*** who ***regularly engages in the act or practice of collecting money, property or their equivalent*** that is due or owing [etc.] to be a "debt collector."

*Id.* (emphasis added); *see also Mohanna v. Carrington Mortg. Servs. LLC*, Case No. 18-CV-02563-WHO, 2018 WL 3730419, at *5 (N.D. Cal. Aug. 6, 2018) ("Defendants assert that the definition of debt collector under the R[osenthal ]FDCPA is identical to the definition under the FDCPA[], but that is not the case.") (citation omitted)); *Stock v. Firstmark Servs.*, Case No. SACV 18-01363-CJC(KESx), 2018 WL 8193373, at *6 (C.D. Cal. Dec. 12, 2018) ("Unlike the FDCPA, the Rosenthal Act does not exclude, from its definition of debt collector, those who collect debts that are not in default."); *Sandigo v. Ocwen Loan Servicing, LLC*, Case No. 17-CV-02727-BLF, 2019 WL 2233051, at *16 (N.D. Cal. May 23, 2019) (same).[17]

Thus, Viking attempts to directly contradict the California Legislature's explicit intention, and numerous interpreting opinions, when it argues that "the rationale … for why Viking's billing statement is not in 'default' under the FDCPA applies equally for why the billing statement is not 'due or owing' under the Rosenthal Act." MSJ, at 22:5-7. Specifically, "[w]hile it does incorporate several provisions of the FDCPA, the R[osenthal ]FDCPA contains its own definition of 'debt collector,' and that definition is broader than the one found in the FDCPA." *Guccione v. JPMorgan Chase Bank, N.A.*, Case No. 3:14-CV-04587 LB, 2015 WL 1968114, at *14 (N.D. Cal. May 1, 2015).

Further, "[f]ederal judicial interpretations of the FDCPA are incorporated into the Rosenthal Act by Civil Code § 1788.17 such that a plaintiff may state a claim for violation of the Rosenthal Act simply by showing that a defendant violated any of several provisions of the FDCPA, 15 U.S.C. § 1692 et seq." *Masuda v. Citibank, N.A.*, 38 F. Supp. 3d 1130, 1134 (N.D. Cal. 2014); *see also Sanders v. LoanCare LLC*, Case No. 18-CV-09376, 2019 WL 441964, at *5 (C.D. Cal. Feb. 1, 2019)

---

[17] "The California [L]egislature clearly intended and afforded greater protection to consumers by making the Act applicable to more types of creditors." *Sudhir v. PHH Mortgage Corporation*, Case No. C 16-06088 WHA, 2017 WL 219681, at *2–3 (N.D. Cal. Jan. 19, 2017) (finding Rosenthal Act's definition of "debt collector" is not "as restrictive as its counterpart in the FDCPA"). "In fact, the possibility that a state might adopt a more expansive definition of 'debt collector' than is provided by the FDCPA is contemplated by the FDCPA's preemption provision, which specifically allows for a state law to provide for greater consumer protections than the FDCPA." *Davidson*, 21 Cal. App. 5th at 304 n. 15 (quoting 15 U.S.C. § 1692n ("a State law is not inconsistent with this [subchapter] if the protection such law affords any consumer is greater than the protection provided by" the FDCPA.)).

("Given that Plaintiff alleges violations of the FDCPA as incorporated into the Rosenthal Act—as opposed to independent violations of the FDCPA—the Court finds that Plaintiff need only allege facts sufficient to show that Defendant was a 'debt collector' as defined by the Rosenthal Act.").  Plaintiffs' claims for Viking's violations of the Rosenthal Act therefore stand—and can survive—independently from the FDCPA claims.

### 2.    Plaintiff Fox's Unfair Competition Law Claim Survives.

Viking attempts to entirely preclude a claim by Plaintiff Fox under the UCL by, first, arguing redundantly that its "billing services were not unlawful," and second that Plaintiff does not have standing under the UCL because he has not "suffered injury in fact."  *See* MSJ, at 24:1-23.  These contentions, however, contradict the law and misrepresent Plaintiffs' pleadings.

With respect to its first argument, Plaintiffs must first clarify Viking's misrepresentation: despite Viking's implication that Plaintiff's UCL claim rises or falls on whether Viking violated the Rosenthal Act; in truth, ***any*** unlawful act in Viking's debt-collection activities will satisfy the UCL's "unlawful" prong.  William Stern, *Bus. & Prof. C. § 17200 Practice*, *in* The Rutter Group Civil Litigation Series ¶ 3:56 (2019) ("Virtually any law or regulation—federal or state, statutory or common law—can serve as predicate for a § 17200 'unlawful' violation."); *see also Farmers Ins. Exch. v. Sup.Ct*., 2 Cal. 4th 377, 383 (1992) (holding the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable).  Thus, while Viking's violation of the Rosenthal Act will substantiate its violation of the UCL under the unlawful prong, so too will its violation of the FDCPA, as well as its violation of the Illinois Vehicle Code.  *See Ballard v. Equifax Check Serv., Inc*., 158 F. Supp. 2d 1163, 1176 (E.D. Cal. 2001) (holding violation of FDCPA constituted violation of the UCL's unlawful prong); *People v. James*, 122 Cal. App. 3d 25, 35-36 (1981) (finding violation of California's Vehicle Code constituted violation of the UCL's unlawful prong); *Schwartz v. Upper Deck Co*., 967 F. Supp. 405, 415-416 (S.D. Cal. 1997), *aff'd sub nom. Chaset v. Fleer/Skybox Int'l., LP*, 300 F.3d 1083 (9th Cir. 2002) (allowing UCL claim premised on defendant's violation of non-California statutes).  In any event, Viking submits ***no*** authority in support of its claim that "[P]laintiff's UCL claims must be dismissed," based solely on Viking's claim that its "services [for Hertz] were not unlawful."  MSJ, at 24:10-12.  Most notably, even ***if*** Plaintiff

did not have predicate violations of law to support the unlawful prong of his UCL claim (which, as set forth above, he undoubtedly does), such would have no bearing on the validity of his claims for violation of the UCL under the unfair, and fraudulent prongs.

Viking's second argument—claiming that Plaintiff has not been sufficiently injured to assert a violation of the UCL—fares no better. "There are innumerable ways in which economic injury from unfair competition may be shown [including] surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011); *see also Gordon v. Chipotle Mexican Grill, Inc*., Case No. 17-CV-1415-CMA-MLC, 2018 WL 3653173, at *26 (D. Colo. Aug. 1, 2018), *report and recommendation adopted in relevant part*, 344 F. Supp. 3d 1231 (D. Colo. Sept. 26, 2018) ("The court concludes Plaintiffs plausibly allege the loss of money in making purchases from Chipotle that they otherwise would not have made if it had disclosed it was not using reasonable data security measures."). This is what has been alleged here: "Plaintiff Fox would not have rented the vehicle, or would have paid less, had he been advised that doing so would subject him to the unlawful debt collection policies." ECF Dkt. 82, ¶ 93. And Plaintiff Fox testified to the same: "if I'd known that those charges were coming, I probably would have rented someplace else or figured out another way to get to Vegas." Exh. 14, at 73:2-8; *see also id*., at 74:4-23 (explaining that his damages include "the effort that it took me to research this and to find out what was going on and to have some sense of closure to this, I mean, that took time out of my life in order to pursue and – which, in my view, was unnecessary"). Viking has not submitted any evidence contradicting Plaintiff's allegations or testimony, or otherwise carried its "heavy burden" of demonstrating the absence of any triable issue of material fact. *Ambat v. City & Cty. of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014). Instead, Viking misrepresents Plaintiff's pleading to contend that he was aware when he contracted with Hertz that "he may be billed for damage to the vehicle" (*see* MSJ, at 24:18-21); but, as he alleged he did not agree to "***unlawful*** debt collection." Ultimately, Viking gives away its game in its penultimate sentence, attempting to shift its burden on summary judgment by faulting Plaintiff Fox for "not submit[ing] any evidence to substantiate his claim." *Id.* But of course it is Viking, as the party "moving for summary judgment, [that] bears the heavy burden of showing that there are no genuine issues of material fact." *Ambat*, 757 F.3d at 1031.

At the very least, there is a genuine dispute as to whether Plaintiff Fox agreed to be subjected to the kind of debt collection practices that Viking and Hertz perpetrated against him, and whether he suffered damages as a result.

### 3.   Plaintiff Fox's California Consumer Legal Remedies Act Claim Survives.

Viking offers even less support—namely none—for its assertion that Plaintiff Fox's CLRA claim fails.  Instead it repeats Plaintiff's allegations, and then claims (with only general and passing reference to some of its submitted evidence) that those allegations are not accurate.  But rather than establishing that Plaintiff Fox cannot succeed on his CLRA claims "as a matter of law," Viking has simply highlighted the factual disputes that preclude summary judgment here.

For instance, Viking states that it "sent [P]laintiff Fox a letter [and] spent 10-minutes on the phone with [him]."  MSJ, at 25:5-7.  Viking is correct that these are some of the instances in which it deceived Plaintiff Fox, but simply referring to these communications does not support (much less prove) its assertion that "Viking's representations about its relationship with Hertz were accurate." *Id.*, at 25:7-8.  To the contrary, the letter Viking sent to Plaintiff Fox did not disclose that he was entitled to contest the validity of the asserted debt (*see* Exh. 13); this, by itself, was a misrepresentation actionable under the CLRA, and Viking's claim that it was not demonstrates that there is a dispute of a material fact.  *See Makaeff v. Trump Univ., LLC*, 145 F. Supp. 3d 962, 975 (S.D. Cal. 2015) ("Based on the foregoing [conflicting] evidence, the Court concludes that Plaintiffs have raised a genuine dispute of material fact … As such, Mr. Trump is not entitled to summary judgment on this ground.").

Likewise, statements by Viking's representative when speaking to Plaintiff Fox did not correctly describe the relationship between Viking and Hertz.  She said twice, for example, that Hertz will not "have any information on it [i.e. the debt arising from the alleged damage] once it's sent to billing" (MSJ Exh. Q, at 0:58-1:01; *see also id.*, at 6:10-6:13).  But Hertz maintains records of which accounts it submits to Viking for billing.  *See* Exh. 2, at 81:7-24. Further, when Plaintiff Fox said that he had spoken to a representative at Hertz billing, and the Viking agent responded, "I'm billing … we do the billing for Hertz," she was stating that there was not any other department or entity that undertakes billing for Hertz, but this is also incorrect.  *Compare* MSJ Exh. Q, at 6:20-25, *with* Exh. 2,

at 81:7-24 ("Q: In the instance where you need more documents from [Hertz], what is the process for obtaining those? A: … our client service group … [has] access to [Hertz's] system … so we would e-mail them to see if they can … do a second look-through to make sure all the documents were uploaded [to Viking and] there wasn't something left maybe at the location."). Resolution of these questions is central to Plaintiff's CLRA claim, and cannot be done on summary judgment.

### C.  Both Plaintiffs Are Entitled to Declaratory Relief.

Viking's final argument is that "[b]ecause [P]laintiffs' claims fail as a matter of law, [P]laintiffs' derivative claim for decalartory relief must be dismissed." MSJ, at 25:21-22. But such circular reasoning—effectively, "I win, so you lose"—simply begs the underlying question, and does not satisfy Viking's burden on summary judgment.

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey ex rel. Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement en Aluminium v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). And although declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred (*Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023, n. 3 (2000)), the relevant inquiry is whether there is a "substantial controversy, between parties having adverse legal rights, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941).

Here, Plaintiffs assert that Defendants Viking and Hertz are improperly attempting to collect debts arising out of Hertz's ongoing rental of vehicles; Plaintiffs seek to represent classes of individuals who have suffered by these activities. In contrast, Defendants claim that their actions comply with the law and so they are entitled to continue their actions unchecked. There is, therefore, a controversy between parties with parties of adverse legal rights, the resolution of which will clarify and settle the legal relationship between Defendants and their rental customers, such as Plaintiffs.

1

V.     **CONCLUSION**

2
            For the foregoing reasons, Viking's Motion should be denied.

3

4      Dated: <u>March 4, 2020</u>                    By:     */s/ Leland H. Belew*
                                                            Leland H. Belew
5

6                                                   Leland H. Belew (SBN 293096)
                                                    Lori E. Andrus (SBN 205816)
7                                                   Jennie Lee Anderson (SBN 203586)
                                                    ANDRUS ANDERSON LLP
8                                                   155 Montgomery Street, Suite 900
                                                    San Francisco, California  94104
9                                                   Telephone: (415) 986-1400
                                                    Facsimile: (415) 986-1474
10                                                  leland@andrusanderson.com
                                                    lori@andrusanderson.com
11                                                  jennie@andrusanderson.com

12                                                  Clinton A. Krislov (*pro hac vice forthcoming*)
                                                    Christopher M. Hack (*pro hac vice forthcoming*)
13                                                  KRISLOV & ASSOCIATES, LTD
                                                    20 North Wacker Drive, Suite 1300
14                                                  Chicago, Illinois  60606
                                                    Telephone: (312) 606-0500
15                                                  Facsimile: (312) 739-1098
                                                    clint@krislovlaw.com
16                                                  chris@krislovlaw.com

17

18                                                  *Attorneys for Plaintiffs and the Proposed Class*

19

20

21

22

23

24

25

26

27

28