James K. Schultz, Esq.
Sessions, Fishman, Nathan & Israel, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA 92108
(619) 758-1891
jschultz@sessions.legal

Michael D. Alltmont, Esq. (admitted *pro hac vice*)
Bryan C. Shartle, Esq. (admitted *pro hac vice*)
Sessions, Fishman, Nathan & Israel
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002
(504) 846-7954
malltmont@sessions.legal

*Attorneys for Defendant Viking Client Services, LLC. dba Viking Billing Service*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RONALD G. DENICOLO, JR., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE HERTZ CORPORATION et al., <br><br> Defendants. | Case No. 4:19-cv-00210-YGR <br><br> **VIKING CLIENT SERVICES, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **HEARING DATE AND TIME: APRIL 14, 2020 AT 2 P.M. (CANCELLED PER COURT ORDER AND DUE TO CORONAVIRUS)** |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. iii

Introduction ............................................................................................................................ 1

A. Plaintiff DeNicolo's Damage Claim Was For Business Purposes .................................... 2

B. Plaintiff DeNicolo's Damage Claim Was Not In Default When Placed With Viking ...... 7

C. Plaintiff DeNicolo's Vehicle Claim Act Should Be Dismissed ....................................... 9

D. Plaintiff Fox's Rosenthal Claim Should Be Dismissed ................................................. 11

E. Plaintiff Fox's Unfair Competition Law Claim Should Be Dismissed .......................... 12

F. The California Consumer Legal Remedies Act Should Be Dismissed .......................... 13

G. Plaintiffs Are Not Entitled To Declaratory Relief ......................................................... 13

Conclusion ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) ....................................... 7

*Bloom v. I.C. Systems, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992) .......................................................... 5

*Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 357 (6th Cir. 2012) ................................................ 8

*Davis v. Hollins Law*, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013) .................................................. 3

*Diaz v. Viking Client Servs., Inc.*, 2016 WL 5796835 (D. Minn. Oct. 3, 2016) ............................... 7

*Ellis v. Phillips & Cohen Assocs., Ltd.*, 2016 WL 3566981, *1 (N.D. Cal. June 30, 2016) ............... 5

*Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 799 (E.D. La. 2013) ...................... 4

*Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) ........................................ 14

*Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744 (7th Cir. 2016) ................... 4

*Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1199 (W.D. Wash. 2003) ................................. 4

*Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1042 (W.D. Wis. 2002) ................... 8

*Healy v. Jzanus Ltd.*, 2002 WL 31654571, *2 (E.D.N.Y. Nov. 20, 2002) ........................................... 8

*In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (Calif. 2009) ................................................................ 13

*Justice v. Ocwen Loan Servicing, LLC*, 2014 WL 526143, *1 (S.D. Ohio Feb. 7, 2014) .................. 7

*Keppler v. Bank of New York Mellon*, 2018 WL 6809564, at *5 (E.D. Cal. Dec. 27, 2018) ............ 14

*Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1025 (S.D. Ind. 2007) ....................................... 8

*Malasky v. Esposito*, 2019 WL 79032, *10 (N.D. Cal. Jan. 2, 2019) ................................................ 14

*Matin v. Fulton, Friedman & Gullace LLP*, 826 F. Supp. 2d 808, 812 (E.D. Pa. 2011) ................... 3

*Mavris v. RSI Enterprises Inc.*, 86 F. Supp. 3d 1079 (D. Ariz. 2015) ............................................... 8

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols et al.*, 214 F.3d 872, 875–76 (7th Cir. 2000)... 5

*Morrison v. Clear Mgmt. Sols.*, 2019 WL 122905, *9 (D. Utah Jan. 7, 2019) ................................. 8

*Petsche v. EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 673 (D. Minn. 2011) ....................................... 4

*Saylor v. Pinnacle Credit Servs., LLC*, 118 F. Supp. 3d 881, 886 (E.D. Va. 2015), aff'd, 667 F. App'x 829 (4th Cir. 2016) ............................................................................................................ 5

*Slenk v. Transworld Sys. Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) .................................................. 3

*Strauss v. CBE Grp., Inc.*, 173 F. Supp. 3d 1302, 1313 (S.D. Fla. 2016) .......................................... 4

**STATUTES**

15 U.S.C. § 1692a(5) ................................................................................................................................ 3

625 ILCS § 5/6-305.2 ............................................................................................................................. 10

Cal Civ. Code § 1788.17 ........................................................................................................................ 12

Cal. Bus. & Prof. Code § 17204 ........................................................................................................... 13

Cal. Bus. & Prof. Code §§ 17200 .......................................................................................................... 13

Cal. Civ. Code § 1788.2(d) .................................................................................................................... 12

**OTHER AUTHORITIES**

85 Cal. Op. Att'y Gen. 215 (2002). .................................................................................................. 12

## INTRODUCTION

Viking Client Services, LLC ("Viking") submits this Reply in further support of its Motion for Summary Judgment and in response to the opposition filed by plaintiffs Ronald Denicolo and Michael Fox.

Plaintiffs' response attempts to cloud and confuse this Court as to both the applicable law and the subject facts present in this case. Plaintiffs assert that summary judgment would require this Court "to wade into a thicket of fact questions," but that is simply not true. The facts and the law are clear and unambiguous. As a prime example, plaintiffs explain that their case is an attack against a purported "scheme" concocted by Hertz and Viking where customers "are first contacted by Viking more than 30 days after the purported damage." Docket No. 111, p. 1. While Viking vehemently denies any such dilatory scheme exists, it is nonsensical that plaintiffs continue to pursue claims based upon such a theory that the first contact from Viking occurred more than 30 days after the purported damage when the *undisputed* record evidence is that *both* plaintiffs were first contacted *within* 30 days of the purported damage. Viking first contacted plaintiff DeNicolo by phone 24 days after the purported damage and plaintiff Fox by letter 21 days after the purported damage.[1] And if it were not for a coding error, Viking would have sent plaintiff DeNicolo a letter the same day as

---

[1] Plaintiff DeNicolo asks the Court to disregard this contact because Viking did not identify itself or state why it was calling on the March 5 call (24 days after the damage incident) and other calls. Docket No. 111, p. 4. Denicolo's argument is disingenuous. Plaintiff DeNicolo *admits* he received the calls and deliberately *lied* to Viking, claiming he did not speak English and was not Ronald DeNicolo. Separate Statement, Facts Nos. 14-16, 18. Plaintiff DeNicolo purposefully avoided contact with Viking and now complains (1) that Viking did not make contact with him earlier, ignoring his own role in causing the complained-of delay; and (2) that Viking should have nevertheless discussed his damage claim with an unidentified and unknown third-party – which would have been grossly unprofessional, unethical, and a potential violation of privacy laws. *See* **Exh. R**, Bacon Tr. p. 178, ll. 7-12. This Court should see plaintiff's argument for what it is – a smoke screen. Viking's attempt to contact plaintiff DeNicolo and discuss the damage claim in a timely and professional manner should not be disregarded, discounted, or ignored because plaintiff was the cause of the delay. Contrary to plaintiffs' claim that Viking schemed against consumers to withhold contact for more than 30 days, the facts are *undisputed* that Viking contacted or attempted to contact both plaintiffs within 30 days.

the initial first contact by telephone – again just 24 days after the damage occurred.

That is just one obvious misrepresentation and smoke screen set forth by plaintiffs in their response. When divorced from the hyperbolic claims of a nefarious scheme, and focus is instead placed on the undisputed facts, plaintiffs' opposition fails, and this Court should grant summary judgment in favor of Viking.

### *A. Plaintiff DeNicolo's Damage Claim Was For Business Purposes*

In an effort to avoid the consequences of his own admissions, plaintiff DeNicolo argues a determination of whether an obligation is a "consumer debt" subject to the FDCPA is a fact-intensive pursuit and this Court cannot grant summary judgment because it would have to "weigh conflicting evidence." Docket No. 111, p. 6. While there are numerous problems with plaintiff DeNicolo's argument, most prominent among them is that he does ***not*** actually provide any conflicting evidence to be weighed that the subject obligation was incurred for anything other than business purposes.[2] Notably too, plaintiff's First Amended Class Action Complaint does not even allege the subject obligation was a "debt" as defined by the FDCPA or that the transaction giving rise to the obligation was primarily for personal, family, or household purposes. Nor could he.

Before delving further into the elephant in the room, *i.e.* the uncontradicted evidence that plaintiff DeNicolo rented the vehicle for business purposes, it is important to understand what plaintiff is obligated to establish in order to maintain a claim under the FDCPA. Plaintiff must establish Viking was attempting to collect a "debt," which is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §

---

[2] Plaintiffs' do not address the related issue that, if this argument is to be credited, the weighing of conflicting evidence on an individualized basis would present an insurmountable obstacle to certification under Rule 23.

1692a(5). Plaintiff's opposition (and the Amended Complaint) does not quote or discuss the plain language of the FDCPA, because to do so would expose fatal flaws in his argument.

Plaintiff DeNicolo bears the burden of proving the "obligation . . . to pay" the damage claim arose "out of a transaction" (here – the car rental), which was "primarily for personal, family, or household purposes." The Court must simply determine whether plaintiff has put forth any evidence that the car rental was "primarily for personal, family, or household purposes." Plaintiff DeNicolo admits it was not, and his argument in opposition fails to point to any contrary evidence.

The Ninth Circuit has made clear that in determining whether a transaction was "primarily for personal, family, or household purposes," a court must "look to the substance of the transaction and ***the borrower's purposes in obtaining the loan***[.]" *Slenk v. Transworld Sys. Inc*., 236 F.3d 1072, 1075 (9th Cir. 2001) (emphasis added); *Davis v. Hollins Law*, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013). Plaintiff argues, in contrast to well-settled Ninth Circuit precedent, that this Court should instead look broadly at the collection practices of Viking and how Viking characterized the debt. Docket No. 111, 7. But that is a red herring. How Viking collects damage claims, and whether Viking makes a distinction between consumer and commercial debt, is irrelevant to the question of whether plaintiff DeNicolo owed or allegedly owed a damage claim arising from a car rental that was "primarily for personal, family, or household purposes." *See Matin v. Fulton, Friedman & Gullace LLP*, 826 F. Supp. 2d 808, 812 (E.D. Pa. 2011) ("[a] debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of the obligation itself."). By plaintiff DeNicolo's own admission, there was no personal, family, or household purpose to the car rental – just business.

To try to create a fact question without any facts, plaintiff instead argues the obligation arose from an ordinary consumer transaction. Docket No. 111, p. 9. There are two problems with this argument. First, plaintiff does not explain what an "ordinary consumer transaction" is but concludes,

without explanation, that a car rental is one. Indeed, there are numerous ordinary daily transactions the principle purpose of which can be business or personal, depending on the user's purpose for entering the transaction. *See Strauss v. CBE Grp., Inc.*, 173 F. Supp. 3d 1302, 1313 (S.D. Fla. 2016) ("Cable service can just as easily be purchased for a business or commercial purpose as for a home or other personal use" and simply because agency was licensed as a debt collector did not prove that it "collects consumer debts exclusively.").

This dovetails into the second problem - plaintiff's argument is not consistent with Ninth Circuit precedent. The question is not what a particular transaction generally is characterized as (which is an impossible question to answer), but rather what was the purpose of the particular transaction at issue?[3] In *Petsche v. EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 673 (D. Minn. 2011), the court relied upon Ninth Circuit precedent that directed it to pay "particular attention to the purposes for which the credit was extended." *Petsche*, citing *Bloom v. I.C. Systems, Inc.*, 972 F.2d

---

[3] Plaintiff relies heavily on *Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1199 (W.D. Wash. 2003) and *Franklin v. Parking Revenue Recovery Servs., Inc.*, 832 F.3d 741, 744 (7th Cir. 2016) for his argument that the relevant inquiry is on "how" the transaction occurred, not "why." Docket No. 111, p. 9. But both *Hansen* and *Franklin* address a different question than the one at issue here. Specifically, *Hansen* and *Franklin* dealt with whether the underlying debt was a "transaction," *i.e.* a voluntary or consensual act, as that term is used in the FDCPA. *Hansen* did not address the question of whether the obligation was "primarily for personal, family, or household purposes." Indeed, the question of "how" the underlying obligation arose may be relevant to whether it is a "transaction," as contemplated by the FDCPA, but the question of "why" the underlying obligation arose is relevant to whether the transaction was "primarily for personal, family, or household purposes."

This is the same problem with plaintiff's reliance on *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 799 (E.D. La. 2013). *Fagan* was a decision on an unopposed Motion for Default Judgment. The decision did not quote the definition of a "debt" under the FDCPA (like plaintiff's Response), nor did it analyze any case law. Without such analysis, the court concluded the debt was voluntarily entered into by the debtors. *Id*. Moreover, its focus on the treatment of the obligation by Budget as a personal debt is both inapposite to the facts here (Hertz marked the account as a "business" rental), and contrary to well-established Ninth Circuit precedent, which holds that how the creditor or debt collector treats the debt is irrelevant. Separate Statement, Fact No. 8; *Slenk*, 236 F.3d at 1075 (9th Cir. 2001) (a court must "look to . . . the borrower's purposes in obtaining the loan.").

1067, 1068 (9th Cir.1992); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols et al.*, 214 F.3d 872, 875–76 (7th Cir. 2000) (holding that the character of the debt is determined at the time it was incurred and by the purpose for which it was incurred). The court held that an ordinary mortgage concerning the purchase of a rental property was primarily for business circumstances. *Petsche*, 972 F.2d at 1068. Importantly, the court found that the fact plaintiff signed the loan in his own name, as opposed to the business' name, was not determinative of the purpose of transaction.

In *Saylor v. Pinnacle Credit Servs., LLC*, 118 F. Supp. 3d 881, 886 (E.D. Va. 2015), aff'd, 667 F. App'x 829 (4th Cir. 2016), the plaintiff opened a credit card account in his own name, but made all purchases for his carpentry business. The court dismissed the plaintiff's FDCPA claims because the undisputed evidence showed the principle purposes of the debt was business, and not personal. *Id*. Conversely, in *Ellis v. Phillips & Cohen Assocs., Ltd.*, 2016 WL 3566981, *1 (N.D. Cal. June 30, 2016), the plaintiff opened a business credit card, but the court held there was a genuine issue of material fact because plaintiff there, unlike here, presented evidence that the debt was a consumer debt because she opened the account and used it for personal purposes. Contrary to plaintiff's argument, the determination of whether an obligation is primarily for personal, family or household purposes is focused on the why the customer incurred the debt. And here, there is no dispute that Denicolo incurred his debt with Hertz exclusively for business purposes.

Plaintiff admits that the car rental, *i.e.* the "transaction," was for business purposes. Plaintiff, a Chicago resident and Vice President of Sales for Snipp Interactive ("Snipp"), rented a vehicle from the San Francisco airport for approximately 24 hours from Thursday, February 8, 2018 until Friday, February 9, 2018. *See* Separate Statement, Fact Nos. 5 and 7. In the following deposition excerpts, plaintiff admits that the only purpose for the trip, and the car rental, was to meet a Snipp client for business.

> Q. Why were you going to San Francisco?
> A. To meet with a client.

DeNicolo Depo. Tr. p. 22, ll. 17-18.

> Q. Okay. Do you recognize this document?
> A. It looks like my bill from Thrifty.
> Q. Okay. So this is -- seems to be for the rental that you made at San Francisco airport on February 8th of 2018?
> A Yes.
> Q Okay. And this was for the rental car that you had booked 30 days or so, approximately, beforehand on an Expedia-type website?
> A Correct.
> Q All right. And this related to a trip you flew into San Francisco for a client meeting; right?
> A Correct.
> Q Were you in San Francisco that day for any other reason than to meet with a client?
> A No.
> Q And this was a client of Snipp?
> A Yes.

*Id*. at pp. 26-27, ll. 20-13.

> Q Okay. And while you were in San Francisco, you were there only for this client meeting and getting -- returning home?
> A Correct.
> ***Q There was no personal aspect?***
> ***A No.***

*Id*. at pp. 32-33, ll. 21-1 (emphasis added).

> MR. SHELTON: Like was this rented through a company? Or was this a personal rental?
> MR. DE NICOLO: I believe I rented it through like -- no, it was a -- I mean, it was -- it was a business trip[.]

*Id*. at p. 71, ll. 8-12.

Plaintiff does not present any conflicting evidence. In response to Fact No. 6, which states "the rental was exclusively for business purposes," plaintiff broadly cites four pages of his deposition testimony. Based on his highlights, it appears plaintiff's only "conflicting" evidence is that he got a cup of coffee at a coffee shop. Plaintiff does not argue he flew to San Francisco and rented a car *primarily* for the purpose of getting a cup of coffee. No. The evidence is clear and undisputed - plaintiff flew to San Francisco and rented a car primarily (indeed, exclusively) for business purposes. He admits "there was no personal aspect" to the trip or the rental. The law and

evidence are clear, there are no genuine issues of material fact. Plaintiff DeNicolo's claims, all arising under the FDCPA, must be dismissed.

**B. Plaintiff DeNicolo's Damage Claim Was Not In Default When Placed With Viking**

The question of whether Viking's Billing Services is subject to the FDCPA was thoroughly scrutinized and analyzed in *Diaz v. Viking Client Servs., Inc.,* 2016 WL 5796835 (D. Minn. Oct. 3, 2016). Tellingly, plaintiffs barely address the case and bury it at the end of their argument. Docket No. 111, p. 16. Plaintiffs' argument is that *Diaz* is wrong on the law and distinguishable on the facts. Plaintiffs are wrong.

In *Diaz*, like here, the rental company placed a damage claim with Viking within weeks of the date of damage. *Id*. The plaintiff alleged the debt went into default immediately after payment became due per the contract and without a period of delinquency. *Id*. The court disagreed with the plaintiff's curiously anti-consumer position and observed that "it would not serve the FDCPA's broad, pro-debtor purpose if a debt went into default immediately after payment becomes due because of the adverse consequences that default imposes on debtors – such as acceleration, repossession, increased interest rates, and negative credit reports." *Id*. at *4; *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) ("[the plaintiff's] position involves a curious role reversal—a debtor arguing that his debt was in default at the earliest possible time—and has the paradoxical effect of immediately exposing debtors to the sort of adverse measures. . . from which the Act intended to afford debtors a measure of protection.").

Plaintiffs here do not explain how or why it would be prudent to deem a debt in default *before* the consumer has been notified of the debt. To be sure, in every case relied upon by plaintiff, the debt was past due and/or the original creditor contacted the consumer *before* the servicing agent contacted the consumer. *Justice v. Ocwen Loan Servicing, LLC*, 2014 WL 526143, *1 (S.D. Ohio Feb. 7, 2014) (debt assigned to servicer when two months past due); *Morrison v. Clear Mgmt. Sols*.,

2019 WL 122905, *9 (D. Utah Jan. 7, 2019) (creditor issued "final notice" in August 2016, account assigned to the defendant October 2016); *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 357 (6th Cir. 2012) (multiple notifications of default from the creditor before assignment to collector); *Healy v. Jzanus Ltd.*, 2002 WL 31654571, *2 (E.D.N.Y. Nov. 20, 2002) (motion to dismiss under Fed. R. Civ. P. 12(b)(6) denied because notice said it was from a debt collector); *Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1025 (S.D. Ind. 2007) (account referred to collector after past due); *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1042 (W.D. Wis. 2002) ("It is undisputed that defendant did not service any of Peppertree's current accounts; it serviced only those accounts that showed a missing payment."). Unlike the cases relied on by plaintiffs, Viking provides the first notice of loss for the subject damage claims.

Plaintiff relies primarily on *Mavris v. RSI Enterprises Inc.*, 86 F. Supp. 3d 1079 (D. Ariz. 2015). However, *Marvis* is distinguishable and, in fact, supports Viking's position. In *Marvis*, the plaintiff obtained medical services in December 2012. *Id*. at 1080. In January 2013, the hospital assigned the account to a collector, who proceeded to issue notices *in the hospital's name*. *Id*. at 1081. To be clear, the notices were exclusively in the name of the hospital and did not make any reference to the collector. *Id*. In fact, the collector did not issue a notice making any reference to itself until July 2013 – 7 months later. *Id*. The court set forth several factors to analyze whether the debt was in default when it was obtained by the collection agency. Importantly, the first two are "the number of times a creditor has requested payment [and] the time that has elapsed since the first request." *Id*. at 1086.

Here, plaintiff relegates these factors to a footnote and argues they should be ignored because of the purported "scheme" between Hertz and Viking. Docket No. 111, p. 15. As discussed above, there was no scheme. Plaintiffs assert Hertz and Viking schemed to withhold the initial contact from damage claim customers for more than 30 days, but the undisputed, uncontradicted evidence is that

Viking contacted both plaintiffs *within* 30 days. There was and is no scheme.

This purported "scheme" is also the basis of plaintiffs' attempt to distinguish the facts of this case from *Diaz*. Plaintiffs argue the plaintiff in *Diaz* was contacted quickly and treated with respect when he disputed the damage claim. Docket No. 111, p. 16. Plaintiffs argue DeNicolo was treated differently. *Id*. That is simply untrue. As discussed above, Viking first attempted to contact plaintiff DeNicolo 24 days after the purported damage. Moreover, when plaintiff DeNicolo first disputed owing the damage claim, Viking emailed him all of the documentation supporting the claim within 40 minutes. Separate Statement, Facts Nos. 19 and 20. Indeed, plaintiff Fox agrees that, like plaintiff DeNicolo, Viking was professional and was not rude to him. Separate Statement, Fact No. 30. Plaintiffs argument that *Diaz* is distinguishable because Viking purportedly delayed contact with plaintiff DeNicolo or treated him improperly is not true, contradicted by the clear and unambiguous record and irrelevant to the legal question.

There are no genuine issues of material fact. Plaintiffs' argument that there is a "knotty factual issue" is not supported by the law or the facts. While plaintiffs have identified a number of cases where there may be some ambiguity whether the debt was in default at the time it was obtained by the collector, those cases all concerned circumstances where the consumer knew of the debt and heard from the creditor before hearing from the collector. Plaintiffs' argument, when applied to the case, would require a finding that an account can be defaulted before the customer is even notified of the claim. That is completely inconsistent with the law or the purpose of the FDCPA.[4] This

---

[4] In a footnote, plaintiffs argue that per the Rental Agreement, the damage claim was due and owing upon Hertz's receipt of an invoice for the damages. See Docket No. 111, p. 12 and Separate Statement, Fact 37. Plaintiffs argue the Rental Agreement permits Hertz to simply bill the credit card on file upon receipt of said invoice. *Id*. Plaintiff is wrong for multiple reasons. First, the Rental Agreement says the charges are due upon the customer's receipt of an invoice, not Hertz's. See Separate Statement, Fact 37, Exhibit 15. Second, plaintiffs' reading of the Rental Agreement ignores the word "or," which separates an unknown charge from being payable upon the customer's receipt of an invoice *or* when Hertz simply bill the credit card on file. Third, if the Rental Agreement simply permitted Hertz to bill the credit card on file for the damage claim, they would have done so and there

Court should dismiss plaintiff DeNicolo's FDCPA claims.

**C. Plaintiff DeNicolo's Vehicle Claim Act Should Be Dismissed**

In response, plaintiffs do *not* argue that their claim under the Illinois Vehicle Code ("IVC"), 625 ILCS § 5/6-305.2, constitute an independent cause of action. Indeed, plaintiffs concede that DeNicolo's claim under the IVC is inextricably tied to their FDCPA claim. If there is no FDCPA claim (and here, there is not), there is no IVC claim.

Moreover, plaintiffs do not explain or support their position that the IVC prohibits notification of the damage claim until after obtaining an agreement with the renter as to the damages or a legal determination of the amount to be collected. Docket No. 111, p. 19. The IVC has two relevant provisions. Under 625 Ill. Comp. Stat. Ann. 5/6-305.2(d), a "person who rents a motor vehicle to another may not collect or attempt to collect" a damage claim without first obtaining "an estimate from a repair company or an appraiser . . . [and] mak[ing] a copy of the estimate available upon request to the renter who may be liable[.]" Any claim arising from this section fails as to Viking. First, Viking is not "a person who rents a motor vehicle." Second, Hertz did obtain an estimate before assigning the account to Viking. Compare 111-2, p. 81 (estimate dated February 15, 2018) and Separate Statement, Fact No. 10 (account placed with Viking on March 1, 2018). Third, Viking sent plaintiff DeNicolo the estimate, along with all other account documents, within 40 minutes of his dispute. Separate Statement, Fact Nos. 19-20.

The IVC also states the following:

> No rental company shall require a deposit or an advance charge against the credit card of a renter, in any form, for damages to a vehicle which is in the renter's possession, custody, or control. No rental company shall require any payment for damage to the

---

would be no reason to send an invoice for the damages (via Viking Billing Services). Fourth, plaintiffs' reading of the Rental Agreement, like their argument against *Diaz*, is oddly anti-consumer. Indeed, plaintiff's reading of the Rental Agreement both ignores Hertz's act of issuing an invoice and is self-sabotaging. Fifth, plaintiffs reading of the Rental Agreement as permitting Hertz to simply charge the credit card upon receiving an estimate for the damages but without notifying the customer would violate the IVC (*see* Section C of this brief) and likely many other state laws.

> rental vehicle, upon the renter's return of the vehicle in a damaged condition, until after the cost of the damage to the vehicle and liability therefor is agreed to between the rental company and renter or is determined pursuant to law.

625 Ill. Comp. Stat. Ann. 5/6-305.2(f).

Plaintiff argues this provision prohibits a renter, or Viking, from "collecting or attempting to collect" the damage claim unless or until there is an agreement with the renter or liability is determined pursuant to law. Plaintiff misreads the statute. Section 5/6-305.2(f) does not prohibit the collection or attempt to collect a damage claim. The words "collect or attempt to collect" are *not* in § 5/6-305.2(f). However, those words are in § 5/6-305.2(d). Clearly, the Illinois legislature could have prohibited a renter from "collecting or attempting to collect" a damage claim in subsection "f" (as they did, subject to certain conditions, in subsection "d") but chose different language. Specifically, the subsection does not allow a renter to "require a deposit or advance charge" for a damage claim and does not allow a renter to "require any payment for damage to the rental vehicle, upon the renter's return of the vehicle in a damaged condition, until after the cost of the damage to the vehicle and liability therefor is agreed to between the rental company and renter or is determined pursuant to law." *Id*. Put another way, a renter is prohibited from taking a deposit against a damage claim or putting a credit card on file to automatically charge the customer for a damage claim. This is a sensible provision given that a renter will likely have the customer's credit card on file and could otherwise automatically charge the customer (or take payment) without any notice and, worse, over an objection.

Taken together, § § 5/6-305.2(d) and (f) are tiered regulations which (1) prohibit collection attempts until there is an estimate and (2) prohibit taking payment (by way of a deposit or credit card) until there is an agreement on the damages or court order. These provisions make sense and Viking (and Hertz) abided by them. Viking did not contact plaintiff DeNicolo until after there was an estimate, the estimate was available to him, and despite having his credit card information and a

rental contract wherein he took responsibility for damage, neither Hertz or Viking charged him for the damage. Instead, Viking attempted to contact plaintiff DeNicolo just 24 days after the damage incident and provided him full documentation within 40 minutes of his request for same. Plaintiff's IVC claim should be dismissed.[5]

### D. Plaintiff Fox's Rosenthal Claim Should Be Dismissed

Cal Civ. Code § 1788.17 applies to the collection or attempted collection of a "consumer debt." The term "consumer debt" is defined as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(d) (emphasis added). Importantly, the money, property or other equivalent must be "due or owing or alleged to be due or owing." In evaluating the definition, the Office of the Attorney General has said "[t]he legislative purposes appear to be focused entirely upon debts that have become delinquent and subject to immediate collection activities. This construction of the phrase 'due and owing' would have the effect of conforming the Act's provisions to federal law." 85 Cal. Op. Att'y Gen. 215 (2002).

In their response, plaintiffs do not address the definition of "consumer debt" and fail to explain how a debt can be "due and owing" before notice of same has been provided to the debtor. Instead, plaintiffs argue Rosenthal does not include the same "in default" exception as the FDCPA. While true, that is completely irrelevant and ignores the critical issue – is a debt "due and owing" before the consumer is notified it exists? According to the plain definition of "due," and confirmed by the Attorney General, the answer is ***no***. There must be some notice provided before the debt becomes "due and owing."

---

[5] Plaintiffs' interpretation of the IVC would lead to incongruous results: if Denicolo is correct that the IVC prohibits Viking from presenting the damage claim to a customer unless or until there is an agreement between the renter and the customer on the amount of the damage, there is no possibility that such an agreement can be reached because the renter would be precluded from ever presenting the claim to the customer.

Here, plaintiff Fox admits the April 23, 2019 letter from Viking was the first notice of loss concerning the damage claim. Separate Statement, Fact No. 25. Plaintiff Fox further admits that as soon as he disputed the claim, Viking ceased any attempts to collect the claim, treated plaintiff Fox professionally and with respect, told him that "if it's not yours, I don't want you to pay it," and that he received confirmation the claim had been closed within two weeks. Separate Statement, Facts Nos. 25-34. Put another way, plaintiff Fox's allegation that Viking was trying to preclude him from disputing the damage claim is contradicted by the facts specific to his case.

### E. Plaintiff Fox's Unfair Competition Law Claim Should Be Dismissed

Plaintiff Fox does not deny that his claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., is derivative of his Rosenthal claim. Accordingly, because his Rosenthal claim fails, so does his UCL claim.[6]

Additionally, under the UCL, a plaintiff must show that he or she "suffered injury in fact" and "lost money or property as a result" of an unfair business practice. Cal. Bus. & Prof. Code § 17204; *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (Calif. 2009). Though plaintiff Fox submits that he was injured by Viking (Separate Statement Fact Nos. 46 and 47), he admits that Viking never caused him "to suffer any out-of-pocket monetary damages, the likes of which are necessary to sustain a claim under the UCL. *See* **Exh. S**, Fox Response to Request for Admissions Nos. 1 and 2; Response to Interrogatory No. 16.

### F. The California Consumer Legal Remedies Act Should Be Dismissed

Plaintiff concedes that his claim under the Consumer Remedies Act ("CRA"), Cal. Civ. Code §§ 1750, *et seq*., is derivative of his Rosenthal claim. Moreover, plaintiff Fox concedes that Viking

---

[6] Plaintiffs also state in their response that "while Viking's violation of the Rosenthal Act will substantiate its violation of the UCL under the unlawful prong, so too will its violation of the FDCPA, as well as its violation of the Illinois Vehicle Code." Docket No. 111, p. 22. The statement is inapplicable in the instant case because only plaintiff Fox asserts claims under the UCL, but plaintiff Fox does *not* assert claims under the FDCPA or IVC.

treated him with respect, accepted his dispute of the damage claim, did not pursue the claim once he disputed the claim, and he received confirmation that Viking and Hertz were no longer pursuing the claim. Plaintiff's claim that the Viking representative allegedly misrepresented the documents held by Hertz is disingenuous. The recording and deposition testimony of Ryan Bacon, together with the fact that Viking treated plaintiff Fox with respect and closed the damage claim upon dispute, prove that, at worst, there may have been a misunderstanding between Fox and the Viking representative, but not a purposeful misrepresentation as alleged and as required to maintain a claim under the CRA.

### G. Plaintiffs Are Not Entitled To Declaratory Relief

"A declaratory judgment is not a theory of recovery[, but] merely offers an additional remedy to litigants." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (citations and quotation marks omitted); *Malasky v. Esposito*, 2019 WL 79032, *10 (N.D. Cal. Jan. 2, 2019) ("declaratory relief does not constitute an independent basis for recovery and may not stand alone."); *Keppler v. Bank of New York Mellon*, 2018 WL 6809564, *5 (E.D. Cal. Dec. 27, 2018), report and recommendation adopted, 2019 WL 1095166 (E.D. Cal. Feb. 19, 2019) (declaratory judgment "only creates a remedy [and is] not a separate cause of action"). Because plaintiffs' claims fail as a matter of law, plaintiffs' derivative claim for declaratory relief must be dismissed.

Moreover, because the purported "scheme" plaintiffs allege in this case is disproven by their own respective facts and circumstances, their claim for declaratory relief should be dismissed.

### **CONCLUSION**

There are no issues of material fact. For the reasons stated above, this Court should dismiss plaintiffs' claims against Viking with prejudice.

Dated: 3/25/2020      SESSIONS FISHMAN, NATHAN & ISRAEL, L.L.P.
*/s/James K. Schultz*
James K. Schultz
*Attorney for Defendant Viking Client Services, LLC.*
*dba Viking Billing Service*