UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RONALD G. DENICOLO, ET AL.,**<br>  Plaintiffs,<br>vs.<br>**THE HERTZ CORPORATION, ET AL.,**<br>  Defendants. | CASE NO. 19-cv-00210-YGR<br><br>**ORDER DENYING MOTION OF DEFENDANT VIKING FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 105 |

On January 11, 2019, plaintiff Ronald G. DeNicolo, Jr. filed this putative class action complaint against Viking Client Services, LLC, d/b/a Viking Billing Service ("Viking") and The Hertz Corporation ("Hertz"). On October 14, 2019, plaintiff Fox was added by an amended Complaint. DeNicolo alleges four claims against Viking: violation of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. sections 1692f and 1692e; violation of the Illinois Vehicle Code ("IVC"), 625 ILCS § 5/6-305.2; declaratory judgment under 28 U.S.C. § 2201. Plaintiff Fox alleges four claims against Viking for: violation of California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Code § 17.1800; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; California Consumer Remedies Act ("CCRA"), Cal. Civ. Code §§ 1750, *et seq*.; and declaratory judgment.

Presently before the Court is Viking's motion for summary judgment on all claims asserted by plaintiffs. (Dkt. No. 105.) Having carefully considered the papers submitted, the oral argument of the parties, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** the Motion for Summary Judgment. Viking has failed to set forth admissible evidence to support its motion and has failed to carry its burden to show that the debts and collection activities here are not covered by the FDCPA and Rosenthal Act, respectively.

## I. BACKGROUND

### A. Viking's Contacts with DeNicolo

On February 8, 2018, plaintiff DeNicolo rented a car from a Hertz affiliate, Thrifty, at the San Francisco airport. DeNicolo had travelled to San Francisco to meet with a business client. He testified that there was no "personal aspect" to the trip. (Motion, Exh F. [DeNicolo Depo.] at 32-33.) DeNicolo stayed overnight and returned the car the next day, February 9, 2018, before returning home.

On March 1, 2018, Hertz placed with Viking a claim of alleged damage to the rental car during DeNicolo's rental period. (Def. Fact 9.) Viking provides billing and collection services for Hertz including billing for claims of damage to rental vehicles. (Belew Declaration in Support of Opposition, Dkt. No. 111-2, Exh. 2, [Bacon Depo.] at 27:19-28:19.) That same date, Viking requested that its letter vendor, RevSpring, issue a form letter regarding first written notice of loss to DeNicolo. (Def. Fact 10.) Viking contends that this initial letter was flagged as having an incorrect mailing address and a Viking employee updated the account with a valid address on March 5, 2018, but no letter was sent at that time.

Viking attempted to contact DeNicolo by calling the cellphone number on the account four times in March and April of 2018. Those calls either were not answered or were answered by someone stating that it was a wrong number. (Def. Facts 14, 15, 17, 18; Pl. Addt'l Fact 42.) During these calls, Viking did not identify itself, state that it was calling on behalf of the Hertz or Thrifty rental agencies, or mention DeNicolo's car rental in February 2018. (Pl. Addt'l Fact 43, 44.)

On or around May 29, 2018, Viking sent its first letter to plaintiff DeNicolo, 109 days after he had returned the rental vehicle. (Belew Decl. Exh 4.) The letter demanded immediate payment and stated that "your payment must be received in our office within 30 days from the date of this letter." (*Id.*) It did not disclose that Viking was attempting to collect a debt, nor that any information Viking gathered would be used for that purpose, as required by 15 U.S.C. § 1692e(11). Likewise, the letter did not state that DeNicolo could demand verification of the debt, or that the debt would be assumed valid unless it was disputed within 30 days.

On June 6, 2018, DeNicolo called Viking and stated that he did not damage the vehicle. (Def. Fact 19.) Viking's representative offered to email DeNicolo supporting documentation and provided contact information for a different representative who was handling the damage claim account. On June 7, 2018, Viking's representative called DeNicolo at which time DeNicolo advised that he had an attorney representing him on the matter. (Def. Fact 21.)

### B. Viking's Contacts with Fox

Plaintiff Fox returned a rental vehicle to Hertz on April 2, 2019. (Def. Fact 22.) Viking offers a document entitled "incident report" apparently created by Hertz, dated April 2, 2019, in which Fox was identified as the renter of a vehicle that was damaged. (Motion at Exh. P, Dkt. No. 105-17.)[1] Hertz placed the claim for vehicle damage with Viking. (Def. Fact 9.)

On April 23, 2019, Viking mailed plaintiff Fox a letter that was Fox's first notice of the claimed damage bill. (Def. Fact 25; Belew Decl. Exh. 13.) The letter included a number to call to discuss the claim process. (Def. Fact 26.) Fox initially contacted Hertz upon receipt of the letter on April 26, 2019, and then called Viking and left a voicemail on May 2, 2019. (Def. Fact 27.) Viking returned his call on May 3, 2019, at which time Fox spoke with the Viking representative for approximately 10 minutes. (Def. Fact 29.) During the call, the agent immediately addressed Fox's assertion that he did not owe the damage claim and she never demanded payment, telling Fox, "if it's not yours, I don't want you to pay it." (Def. Facts 31, 33.) When plaintiff Fox advised he had pictures proving he returned the car in the same condition as when he rented it, the agent asked him to send her the pictures for review and, if everything matched up, Viking would close the file. (Def. Fact 32.) Within two weeks of the call, plaintiff Fox received an email from Hertz confirming that the damage claim was closed. (Def. Fact 34.)

## II. APPLICABLE STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

---

[1] The Court notes that, in addition to a lack of a declaration offering a foundation and basis to authenticate this document, it is partially redacted without an accompanying motion to seal; the time and date of the incident are missing from the document; and the signature of the customer bears no resemblance to the name Michael Fox. (Motion, Exh. P, Dkt. No. 105-17.) Plaintiff disputes Viking's statement of facts based on this document. (*See* Def. Fact 23 and response thereto.)

3

"material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). For issues where the opposing party has the burden of proof, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 250 (internal quotation marks omitted). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Where plaintiff bears the burden at trial, a moving party defendant bears the burden of specifying the basis for the motion and the elements of the causes of action upon which the plaintiff will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the plaintiff to establish the existence of a material fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In the summary judgment context, a court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

"When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quoting 11–56 MOORE'S FEDERAL PRACTICE–CIVIL § 56.13); *see also S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) ("As the party with the burden of persuasion at trial, the Gas Company must establish 'beyond controversy every essential element of its' Contract Clause claim.") (quoting William W Schwarzer, et al., CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL

PROCEDURE BEFORE TRIAL § 14:124–127 (Rutter Guide 2001)).[2]

In the summary judgment context, a court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If the plaintiff "produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by" defendants. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017). "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge." *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) (alteration in original) (quotation omitted). Thus "where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation mark omitted); *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002) (same).

**III.   DISCUSSION**

**A.     DeNicolo's Claims Based Upon Alleged FDCPA Violations**

"[T]he FDCPA prohibits debt collectors 'from making false or misleading representations and from engaging in various abusive and unfair practices.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). "The FDCPA comprehensively regulates the conduct of debt collectors, and is a strict liability statute." *Tourgeman v. Collins Financial Services, Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (citation omitted). Thus, debt collectors generally are liable for violating the consumer protections therein regardless of intent, knowledge, or willfulness. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006), *but see* 15 U.S.C. § 1692k ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide

---

[2] The Court notes that, while the procedural issue is not raised in the papers, Viking apparently would bear the burden of proof at trial on most if not all of the issues discussed herein, which are raised as affirmative defenses. *See* Viking's Answer (*see* Dkt. No. 84, Affirmative Defense 1 [FDCPA does not apply to billing service fiand account not in default]; Affirmative Defense 2, 7 [bona fide error defenses]. The Court finds that, regardless of which party bears the burden on the issues raised herein, Viking has failed to establish its entitlement to summary judgment on these issues.

5

error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." [the "bona fide error defense"]).

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  "Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" *Donohue*, 592 F.3d at 1030 (quoting *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir. 2007)).

There are four elements of a FDCPA cause of action: (1) the plaintiff is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt is one "arising out of a transaction . . . primarily for personal, family, or household purposes"; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the prohibitions in the statute. *See Lange v. Prof'l Account Servs., Inc.*, No. 3:19-CV-0150-HRH, 2020 WL 1302512, at *3 (D. Alaska Mar. 18, 2020). Here, Viking moves for summary judgment on DeNicolo's FDCPA claims on two of these elements: (1) whether the debt was incurred for "personal, family, or household purposes"; and (2) that Viking was not "debt collector" under the FDCPA because the debt was not in default at the time it was assigned to Viking. Because DeNicolo's claims under the IVC and for declaratory judgment are contingent on the merits of the FDCPA violations, the motion as to all of the claims turns on these two questions.

### 1. *Debt Incurred for "Personal, Family, or Household Purposes"*

"Because not all obligations to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a 'debt' within the meaning of the statute." *Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004) (citing *Slenk v. Transworld Sys., Inc.,* 236 F.3d 1072, 1075 (9th Cir.2001)). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. . . ." 15 U.S.C. § 1692a(5). "The Act does not define "transaction," but the consensus judicial interpretation is reflected in the Seventh Circuit's ruling

6

that the statute is limited in its reach "to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Turner v. Cook*, 362 F.3d at 1227.

In determining whether a debt is incurred "for personal, family, or household purposes" (*i.e.*, consumer) versus "business purposes" (*i.e.*, commercial), the Ninth Circuit has directed courts to "examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature." *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001) (quoting *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1075 (9th Cir. 1992.)). Courts must "elevate[ ] substance over form," giving neither the lender's motivations nor the manner in which the obligation is documented dispositive weight. *Id.*; *see, e.g., Bloom*, 972 F.2d at 1068 (FDCPA "applies to consumer debts and not business loans," fact that loan was made between friends and lender did not specify use did not change business nature of use of funds to invest in a company); *Ellis v. Phillips & Cohen Assocs., Ltd.*, No. 5:14-CV-05539-EJD, 2016 WL 3566981, at *3 (N.D. Cal. June 30, 2016) (denying summary judgment and finding triable issue as to business nature of debt where "business" credit card, issued in the name of both individual and corporation, was used for transactions that fell into "several varied categories from airfare to dry cleaning [which] are neither uniquely commercial nor uniquely consumer in character such that only one conclusion can be drawn from the evidence.").

In *Slenk*, for instance, the Ninth Circuit reversed a district court's grant of summary judgment on the issue of whether the debt at issue was consumer in nature. *Slenk*, 236 F.3d at 1075-76. Slenk, the borrower, was the owner and sole employee of Slenk's Builder, a general contractor performing carpentry work. *Id.* at 1074. Slenk used loan funds for the purchase of a backhoe. The invoice listed "Slenk Bldrs" as the purchaser and indicated payment of the lower state sales tax applicable to business purchases versus consumer purchases. *Id.* at 1073. The building permit documents identified the contractor as "Slenk's Bldrs" and Slenk expensed the cost of the backhoe as a business expense on his taxes. *Id.* at 1074. Despite these facts indicating the debt was business-related, the Ninth Circuit held that "[t]he record is replete with undisputed objective facts *which, when viewed in the aggregate, create a genuine issue of material fact.*" *Id*.

7

at 1075 (emphasis supplied). The court found evidence favoring a finding that the debt was a personal, consumer debt included: the loan documents themselves indicated that the money was to be used for the purchase of "excavation equipment and *other **personal*** goods;" the backhoe purchased for the purposes of building Slenk's personal home; it was never used for any other purpose than completing his home; it was sold immediately after; and his company was not licensed to use a backhoe. *Id*. at 1075-76 (emphasis supplied). Taking all the evidence into account, the Ninth Circuit held that the question of the nature of the debt should have gone to a jury since it was "not the province of the district court to weigh conflicting evidence for purposes of summary judgment." *Id*. at 1076.

Following *Slenk*, the district court in *Hansen v. Ticket Track, Inc.* denied defendant's motion for summary judgment on the "fact driven" analysis required to determine whether a debt was "primarily for personal, family, or household purposes." 280 F.Supp.2d 1196, 1204 (W.D. Wash. 2003). There, the debt concerned unpaid parking fees. The defendant argued that plaintiffs could not verify whether they parked in the lots for business or personal purposes and therefore could not establish the debt was covered by the FDCPA. *Id*. at 1199. The district court rejected that argument:

> In the present case, the Court finds the nearly-dispositive factor to be the identity of the individual plaintiff and whether the debt was incurred and paid in their personal capacities or some other capacity. It is undisputed that each of the three named plaintiffs paid the obligation out of personal funds. This was not a transaction between two business entities. The defendant argues that a plaintiff's reason for parking in the lot, *i.e.* the errand that they happened to be running that day, is the only relevant inquiry. While this factor is potentially relevant, in nearly every case it will be outweighed by the "identity" or "capacity" of the debtor. The Court finds that context of the present case significantly distinct from the loan context in the above-cited cases giving significant weight to the "purpose" of the obligation. This is so because the "purpose" of the obligation incurred by the parking plaintiffs cannot be equated with the "purpose" of the errand they happened to be running. Here, where the debt was paid with personal funds, the nature of the obligation is a personal one, not a business one.

*Id*. at 1204.

In *Chyba*, defendant claimed that plaintiff had incurred damage to a rental vehicle and that summary judgment on the FDCPA claim should be granted because plaintiff failed to establish the debt was incurred for personal, family, or household purposes. *Chyba v. First Fin. Asset Mgmt.,*

8

*Inc.*, No. 12-CV-1721-BEN WVG, 2014 WL 1744136 (S.D. Cal. Apr. 30, 2014), *aff'd,* 671 F. App'x 989 (9th Cir. 2016). Citing *Slenk* and *Hansen*, the court denied summary judgment as follows:

> this Court finds that Defendant has not met its burden of showing that no reasonable factfinder could conclude that the alleged debt is a consumer debt within the meaning of FDCPA. Plaintiff allegedly rented a vehicle in her personal capacity. Her name appears on the paperwork, and no party has drawn this Court's attention to any reference to a business on the rental documents. The fact that certain statements in Plaintiff's deposition suggest that she sometimes rents cars for business purposes is far from sufficient to allow Defendant to meet its burden, given the other evidence in the record.

*Id.* at *7.[3]

Here, on the one hand, Viking submits evidence that DeNicolo flew from Chicago to San Francisco on the morning of Thursday, February 8, 2018 to meet with a client. He stayed overnight and returned the car the next morning.[4] When DeNicolo was asked at his deposition

---

[3] The two out-of-circuit trial courts cited by parties have considered whether rental car damage claims were personal or business debt and arrived at opposing conclusions. Compare *Fagan v. Lawrence Nathan Assocs., Inc.,* 957 F.Supp.2d 784 (E.D. La. 2013) (treating attorneys' rental of car on firm corporate credit card while traveling on business as a covered debt for purposes of the FDCPA where "defendant treated and regarded [plaintiff] as a consumer who was using the Budget vehicle for his personal use and thus individually liable to Budget, as evidenced by Defendant's attempts to collect the debt against [him] individually.") with *Forgeron v. Hough*, No. 10 C 6298, 2011 WL 3205295, at *5 (N.D. Ill. July 26, 2011) (vehicle rental agreement made on behalf of third party, but in furtherance of plaintiff's plans to establish connections with third party to aid in launching his music business, was not "primarily for personal, family, or household purposes"); *see also Yelin v. Swartz*, 790 F.Supp.2d 331, 335 (E.D. Pa. 2011) (damage claim arising from car rental agreement was an FDCPA-covered debt: "Plaintiff's alleged financial obligation is not a matter of tort liability. Rather, if Plaintiff is responsible for the damage to the rental car, it is because such a duty was imposed by the rental agreement, which is a contract.")

[4] Exhibit 10 to the Belew Declaration is a document provided to Denicolo from Viking in support of the claim of damage. (Belew Decl. Exh. 10.) That document, headed "Thrifty Incident Report," shows a date of February 10, 2018 at the top, and indicates the "incident date" was February 9, 2018, but is also stamped with the date "Feb 14 2018" twice on the lower portion. (Belew Decl., Exh. 10.) Under the "Renter/Driver Statement" portion of the form, there is a handwritten notation "customer doesn't speak English." (*Id.*) In the space where the customer is to enter their email address, there is a handwritten notation: "not available." (*Id.*) Under "Type of Rental" the box for "business" is checked. (*Id.*) The areas of the form for "credit card issuer" and "name of employer" are left blank. (*Id.*) The area of the form stating "Renter/Driver acknowledges that damage to the rental vehicle as indicated occurred during their rental of the vehicle" does not include a signature under the "Renter/Driver Signature" box, but instead contains a handwritten notation: "Station Report." (*Id.*) A "station report" is a damage report made when the customer is not present. (Belew Decl., Exh. 2 [Bacon Depo.] at 66-67.) At a minimum, the document indicates that it was not created on the date that DeNicolo returned the vehicle and flew back to Illinois. The reasonable inference is relevant here is that the "business" response to "Type of Rental" was not made by DeNicolo. The Court notes that Viking, too,

9

whether there was any "personal aspect" of the trip, he said "no." (Exh F. [DeNicolo Depo.] at 32-33.) On the other hand: (1) DeNicolo did not use a company credit card to pay for the rental. (*id*. at 36); (2) he booked his own travel, including airfare and car rental (*id*.); and (3) Viking's efforts to collect the debt for the vehicle damage were directed to DeNicolo individually, not to his company. Indeed, Viking treats debts assigned by Hertz in a uniform manner, regardless of whether the underlying rental was made for "business" or "personal" reasons and does not make it a practice to determine from Hertz or the renter the purpose for which the rental was made. (Belew Decl., Exh. 2 [Bacon Depo.] at 115:2-116:20.)

As in *Slenk*, there is evidence in the record weighing both for and against a finding that the alleged debt here was a "debt of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). To find otherwise would require the Court to weigh the scant evidence offered by Viking against the evidence indicating the debt was personal. As instructed by the Ninth Circuit in *Slenk*, when the objective facts, though undisputed, fall on both sides of a disputed issue, the court may not "weigh conflicting evidence for purposes of summary judgment," and the motion must be denied. *Slenk*, 236 F.3d at 1076.

### 2. *Debt "Not In Default" When Assigned to Viking*

Next, Viking contends it did not act as "debt collector" when it contacted DeNicolo because DeNicolo's account was not in default when obtained by Viking. The FDCPA was enacted with the intent "to eliminate abusive debt collection practices by *debt collectors*." 15 U.S.C. § 1692(e) (emphasis supplied). The FDCPA distinguishes "creditors" from "debt collectors," defining a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition of "debt collector" excludes, among others:

---

submitted this document as evidence. (Motion at Exh. G, Dkt. No. 105-8.) However, given that Viking did not authenticate this or any of the documents it submitted in support of its motion, nor did it provide further information about how and when this document was created, little else can be gleaned from it.

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not *in default* at the time it was obtained by such person. . . .

15 U.S.C. § 1692a(6)(F)(iii) (emphasis supplied).

Here, Viking contends that the debt at issue was not "in default" at the time it was transferred from Hertz to Viking. "Although the [FDCPA] does not define 'in default,' courts interpreting [section] 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue." *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011). "Whether a debt is in default is generally controlled by the terms of the *contract creating the indebtedness* and applicable state law." *Id.* (emphasis supplied, quoting Fed. Trade Comm'n, Advisory Op. n. 2 (April 25, 1989)). Where there is no clear contractual provision explaining when a debt goes into default and no applicable state law, the court is left to apply a "case-by-case approach." *Mavris v. RSI Enterprises Inc.*, 86 F.Supp.3d 1079, 1084 (D. Ariz. 2015) (citing *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-CV-03646 JSC, 2013 WL 2299601, at *4 (N.D. Cal. May 24, 2013); and *De Dios*, 641 F.3d at 1075 n.3). For example, in *De Dios*, the Ninth Circuit examined the terms of a stipulated forbearance agreement to determine whether the debt was considered in default at the time a property management agent, retained to collect rents, demanded payment. The court concluded that the agent's collection of overdue rents was not collection on a debt "in default" because the "property management agent obtained the right to collect rents on the landlord's behalf *before* the rent became due." *De Dios*, 641 F.3d at 1075.

Viking has not provided evidence of the contract creating the alleged *indebtedness*. Instead, Viking proffers as evidence its contract *with Hertz*, arguing that the terms of that agreement demonstrate that neither Viking nor Hertz considered the debt to be in default when it was placed with Viking. (Motion at 16:27-17:11.; *see also* Motion at 18:16-19 ["neither Viking nor Hertz treated the account as being in default. To the contrary, their contract expressly identifies the account as being "non-delinquent" and "not in default" at the time of assignment."].) Viking argues that it is "contracted with Hertz to providing billing services for non-delinquent damage claims" such that, when it obtains a Hertz account for billing services, including DeNicolo's account, the subject debt is not in default. (Motion at 16:27-28.) Viking's argument fails for several reasons.

11

First, Viking's argument elides the full terms of its agreement with Hertz, under which it performs ***both*** billing (pre-default) and collection (post-default) services. Viking calls the document the "Billing Services Agreement" between Viking and Hertz. (Motion at 7:1-9.) In reality, the document is entitled "Collection Services Agreement." (Motion, Exh. B.)[5] Further, the main agreement concerns collections, not simply billing as Viking represents in its brief. Paragraph 8 of the agreement states that "All files placed with [Viking] are ***initially placed as a collection agency*** and collection efforts, i.e., letters, phone calls, etc. must commence within 24 hours of receipt by [Viking]." (*Id*. at ECF 4, emphasis supplied.) The billing services amendment was added several years later and notes that "[e]xcept as expressly modified by this Amendment No. 1 the terms and conditions of the Collection Services Agreement shall remain in full force and effect." (*Id*. at ECF 10.)[6] Thus, the terms of that contract do not establish that the debt was not in default at the time it was placed with Viking, nor do they preclude Viking acting as a "debt collector" in the circumstances here.

Second, the agreement between the DeNicolo and Hertz indicates that "Charges not known to [Hertz] at the completion of the rental are payable by You, or by the person, corporation or other entity to whom such Charges are to be billed, ***immediately upon receipt of an invoice therefore*** or by billing to the credit, charge or debit/check card presented at the time of rental. . . ." (Belew Decl., Exh. 15 **[**Rental Jacket] at 3, emphasis supplied.) The record indicates an invoice for repairs to the vehicle was generated on February 12, 2018. (*Id*. at Exh. 11.)

Even if no clear contractual provision establishes when the debt was "in default," courts generally apply a "case-by-case approach" considering the surrounding circumstances to determine whether defendant acted as a "debt collector." *See Mavris v. RSI Enterprises Inc.*, 86 F.Supp.3d 1079, 1084 (D. Ariz. 2015) (citing *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-CV-03646 JSC, 2013 WL 2299601, at *4 (N.D. Cal. May 24, 2013); and *De Dios*, 641 F.3d at 1075

---

[5] The Court further notes that this exhibit, like all others proffered in support of the motion was merely attached to the motion itself as an exhibit, with no accompanying declaration. Viking thus offered no evidence in an admissible form since it provided no foundation for admissibility or authentication of the documents.

[6] Plaintiff submits evidence that Viking has performed debt collection activities for over 50 years and has performed debt collection for Hertz at least 12 years. (Pl. Addt'l Fact 38, 39.)

12

n.3). The district court in *Mavris* discussed matters to be taken into consideration in the analysis as follows:

> the guiding principle of the analysis would be the status of the debt, viewed objectively in light of all the circumstances. That is, at the time a third party obtains a debt for collection, would a reasonable person in the debtor's position believe that the creditor viewed the debt as being in default? Like the *Slenk* approach, this framework would balance a variety of different factors, none of which would necessarily be dispositive in a given case. The relevant factors might include the number of times a creditor has requested payment, the time that has elapsed since the first request, the urgency of the language used in those requests, the debtor's knowledge that she has been referred to a third party, the creditor's internal policies, any representations made by or on behalf of the creditor—either publicly or to a specific debtor—about how it collects debts, and apparent attempts by the creditor or third party to circumvent the FDCPA's consumer protections. This list is not exhaustive; it necessarily captures only a subset of the factors that could impact objective perceptions of default in any given case.

*Mavris*, 86 F.Supp.3d at 1086 (D. Ariz. 2015). Relying on *Slenk* and other authorities, the court found that "[o]bjective indicia of a creditor's treatment of a debt are entitled to greater weight" or else "FDCPA protections would be subject to the whim of creditors" who could unilaterally determine whether the debt was considered "in default" and keep "debtors completely in the dark about when, if ever, those protections commence." *Id.*; *see also Echlin v. Dynamic Collectors, Inc.*, 102 F.Supp.3d 1179, 1185 (W.D. Wash. 2015) (denying summary judgment on whether debt "in default" where "[creditor's] belief that Echlin's account was not in default is not dispositive of whether default had in fact occurred" and the record's "[o]bjective indicators of the debt's status [were] limited").

Viking's reliance on *Diaz v. Viking Client Services, Inc.* is misplaced. 2016 WL 5796835 (D. Minn. Oct. 3, 2016). There, plaintiff alleged that Viking first notified him of the alleged damage to the car less than 30 days after the letter stated the alleged incident occurred. *Id.* at *1 (providing agreement terms and stating that December 29 letter alleged damage occurred December 8). Plaintiff called and explained to Viking that he did not return a car on that date but had returned one more than two weeks prior, which caused Viking to close the claim. *Id*. The terms of the rental agreement with Avis stated that amounts due under the agreement must be paid "upon demand" or else be subject to a "past due balance" charge. *Id*. Based on these allegations, the court found that he could not have been "in default" on a debt simultaneous with this first demand. *Id*. at *4. While the court acknowledged that, even if the debt was not in default yet,

13

Viking could be considered a "debt collector" if it had treated it as such—for example by repeatedly contacting plaintiff, using urgent language in its requests, or any apparent attempts to bypass the FDCPA's consumer protections—plaintiff there had not so alleged. *Id*. at *3-4 (citing *Mavris*, 86 F.Supp.3d at 1086).

On summary judgment here, plaintiff submits undisputed evidence that Viking never provided DeNicolo with notice of any amount due until 109 days after Hertz placed the account with it. The first and only letter mailed to DeNicolo was dated May 29, 2018, and stated:

> Dear Ronaldgjlr [sic] Denicolo,
>
> Viking Billing Service has been assigned a claim by Dollar Thrifty Corp for damages incurred to a vehicle you rented. As authorized agents, we would like to extend an offer to you to resolve your claim balance for 80% of the ***current amount due***.
>
> ***To take advantage of this offer your payment must be received in our office within 30 days from the date of this letter***. Upon completion of an agreed settlement, your account will be considered settled with Viking Billing Service, and we will notify our client Dollar Thrifty Corp. ***We are not obligated to renew this offer.*** If you have any questions regarding the terms of this settlement arrangement or if you need additional time to respond to this offer, please contact us at 800-490-9786 to discuss. Should your settlement payment(s) be returned for any reason by your banking institution, ***this settlement offer will be considered null and void***.

(Belew Decl., Exh. 4, emphasis supplied.) While Viking previously called the cell phone on DeNicolo's account, it never stated why it was contacting him or left a message. Ryan Bacon, Assistant Vice President of Operations and Director of Strategy and Analytics for Viking, testified that all claims Hertz places with Viking for "billing" services automatically "roll-over" to "collection" services between 91 to 105 days after placement unless the claim is subject to some exclusion. (Belew Decl. Exh 2 [Bacon Depo.] at 9-10; 143:3-9, 210:10- 211:18.) Viking's first time connecting with DeNicolo after Hertz placed the debt with Viking was within the period when the debt would have "rolled over" into collections, *i.e.*, when Viking act as a "collection agency" for claims placed by Hertz. The letter gives rise to a reasonable inference that, even if the debt were not considered "in default" under the terms of the rental agreement, Viking was treating it as such by informing DeNicolo he had a "current balance due" on an established debt and must respond quickly to accept a settlement offer. (Belew Decl. Exh. 4.) From this evidence, the court finds that there are triable issues of fact as to whether a reasonable person in the DeNicolo's

1  position would believe that the Viking considered the debt to be in default or acted as if it were in
2  default when it was assigned.
3      For the foregoing reasons, the motion for summary judgment on DeNicolo's claims[7] is
4  **DENIED**.

### B. Fox's Claims Based Upon Rosenthal Act Violations

Fox alleges that Viking violated Section 1788.17 of the California Rosenthal Debt Collection Practices Act when it used "false, deceptive, or misleading" representations in connection with the collection of debt and "unfair or unconscionable means" to collect, citing FDCPA 15 U.S.C. sections 1692e and 1692f. He also alleges that Viking failed to include in its "initial written communication with the consumer. . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" or other disclosures regarding time limits on disputing or requesting verification of the debt. 15 U.S.C. §§ 1692e(11), 1692g(a)(3)-(5). (FAC ¶¶ 79-85.)

Viking moves for summary judgment on Fox's claims on the grounds that the damage claim it processed was not "due or owing" at the time the letter was sent, and therefore not subject to the Rosenthal Act. Because Fox's claims for violation of the UCL and CCRA, and request for declaratory judgment, are all derivative of the Rosenthal Act violation, the Court's analysis again turns on the "due or owing" question under that Act.

Section 1788.17 of the Rosenthal Act incorporates by reference certain consumer protections set forth in the FDCPA and remedies for its violation but expands the definition of "debt collectors" who must comply with those consumer protections. As explained in a decision from this district:

> Under Section 1788.17 of the California Civil Code, the Rosenthal Act incorporates all of the substantive provisions applicable to debt collectors under the FDCPA, as well as the remedies for violations of those provisions, 15 U.S.C.

---

[7] In its motion, Viking briefly raised the additional argument that DeNicolo incorrectly interpreted the IVC as requiring a rental company to reach an agreement on damages or file suit before attempting collection. (Motion at 20:1-7.) Although it failed to offer authority in its motion on this point, it significantly expanded its discussion of the IVC claim for the first time on reply. (*See* Reply, Dkt. No. 116, at 10:2-12:5.) However, Viking conceded at the hearing that the IVC claim rose or fell based upon the FDCPA violations. For this reason, the Court declines to reach the merits of summary judgment on the IVC claim for reasons other than the consumer nature of the debt and whether it was "in default" when placed with Viking.

> 1692b-k. Section 1692a of the federal act, where debt collector is defined, was one of the few sections of the FDCPA that the California legislature did not incorporate in the Rosenthal Act.

*Sudhir v. PHH Mortg. Corp.*, No. C 16-06088 WHA, 2017 WL 219681, at *2–3 (N.D. Cal. Jan. 19, 2017). Section 1788.17 states:

> Notwithstanding any other provision of this title, *every debt collector collecting or attempting to collect a consumer debt* shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

Cal. Civ. Code § 1788.17 (emphasis supplied).

Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). The term "consumer debt" is defined as "money, property or their equivalent, *due or owing or alleged to be due or owing* from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(d) (emphasis supplied).

The statute does not define the phrase "due or owing." The California Office of the Attorney General issued an opinion on the question of what constitutes "due or owing" under the statute:

> The first issue to be addressed with respect to the Act concerns when a debt is "due [or] owing." These terms have not been defined in the Act and may have different meanings depending upon their context. "Due" generally means "having reached the date at which payment is required" or "[i]mmediately enforceable." "Owing" generally means "due to be paid" or "[t]hat is yet to be paid" or "owed." We have examined the statutory history of the Act's provisions in some detail. The legislative purposes appear to be focused entirely upon debts that have become delinquent and subject to immediate collection activities. This construction of the phrase "due [or] owing" would have the effect of conforming the Act's provisions to federal law. Accordingly, the Act applies to debts that have become delinquent, making them subject to collection.

85 Cal. Op. Att'y Gen. 215 (2002) (internal citations omitted).

As plaintiff notes, the Rosenthal Act does not mirror the definition of debt collector in the FDCPA or exclude from the definition those who collect on debts "not in default." As stated by the California Court of Appeal:

> the FDCPA statutory definition of "debt collector" differs significantly from the definition of "debt collector" provided under the Rosenthal Act; the definition of "debt collector" provided in the Rosenthal Act is far *broader* than that provided in

> the FDCPA. . . .Rather, the Rosenthal Act considers *anyone* who *regularly engages in the act or practice of collecting money, property or their equivalent* that is due or owing by a natural person as a result of a transaction between that person and another person in which the natural person acquired property, services, or money on credit, primarily for personal, family, or household purposes to be a "debt collector."

*Davidson v. Seterus, Inc.*, 21 Cal.App.5th 283, 304 (2018), *review denied* (June 13, 2018) (emphasis in original); *see also Stock v. Firstmark Servs.*, No. SA-CV-18-01363-CJC-KESX, 2018 WL 8193373, at *6 (C.D. Cal. Dec. 12, 2018) ("Unlike the FDCPA, the Rosenthal Act does not exclude, from its definition of debt collector, those who collect debts that are not in default.") The possibility that a state might adopt a more expansive definition of 'debt collector' than is provided by the FDCPA is contemplated by the FDCPA's preemption provision, which specifically allows for a state law to provide for greater consumer protections than the FDCPA." *Davidson*, 21 Cal. App. 5th at 304 n. 15 (quoting 15 U.S.C. § 1692n ("a State law is not inconsistent with this [subchapter] if the protection such law affords any consumer is greater than the protection provided by" the FDCPA.)).

In its motion, Viking contends that (1) "pursuant to their contract, Hertz places non-delinquent, non-defaulted damage claims with Viking for billing services" (Motion at 22:16-19) and (2) that "the rationale set forth in *Diaz* (discussed above) for why Viking's billing statement is not in "default" under the FDCPA applies equally for why the billing statement is not "due and owing" under the Rosenthal Act (*id*. at 22:5-7).[8]

First, for the same reasons as set forth above with respect to DeNicolo's claims, Viking's suggestion that its contract with Hertz establishes that the claims placed with it (and particularly here, Hertz's damage claim against Fox) are not in default finds no support in the contract itself, which authorizes both billing services and collection services. The contract establishes nothing whatsoever about whether all claims, or this particular claim, were considered in default or delinquent at the time they were placed with Viking.

Second, even assuming the contract and the other evidence submitted by Viking were admissible, none of the evidence establishes *when the claim was forwarded* to Viking or, indeed,

---

[8] In addition to being inapposite on the merits here, Viking's citation of the unpublished decision in *Leon v. Emergency Med. Grp. of Watsonville*, No. H040521, 2016 WL 3773933 (Cal. Ct. App. July 11, 2016) was improper. *See* Cal. Rules of Court 8.1115 (opinion that is not certified for publication "must not be cited or relied on by a court or a party in any other action"). Counsel is cautioned to avoid citation of unpublished decisions in future filings.

*when the incident* leading to the damage was alleged to have *occurred*. The incident report with Fox's name on it does not include any information in the "date and time of incident" section of the form. (Motion, Exh. P.) And as Viking eventually conceded, the incident report was incorrect, as shown by evidence Fox provided to Viking. (Def. Fact 34.) As with the discussion of the "in default" issue above, Viking offers no evidence to establish when the claim would be considered due and owing either in the contract between Hertz and Fox or directly from Hertz. Thus, contrary to Viking's assertion, the evidence it offers does not establish that Viking received the claim 20 days after Hertz identified damage, nor that Hertz had not determined the amount was due or owing prior to forwarding the claim. Fox does not dispute that the notice Viking sent him on April 23, 2019, was the first time he learned of the damage claim, nor that the letter prompted him to contact Viking and inform its representative that Hertz was mistaken. However, these facts do not foreclose Fox's claim that Viking was a debt collector under the Rosenthal Act and that its contacts with him violated sections 1692e and 1692f, 1692g of the FDCPA.[9]

Consequently, the motion for summary judgment must be denied as to Fox's claim as well.

### III. CONCLUSION

For the foregoing reasons, Viking's motion for summary judgment is **DENIED**.

This terminates Docket No. 105.

**IT IS SO ORDERED**.

Dated: September 30, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9] Viking raises the additional argument that, under the UCL, a plaintiff must show he suffered injury in fact and lost money or property as a result of the alleged unfair business practice. Cal. Bus. & Prof. Code § 17204. In opposition, plaintiff provides testimony from Fox stating that he would not have rented from Hertz had he known he would have been assessed improper charges and subjected to illegal debt collection practices. (Pl. Addt'l Fact 46 [Belew Decl., Exh. 14].) That Viking submits additional evidence for the first time on reply in an effort to dispute Fox's statement only demonstrates that there are disputed issues of fact material to the claim that preclude summary judgment.