UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD G. DENICOLO, ET AL., <br> Plaintiffs, <br> vs. <br> THE HERTZ CORPORATION, ET AL., <br> Defendants. | CASE NO. 19-cv-00210-YGR <br> **ORDER GRANTING CLASS CERTIFICATION** <br> Dkt. No. 130 |

Plaintiff Ronald G. DeNicolo, Jr. filed this putative class action complaint against Viking Client Services, LLC, d/b/a Viking Billing Service ("Viking") and The Hertz Corporation ("Hertz"). On October 14, 2019, plaintiff Fox was added by an amended Complaint. Plaintiff DeNicolo alleges four claims against Viking: violation of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. sections 1692f and 1692e; violation of the Illinois Vehicle Code ("IVC"), 625 ILCS § 5/6-305.2; and declaratory judgment under 28 U.S.C. § 2201. Plaintiff Fox alleges four additional claims against Viking for: violation of California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Code § 17.1800; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California Consumer Remedies Act ("CCRA"), Cal. Civ. Code §§ 1750, *et seq.*; and declaratory judgment.

Presently pending before the Court is plaintiffs' motion for Class Certification (Dkt. No. 130). The parties submitted their briefing and evidence in support of the motion. The Court issued its Order Denying Summary Judgment on September 30, 2020, after briefing on the motion for class certification had closed. The Court requested supplemental briefing from the parties on the issue of whether a debt is covered by the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (FDCPA) is amenable to class treatment in light of *Slenk v. Transworld Sys., Inc.,*

236 F.3d 1072, 1074 (9th Cir. 2001), which the parties filed on November 3, 2020. Thereafter, the Court heard oral argument on November 17, 2020.

Having carefully considered the papers and evidence submitted, the pleadings in this action, and the arguments of the parties, and for the reasons set forth below, the Court **GRANTS** the Motion for Class Certification.

**I. BACKGROUND**

Viking provides billing and collection services for Hertz, the owner of Thrifty Car Rental as well as the Hertz and Dollar car rental companies. Pursuant to its contract with Hertz, Viking implemented an automated process for handling vehicle damage claims placed with it by Hertz. Electronic claim files are sent from Hertz to Viking. (Declaration of Christopher M. Hack in Support of Plaintiffs' Motion for Class Certification, Dkt. No. 130-1 ["Hack Decl. ISO CC"], Ex. 1 at 43:5-11.) Viking uses a letter vendor that first generates a series of three letters from "Viking ***Billing*** Services" in an automated, "coded letter process that happens as accounts age." (*Id*. at 45:12-17; 57:19-20; Declaration of Leland H. Belew, Dkt. No. 111-2 ["Belew Decl. ISO MSJ"], Ex. 2 at 44:24-45:5.) These first three letters do not contain the "mini-*Miranda*" warnings required by the FDCPA or the Rosenthal Act.[1] (Hack Decl. ISO CC, Ex. 1 at 85:15-22; 88:22-24; Ex. 2.) If those first three letters do not induce payment, the account "rolls over" to collections—through "Viking ***Client*** Services"—and Viking then directs its vendor to send a series of three additional letters which state that Viking is a collection agency and ***include*** the mini-*Miranda* warnings. (Hack Decl. ISO CC, Ex. 1 at 94:15-95:5.) Plaintiffs' theory of the case is that the initial series of standard letters generated by Viking demonstrate, on their face, the uniform statutory violations by Viking as to all class members due to the lack of required warnings.

---

[1] The "mini-*Miranda*" provision of the FDCPA, 15 U.S.C. § 1692e(11), prohibits: "[t]he failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action." California's Rosenthal Act incorporates the requirements of section 1692e(11). *See* Cal. Civ. Code § 1788.17 ("every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.")

## II. APPLICABLE STANDARDS

A class action lawsuit is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979). To depart from this general rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (internal quotations and citation omitted). The proponent of class treatment, usually the plaintiff, bears the burden of demonstrating that class certification is appropriate. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011)).

Federal Rule of Civil Procedure 23, which governs class certification, has two distinct sets of requirements that plaintiffs must meet before the Court may certify a class. Plaintiffs must meet all requirements of Rule 23(a) and must satisfy at least one prong of Rule 23(b), depending upon the nature of the class they seek to certify. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010) (setting forth requirements of Rule 23). Within the framework of Rule 23, a court ultimately has broad discretion over whether to certify a class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.) *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).

Under Rule 23(a), a court may certify a class only where:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Although some inquiry into the substance of a case may be necessary to determine whether these requirements are satisfied, the court must not advance a decision on the merits to the class certification stage. As the United

States Supreme Court has stated:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent —that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011)).

  Once the threshold requirements for certification under Rule 23(a) are met, a plaintiff must establish that the class is appropriate for certification under one of the provisions in Rule 23(b). Here, plaintiffs move to certify classes pursuant to Rule 23(b)(3) which requires them to establish two additional elements: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A finding of predominance requires that the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S.Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. & Miller, M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1778, pp. 123–124 (3d ed. 2005)). A class action is superior to other methods of adjudication when class treatment will reduce litigation costs and promote greater efficiency by adjudicating many claims of relatively small value in one action. *See Amchem*, 521 U.S. at 617.

**III. DISCUSSION**

  Plaintiffs seek to certify two classes: (1) a class represented by plaintiff DeNicolo comprised of "[a]ll individuals who received letters from Viking asserting claims for purported damage to cars rented from Hertz, Dollar or Thrifty for the first time more than 30 days after the

4

date of the purported damage," with subclasses for Illinois and California residents; and (2) a class represented by plaintiff Fox comprised of "[a]ll California residents who received letters from Viking asserting claims for purported damage to cars rented from Hertz, Dollar or Thrifty."

Defendants do not dispute that the Rule 23(a) numerosity and commonality factors are met here. However, defendants contend that class certification should not be granted for four reasons: (1) Plaintiff DeNicolo's claims are not typical of the class he seeks to represent; (2) individual issues will predominate over common, classwide issues; (3) Plaintiff DeNicolo is not an adequate class representative; and (4) the class mechanism is not superior. The Court considers each argument in turn.

**A.   Typicality**

The FDCPA makes unlawful certain debt collection practices against consumers. It "applies to consumer debts and not business loans." *Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1068 (9th Cir. 1992). Consumer debt is defined in the statute as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the . . . property . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Slenk v. Transworld Sys., Inc.,* 236 F.3d 1072, 1074 (9th Cir. 2001).[2] Viking argues that Plaintiff DeNicolo's claims are not typical because the debt he allegedly incurred is not a covered consumer debt.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). That is, the named plaintiffs must "suffer the same injury as the class members." *Dukes*, 564 U.S. at 348. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (*quoting Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)).

As stated in the Court's Order Denying Summary Judgment (Dkt. No. 137), Viking failed

---

[2] The Rosenthal Act employs a similar formulation, defining "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(d).

to establish that Plaintiff DeNicolo's claim does not concern a covered consumer debt.[3]  Further, the evidence at summary judgment showed that Viking does not determine, from Hertz or the individual renting the car, the purpose for which the car rental was made in carrying out its collection efforts.  Instead, it treats debts for car rental damage, assigned to Viking by Hertz, in a uniform manner regardless of whether the underlying car rental was made for "business" or "personal" reasons.  (Order Denying Summary Judgment at 10:5-8.)  Thus, at this stage of the proceedings, the Court finds Plaintiff DeNicolo's claim to be typical of the alleged class he seeks to represent.

**B.    Predominance**

Viking next argues that common questions do not predominate because one cannot "feasibly ascertain" whether a putative class member's claim is based on a covered debt.  (Oppo. at 11:22-24.)[4]  Viking contends that DeNicolo "exemplifies the ascertainability problem in this case" because "only class members whose debt was 'primarily for personal, family, or household purposes' may be included in the class" and identification of those class members would require individual factual inquiries.  (*Id*. at 11:7-12.)

The predominance requirement is satisfied where a "common nucleus of facts and potential legal remedies dominates th[e] litigation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) overruled on other grounds in *Dukes*, 564 U.S. 338.  "[M]ore important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

---

[3] Viking argued that, even if summary judgment were to be denied on the covered debt issue, there would still be a triable issue of fact as to its covered debt defense, and thus still a typicality issue as to DeNicolo.  (Dkt. No. 131 at 8:16-18.)  However, it does not follow from Viking's failure prevail on summary judgment that the covered debt issue is individual to DeNicolo rather than typical of the class.

[4] Viking intertwines its arguments against predominance with attacks on ascertainability of class members, although it acknowledges that there is no separate ascertainability requirement in the Ninth Circuit.  *See Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124 n.4 (9th Cir. 2017).  The Court interprets the ascertainability arguments to be aimed primarily at the question of predominance of common questions, while also touching on class manageability issues.

Here, common questions exist as to whether Viking's practice of sending uniform letters to the individuals identified as owing money for rental car damage violate the FDCPA and Rosenthal Act. An FDCPA claim requires proof that a debt collector violated one of the protections in the statute, 15 U.S.C. §§ 1692a-1692o, in its collection from a consumer of a covered debt, that is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Plaintiffs allege all class members can show Viking's liability through uniform proof in the form of its collection letters. Viking insists that the question of whether those debts for rental car damage are consumer versus business debt will overwhelm the common questions.

In the class certification context, courts have reached divergent conclusions as to whether the covered consumer debt question would require numerous individualized investigations such that common questions would not predominate. *Compare Lowe v. Maxwell & Morgan PC*, 322 F.R.D. 393 (D. Ariz. 2017) (finding lack of predominance where question of whether debt covered by FDCPA would vary depending on whether class members' real property was for personal use or for rental, among other factors) with *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2020 WL 5910077, at *11 (N.D. Cal. Oct. 6, 2020) (finding that in "credit card collections cases like the current one, requiring each individual to separately litigate the same issue of liability [*i.e.*, covered debt] would not serve the purposes of Rule 23") and *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 629–30 (N.D. Cal. 2014) ("the mere fact that the debt collection agency does not segregate business and consumer debt accounts is not enough to thwart class certification"). The Court finds the approach in *Norton* and *Gold* more persuasive.[5]

---

[5] Viking's arguments overreach since they would preclude certification of nearly any class under the FDCPA on the chance that some class members' debts could be construed as a business rather than a consumer debt, a result clearly contrary to the remedial purposes of the statute. *See also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1032 (9th Cir. 2012) (district court abused its discretion in refusing to certify a class without considering the FDCPA's remedial goals); *In re CBC Companies, Inc. Collection Letter Litig.*, 181 F.R.D. 380, 385 (N.D. Ill. 1998) (rejecting defendant's overbroad arguments against certification since they would make it "impossible to bring a FDCPA class action if there was a chance a possible class member used a credit card for a business purpose" which "would be contrary to [its] clear remedial goals").

With respect to car rentals, and damage claims arising from car rentals, courts considering whether such debts are covered by the FDCPA have emphasized such factors as whether the rental agreement was made in the name of an individual or business, and where the collection activities were directed. *See Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12-CV-1721-BEN WVG, 2014 WL 1744136 at *7 (S.D. Cal. Apr. 30, 2014), *aff'd*, 671 F. App'x 989 (9th Cir. 2016) (denying summary judgment on FDCPA covered debt issue where car rental was in plaintiff's name in her personal capacity without reference to a business); *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F.Supp.2d 784 (E.D. La. 2013) (attorneys' rental of car on firm corporate credit card while traveling on business was a covered debt for purposes of the FDCPA where "defendant treated and regarded [plaintiff] as a consumer who was using the Budget vehicle for his personal use and thus individually liable to Budget, as evidenced by Defendant's attempts to collect the debt against [him] individually."); *Yelin v. Swartz*, 790 F.Supp.2d 331, 335 (E.D. Pa. 2011) (damage claim arising from car rental agreement was an FDCPA-covered debt: "Plaintiff's alleged financial obligation is not a matter of tort liability. Rather, if Plaintiff is responsible for the damage to the rental car, it is because such a duty was imposed by the rental agreement, which is a contract."); *but see Forgeron v. Hough*, No. 10 C 6298, 2011 WL 3205295, at *5 (N.D. Ill. July 26, 2011) (vehicle rental agreement made on behalf of third party, but in furtherance of plaintiff's plans to establish connections with third party to aid in launching his music business, was not "primarily for personal, family, or household purposes"). Such factors can be determined readily in establishing class membership. While those class members whose claims arose from business transactions would be excluded from the classes, such a determination does not change the predominate liability questions framed in the litigation here: whether the standard, uniform collection letters sent by Viking violate the FDCPA and Rosenthal Act.

Determining the nature of a class member's debt is, as Viking appears to recognize, more a question of class manageability than one of whether common questions will predominate. As such, the determination does not present an inherent barrier to certification. *See Briseno*, 844 F.3d at 1128 (noting the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns") (internal citation omitted).

Viking's argument that Plaintiff DeNicolo was reimbursed by his employer for the expense of renting the car does not change the analysis. The FDCPA is meant to protect *consumers* from unscrupulous debt collection methods. Even if DeNicolo was reimbursed for the money he spent on the rental (and even the damage claim), Viking sought to collect the damage claim from him individually. No evidence is offered to suggest that Viking seeks to collect car rental damage claims from the employer when that employer reimburses the car rental cost. Instead, the evidence shows that Viking sought to collect against DeNicolo individually, as the consumer who rented the car in his own name. Analogously, and consistent with *Slenk*, the fact that a consumer such as DeNicolo receives some business-related credit on a debt he incurred, does not preclude the debt from being covered under the FDCPA. *Slenk*, 236 F.3d at 1073-74 (facts that plaintiff loan was used to pay for backhoe on which he paid business sales tax rate and listed item as business expense on his taxes were not conclusive as to debt being for business purposes); *see also Hansen v. Ticket Track, Inc.* 280 F.Supp.2d 1196, 1204 (W.D. Wash. 2003) (nature of debt for unpaid parking fees turned on personal capacity in which they were incurred, not whether the purpose of parking was for business reasons).

In sum, as in *Gold*, "[t]he liability issue thus represents a significant aspect of the case that is not diminished by potential difficulties in identifying class members." *Gold*, 306 F.R.D. at 634. Common questions predominate.

**B.     Adequacy**

Viking argues that DeNicolo and counsel are not adequate representatives of the class because DeNicolo is the neighbor and close friend of his attorney, Christopher Hack. Viking states that the record shows DeNicolo and Hack live on the same block, their kids are in the same grade at the same school, they do block parties and dinner parties together, borrow tools from one another, have been inside one another's homes, gone out to dinner together, and gone out for drinks together. Thus, Viking argues, DeNicolo is "not in a position to monitor his friend and neighbor, attorney Chris Hack" to ensure that counsel is acting in the best interests of the class.

To determine adequacy of representation under Rule 23(a)(4), the Court must consider two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest

9

with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). As this Court and others have previously found, in the absence of some evidence to indicate that a friendship between the class representative and one of his attorneys would create a conflict of interest, the court will not presume one. *See Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *2 (N.D. Cal. July 15, 2016); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011) (fact that class representative and one class attorney were friends did not make him inadequate in the absence of evidence of an actual conflict); *Kesler v. Ikea U.S. Inc.*, No. SACV 07-568 JVS RNBX, 2008 WL 413268, at *6 (C.D. Cal. Feb. 4, 2008) ("Kesler sought legal advice from a friend who was a lawyer, and that friend, Sharpe, referred her to Sharpe's law firm. There is little reason to think that Kesler might place the interests of the class counsel in obtaining attorney's fees above those of the absentee class members.").[6] Christopher Hack is not a partner and is one of several attorneys from two different firms acting as counsel to the putative class. There is no evidence to suggest that DeNicolo or Hack would have a conflict that might cause them to put their own interests ahead of the interests of the class.

### D.    Superiority

Viking argues the class mechanism would not be superior here because the classes are ill-defined. Viking contends the proposed class definitions are insufficient because they simply state that all persons who "received a letter" from Viking should be included without further identifying

---

[6] All of the out-of-circuit authority cited by Viking on this point is distinguishable given the close business or familial relationships, and therefore potential financial interest, involved. *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 199 (S.D.N.Y. 2015) (plaintiff's ongoing advice from personal attorney, also his cousin, and 5% "referral fee" agreement that was likely to exceed his pro rata share of any recovery, "raise[d] serious doubts about [plaintiff's] ability to protect the interests of the class"); *see also Wexler v. AT & T Corp.*, 323 F.R.D. 128, 130 (E.D.N.Y. 2018) (class representative had a conflict of interest in fee award since her husband served as class counsel; conflict did not end with husband's withdrawal since continued to have a stake in the fee award); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155-56 (S.D. N.Y. 2010) (proposed securities class representative inadequate and conflicted where it had long served as stockbroker to class counsel); *Fischer v. Int'l Tel. & Tel. Corp.*, 72 F.R.D. 170, 173 (E.D. N.Y. 1976) (plaintiff's son served as counsel and might have interest in attorneys' fees).

"a class of individuals who were allegedly victimized under the FDCPA." (Oppo. at 14.)

Plaintiffs' theory of the case is that every person in the putative classes who received a letter from Viking without the necessary disclosures was subject to a violation of the FDCPA and/or the Rosenthal Act. Further, plaintiffs contend that all putative class members who received their first notice of debt collection more than 30 days after the debt was allegedly incurred would understand that the debt was considered "in default" under the FDCPA, based on Viking's uniform practices and letters. *See Mavris v. RSI Enters. Inc.*, 86 F.Supp.3d 1079, 1088-90 (D. Ariz. 2015) (whether debt considered "in default" measured by reasonable debtor's understanding based on such circumstances as number of payment requests, time elapsed since first request, urgency of requests' language, and knowledge that debt is referred to third party). Whether plaintiffs can prevail on the merits of their 30-day argument is not before the Court on class certification. Relying on the 30-day delay as a means of defining the class of consumers who would reasonably have believed the alleged debt to be considered "in default" by Viking does not undermine the manageability of the class or support a determination that a class action would not be the superior method for adjudicating the claims of those within the class. Class treatment will allow the efficient, consistent adjudication of liability based on the uniform collection letters sent by Viking to thousands of individuals.

## IV. CONCLUSION

The motion for class certification is **GRANTED**.

In light of the analysis here and in connection with summary judgment, the Court has modified the proposed class definitions, as set forth below. However, the Court finds that the classes should be further limited based upon the applicable statutes of limitations. The parties are **ORDERED** to meet and confer and submit a joint statement as to appropriate temporal limitations on the class definitions. If the parties are unable to agree, they may state their respective positions in a joint statement not to exceed *six* pages (*three* per side). The joint statement shall be filed no later than **April 12, 2021**.

Therefore, with the condition that the temporal scope of the class will be defined by further

order, the Court **CERTIFIES** the following classes[7]:

    **1.**    **Illinois Resident Class**: All Illinois residents who received, for the first time, a letter from Viking: (1) that asserted a claim of damage to a vehicle rented from Hertz, Dollar or Thrifty; (2) more than 30 days after the date of the purported damage; and (3) the vehicle was not rented by or in the name of a business.

    **2.**    **California Rental Class**: All individuals who rented a vehicle in California and who received, for the first time, a letter from Viking: (1) that asserted a claim of damage to a vehicle rented from Hertz, Dollar or Thrifty; (2) more than 30 days after the date of the purported damage; and (3) the vehicle was not rented by or in the name of a business.

    **3.**    **California Resident Class:** All California residents who received a letter from Viking asserting a claim for purported damage to a vehicle rented from Hertz, Dollar or Thrifty; and (3) the vehicle was not rented by or in the name of a business.

The Court further **ORDERS** that: (a) plaintiff Ronald G. DeNicolo, Jr. is appointed class representative of the Illinois Resident and California Rental Classes; (b) plaintiff Michael G. Fox is appointed class representative of the California Resident Class; and (c) attorneys are Krislov & Associates, Ltd. and Andrus Anderson LLP are appointed class counsel.

This terminates Docket Number 130.

**IT IS SO ORDERED**.

Dated: March 29, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] Excluded from all classes are: Viking; the officers, directors and employees of Viking; any entity in which Viking has a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Viking; any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs. Further excluded from all classes is any individual who previously received a legal determination or reached an agreement with Hertz, Dollar or Thrifty regarding the cost and liability of rental car damage.